1  NATASHA CHESLER (S.B. #227540)
CHESLER LAW P.C.
2  1900 Avenue of the Stars, Suite 900
Los Angeles, California 90067
3  Telephone: (310) 421-8697
Facsimile:  (310) 861-8852
4  E-Mail:     natasha@cheslerlaw.com

5  Attorneys for Plaintiffs
Sammy Corea, Carol De La Sotta,
6  Bill Hutson, Sinbad Kazakian,
William Alan Pfister, Jr., Rob Ross,
7  Daniel Storm, Ruby Tse, and
Bernabe Zepeda
8

9              **UNITED STATES DISTRICT COURT**

10     **CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

11

12  SAMMY COREA, CAROL DE LA                CASE NO. 2:22-cv-07312-MCS-JC
SOTTA, BILL HUTSON, SINBAD
13  KAZAKIAN, WILLIAM ALAN
PFISTER, JR., ROB ROSS, DANIEL           **PLAINTIFFS' NOTICE OF
14  STORM, RUBY TSE, and BERNABE           MOTION AND MOTION TO
ZEPEDA,                                  REMAND; MEMORANDUM OF
15                                          POINTS AND AUTHORITIES IN
                                         SUPPORT THEREOF**
16              Plaintiffs,
                                         Date:        December 5, 2022
17       vs.                             Time:        9:00 a.m.
                                         Courtroom:   7C
18  FOX SPORTS HOLDINGS, LLC, a                       First Street Courthouse
Delaware Limited Liability Company;                  350 W. 1st Street
19  SPORTS MEDIA SERVICES LLC, a                      Los Angeles, CA 90012
Delaware Limited Liability Company;
20  FOX PAYROLL SERVICES, INC., a
Corporation; FOX PAYROLL
21  SERVICES LLC, a Delaware Limited
Liability Company; FOX SPORTS 1,
22  LLC, a Delaware Limited Liability
Company; FOX SPORTS 2, LLC, a
23  Delaware Limited Liability Company;
GARY HARTLEY, an individual and
24  DOES 1 through 10, inclusive,

25              Defendants.

26

27

28

1    TO THE HONORABLE COURT, ALL PARTIES, AND THEIR COUNSEL
2  OF RECORD:

3    PLEASE TAKE NOTICE, that on **December 5, 2022** or as soon thereafter as
4  the matter may be heard in Courtroom 7C of the above-entitled Court, located at 351
5  West 1st Street, Los Angeles, California, 90012, plaintiffs Sammy Corea, Carol De
6  La Sotta, Bill Hutson, Sinbad Kazakian, William Alan Pfister, Jr., Rob Ross,
7  Daniel Storm, Ruby Tse, and Bernabe Zepeda (collectively "Plaintiffs") will move
8  and hereby do move for an order to remand this case to the Los Angeles County
9  Superior Court.  This Motion is filed in response to the Notice of Removal filed by
10  Defendant Sports Media Services LLC ("Defendant").

11    Defendant's Notice of Removal was filed on October 6, 2022, and therefore
12  this Motion is timely made.  This Motion is made pursuant to 28 U.S.C. § 1447(c)
13  and Federal Rule of Civil Procedure Rule 7(b) on the grounds that removal was
14  improper because there is no basis for federal subject matter jurisdiction.  No federal
15  question is presented, and Plaintiffs and Defendant Gary Hartley are both citizens of
16  California.  This Motion is made following the conference of counsel pursuant to
17  Local Rule 7-3, which took place on October 12, 2022, and October 24, 2022.

18    This motion is based on this Notice of Motion and Motion, the Memorandum
19  of Points and Authorities filed by Plaintiffs, the Declaration of Natasha Chesler, the
20  pleadings and other documents on file with the Court, and such oral argument as the
21  Court may allow at the hearing on this motion.

22  DATED: November 7, 2022               Respectfully submitted,

23                                        CHESLER LAW, P.C.

24

25                                        By /S/ Natasha Chesler
26                                           Natasha Chesler
27                                           Attorneys for Plaintiffs

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   BACKGROUND FACTS ...................................................................................... 3

III.  REMAND IS WARRANTED ............................................................................... 6

    A.   There Is No Federal Question Jurisdiction - Section 301 Does
          Not Completely Preempt Plaintiffs' State Law Fraud Claim ................. 6

        1.   Plaintiffs' fraud claim is conferred solely by virtue of state
             law ................................................................................................ 7

        2.   Plaintiffs' fraud claim does NOT substantially depend on
             interpretation of the CBA ........................................................... 13

    B.   There Is No Diversity Jurisdiction ......................................................... 15

        1.   Plaintiffs have the "possibility" of stating a claim against
             Hartley for defamation ................................................................ 17

             (a)   The statement is defamatory on its face ........................... 18

             (b)   The statement is defamatory under the totality of the
                    circumstances ................................................................... 19

             (c)   Defendant's authority is inapposite ................................. 22

        2.   Plaintiffs have the "possibility" of stating a claim against
             Hartley for intentional infliction of emotional distress ............. 23

III.  CONCLUSION .................................................................................................. 25

1

## TABLE OF AUTHORITIES

2 **FEDERAL CASES**

3 *Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1108 (9th Cir. 2000)

4 ..............................................................................................................11, 12

5 *Barsell v. Urban Outfitters, Inc.*, No. CV 09-02604-MMM, 2009 WL 1916495, at

6 *4 (C.D. Cal. July 1, 2009) ...........................................................................24, 25

7 *Buckner v. Universal Television, LLC*, No. CV 17-6489-R, 2017 WL 5956678, at *1

8 (C.D. Cal. Nov. 30, 2017)...................................................................................6

9 *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007)........................7

10 *Calero v. Unisys Corp.*, 271 F. Supp. 2d 1172, 1178 n. 2 (N.D. Cal. 2003).............23

11 *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398-99 (1987)...................................6, 13

12 *Chesapeake & Ohio Ry. Co. v. Cockrell*, 232 U.S. 146, 152 (1914) .......................16

13 *Dagley v. Target Corp., Inc.*, No. CV 09-1330-VBF, 2009 WL 910558, *3 (C.D.

14 Cal. March 31, 2009) .......................................................................................24

15 *Ettedgui v. WB Studio Enterprises Inc.*, No. 2:20-cv-11410-MCS, 2021 WL 633859,

16 at *3 (C.D. Cal. Feb. 18, 2021).....................................................................12, 15

17 *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).............................................6

18 *Gibson v. Am. Airlines*, No. C 96-1444-FMS, 1996 WL 329632, at *4 (N.D. Cal.

19 June 6, 1996)....................................................................................................24

20 *GranCare, LLC v. Thrower ex rel. Mills*, 889 F.3d 543, 548 (9th Cir. 2018)...........16

21 *Hamilton Materials Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007)

22 ...................................................................................................................16

23 *Hrones v. Rideout Memorial Hosp.*, No. 2:20-cv-00449-KJM, 2022 WL 2093729 at

24 *4 (E.D. Cal. June 10, 2022)..............................................................................10

25 *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1044 (9th Cir. 2009).......................16

26 *In re Marriage of Nasca v. Peoplesoft*, 87 F.Supp.2d 967, 970 (N.D. Cal. 1999)6, 13

27 *Johnson v. Wells Fargo & Co.*, No. CV 14-06708 MMM JCX, 2014 WL 6475128,

28 at *6–7 (C.D. Cal. Nov. 19, 2014).....................................................................23

*Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1032–33 (9th Cir. 2016) ...................................................................................................................7

*Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 410 (1988) .......................12

*Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994).......................................................11

*Milkovich v. Loran Journal Co.*, 497 U.S. 1, 19 (1990)............................................18

*Milne Employees Ass'n v. Sun Carriers*, 960 F.2d 1401 (9th Cir. 1991)......3, 6, 9, 12

*Morales v. Gruma Corp.*, No. CV 13-7341-CAS, 2013 WL 6018040 (C.D. Cal. Nov. 12, 2013) .......................................................................................................23

*Nasrawi v. Buck Consultants, LLC,* 776 F. Supp. 2d 1166, 1170 (E.D. Cal. 2011) .17

*Niehaus v. Greyhound Lines, Inc.*, 173 F.3d 1207, 1212 (9th Cir. 1999) ..........10, 14

*Onelum v. Best Buy Stores L.P.*, 948 F. Supp. 2d 1048, 1051-52 (C.D. Cal. 2013) .16

*Padilla v. AT&T Corp.*, 697 F.Supp.2d 1156, 1159 (C.D. Cal. 2009) ......................17

*Placencia v. Amcor Packaging, Distrib., Inc.*, No. SACV 14-0379-AG, 2014 WL 2445957, at *2-3 (C.D. Cal. May 12, 2014) .......................................................13

*Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318-19 (9th Cir. 1998)....................16

*Romero v. San Pedro Forklift, Inc.*, 266 Fed. Appx. 552 (9th Cir. 2008)................14

*Sprewell v. Golden State Warriors*, 266 F.3d 979, 991-992 (9th Cir. 2001) ............14

*Tanner v. Ford Motor Co.*, 424 F. Supp. 3d 666, 670 (N.D. Cal. 2019)...................16

*Umamoto v. Insphere Insurance Solutions, Inc.,* No. 13–CV–0475–LHK, 2013 WL 2084475, *4–5 (N.D. Cal. May 14, 2013) .............................................................19

*Walton v. UTV of San Francisco, Inc.*, 776 F. Supp. 1399, 1402-03 (N.D. Cal. 1991) ...................................................................................................................12

*Webber v. Nike USA, Inc.,* No. 12–CV–00974 BEN, 2012 WL 4845549, *6 (S.D. Cal. Oct. 9, 2012)................................................................................................23

*Ybarra v. Universal City Studios, LLC*, No. CV 13-4976-PSG, 2013 WL 5522009, *5 (C.D. Cal. Oct. 2, 2013)...................................................................................25

**STATE CASES**

*Accinelli v. New Times, Inc.* No. B137472, 2002 WL 532286, at *6 (Cal. Ct. App. Apr. 10, 2002) .......................................................................................................22

*Gallant v. City of Carson*, 128 Cal. App. 4th 705, 708 (Cal. Ct. App. 2005), *disapproved of on other grounds by Reid v. Google, Inc.*, 50 Cal. 4th 512 (Cal. 2010) ...............................................................................................................19

*Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 80 (Cal. Ct. App. 1996) ...........23

*Kahn v. Bower*, 232 Cal.App.3d 1599, 1600, 1607 (Cal. Ct. App. 1991), reh'g denied and opinion modified (Sept. 6, 1991)............................................18, 20, 21

*Lazar v. Sup. Ct.*, 12 Cal. 4th 631, 638 (Cal. 1996) ....................................................7

*Moyer v. Amador Valley Joint Union High School District*, 225 Cal. App. 3d 720, 721-22 (Cal. Ct. App. 2008) .................................................................................22

*Oberkotter v. Woolman*, 187 Cal. 500, 503-04 (Cal. 1921) .....................................19

*Okun v. Sup. Ct.*, 29 Cal. 3d 442, 452 (Cal. 1981) ...................................................20

*Overhill Farms, Inc. v. Lopez*, 190 Cal. App. 4th 1248, 124 (Cal. Ct. App. 2010) ..19

*Seelig v. Infinity Broad. Corp.*, 97 Cal. App. 4th 798, 810 (Cal. Ct. App. 2002) .....22

*Slaughter v. Friedman*, 32 Cal. 3d 149, 154 (Cal. 1982) ...................................20, 21

*Stoneking v. Briggs*, 254 Cal. App. 2d 563, 572-73 (Cal. Ct. App. 1967) ...............20

*ZL Techs., Inc. v. Does 1-17*, 13 Cal. App. 5th 603, 624 (Cal. Ct. App. 2017) ........21

**FEDERAL STATUTES**

28 U.S.C. § 1332(a)...................................................................................................16

28 U.S.C. § 1447(c)...................................................................................................25

29 U.S.C. § 185 ...........................................................................................................6

**STATE STATUTES**

Cal. Civ. Code § 46 ...................................................................................................17

Cal. Civ. Code § 1708 .................................................................................................7

Cal. Civ. Code §§ 1709-1711 ......................................................................................7

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Defendant Sports Media Services, LLC's ("Defendant's") removal to Federal Court is improper because this case involves purely state law claims and non-diverse properly joined parties.  Plaintiffs, nine (9) California citizens, were long-tenured employees in Defendant's graphics department, producing the graphics for Defendant's sports broadcasts.  (FAC ¶¶ 3, 16.)  Their supervisor was Defendant Gary Hartley ("Defendant Hartley"), also a California citizen.  (Id. ¶¶ 2, 18.)

In March 2020, Defendant sent home its workforce due to the Covid-19 pandemic.  (FAC ¶ 23.)  Plaintiffs allege Defendant then used this as a mask for age discrimination by terminating their employment and replacing them with younger, less experienced employees.  (FAC ¶ 8.)  Thus, Plaintiffs' first cause of action is for age discrimination under the California Fair Employment and Housing Act (the "FEHA") and their second cause of action is for California common law wrongful termination in violation of public policy.

Further, Defendants did not even have the decency to tell Plaintiffs they had been fired.  Worse, throughout 2020, Defendant Hartley (and other managers) continually told Plaintiffs to "hang on" because Defendant intended to return them to work (it was only a matter of time) and continually promised to get back to them as things developed.  (See FAC ¶¶ 11, 33.)  At no point, did Defendant Hartley (or any manager) tell Plaintiffs they had been terminated.  (Id. ¶ 79.)

It was not until summer 2021 that Plaintiffs learned the truth – Defendant had decided at least one year prior that it was terminating Plaintiffs and never intended to call them back.  Indeed, in approximately July 2020 (*i.e.*, _before_ Defendant Hartley made statements about returning Plaintiffs to work), Defendant Hartley stated in a meeting with the Graphics Department that no one else would be returning (obviously referencing Plaintiffs) and the company had finally gotten rid of the "dead weight" – thereby implying Plaintiffs' alleged poor work performance,

1  incompetence, and lack of skill set, was justification for Plaintiffs' terminations.
2  (FAC ¶ 38.)  Such a phrase not only reeked of age animus, but was defamatory as
3  Plaintiffs allege they were actually terminated due to age discrimination and at all
4  times were ready, willing, able, and qualified to return to the jobs they had
5  performed for 190+ collective years.  Defendant Hartley's statements further
6  explained why Plaintiffs had not been called back to work despite Defendant having
7  open positions for which they were more than qualified – positions instead given to
8  the much younger (and presumably cheaper) workforce.  (See id. ¶¶ 53-54.)

9      By the time Plaintiffs learned the truth, it had been more than a year since
10 they were sent home.  Plaintiffs had not looked for other employment because they
11 had reasonably relied on Defendant Hartley's (and others') statements that
12 Defendants were trying to bring them back to work – and could not have known that
13 Defendants were concealing the truth, namely that they had been terminated.  (See
14 FAC ¶ 81.)  Thus, Plaintiffs' third cause of action is for promissory fraud,
15 intentional misrepresentation, and/or failure to disclose material facts and their
16 fourth cause of action is for defamation based on Defendant Hartley's statement that
17 Plaintiffs had been terminated because they were "dead weight."

18     Finally, Plaintiff's fifth cause of action is for intentional infliction of
19 emotional distress based on the foregoing discrimination, fraud, and defamation.

20     Defendant[1] has removed to Federal Court based on two grounds, neither of
21 which has merit.  First, Defendant asserts federal question jurisdiction arguing
22 Plaintiffs' fraud claim is preempted by Section 301 of the LMRA because it
23 allegedly arises from and/or requires analysis of the parties' collective bargaining
24 agreement ("CBA").  But a plain reading of the FAC makes clear Plaintiffs' fraud
25 claim neither arises from nor requires interpretation of the CBA.  The Ninth Circuit

26 _____
27 [1] At the time of removal, Defendant Sports Media Services LLC was the only Defendant that had been served.  Defendant has represented that entity alone was Plaintiffs' legal employer.  Plaintiff is still evaluating this representation.  Defendant's counsel accepted
28 service of the complaint on behalf of Defendant Hartley following removal.  Thus, Defendant Sports Media Services is the only defendant that filed the Notice of Removal.

has long held that common law fraud claims such as Plaintiffs are not preempted by Section 301. *See, e.g., Milne Employees Ass'n v. Sun Carriers*, 960 F.2d 1401 (9th Cir. 1991). Second, Defendant asserts diversity jurisdiction arguing that Defendant Hartley is fraudulently joined. Defendant, however, overlooks the extremely high standard it must meet for fraudulent joinder – namely, whether Plaintiffs have a non-fanciful *possibility* of stating a claim under state law. Defendant cannot meet this heavy burden as Plaintiffs have meritorious claims against Defendant Hartley – and certainly at least *the possibility* of asserting viable claims against him.

As further demonstrated herein, there is no basis for federal jurisdiction and remand is proper.

## II.   <u>BACKGROUND FACTS</u>

Plaintiffs were longtime employees in Defendant's Graphics Department producing the graphic images/animations for sports television broadcasts. (FAC ¶¶ 8, 16.) They reported directly to Defendant Hartley. (Id. ¶ 18.) All Plaintiffs were over 40 years old at the time of termination Corea (59); De La Sotta (63); Hutson (70); Kazakian (62); Pfister (68); Ross (49); Storm (52); Tse (80); and Zepeda (55). (Id. ¶ 15.) Collectively they devoted over 190 years working for Defendant. (Id. ¶ 8.)

In March 2020, Defendant sent home its employees due to the growing Covid-19 pandemic. (FAC ¶ 23.) Throughout March and April 2020, Defendant told Plaintiffs to essentially "hang on" as Defendant was working on a solution to bring everyone back. (Id. ¶¶ 24-17.)

By July of 2020, Defendant began calling back employees in the Graphics Department, but not these Plaintiffs. (See FAC ¶ 30.) Plaintiffs reached out to Defendant Hartley and other managers asking about returning to work. (See FAC ¶¶ 28-39.) Defendant's managers (including Defendant Hartley) continually strung Plaintiffs along leading them to believe that Defendant was planning to bring them back at some point – or at least trying to do so. (See id.)

1    For example, in July 2020, Plaintiff Storm contacted Helen Kim (Director of

2    Creative Services) to inquire about his status as he had heard other (younger)

3    employees had been returned to work.  (FAC ¶ 30.)  Ms. Kim told Storm he was

4    "next on the list" to be called back but did not know when that would be.  (Id.)

5    Plaintiffs continued to reach out for updates, but the response was continually

6    more of the same, that Defendant would know more soon.  (Id. ¶ 30-32.)  On

7    September 15, 2020, Defendant Hartley sent an email to the Plaintiffs stating the

8    company's goal was "to return to the world we knew before the pandemic."  (Id.

9    ¶ 33.)  "I can assure you that we are constantly evaluating the near-term future with

10   an eye on getting as many people back to work as possible.  As we become aware of

11   additional/new opportunities, we will reach out to you."  (Id.)

12   In December 2020, Plaintiff De La Sotta contacted Corey Witte (Manager,

13   Postproduction) again asking for updates about returning to work.  (Id. ¶ 34.)  Mr.

14   Witte said he had no information, apologized for the lack of communication, but

15   said he would let her know "right away" as soon as he heard of any updates.  (Id.)

16   Plaintiff De La Sotta again reached out to Defendant Hartley in January 2021.

17   (Id. ¶ 35.)  Defendant Hartley replied on January 5, 2021, saying it was "virtually

18   impossible to know how the year will play out," claiming various factors were

19   involved in making personnel decisions, and that it was just too "tough to make

20   predictions" as to when Plaintiffs would be called back.  (Id.)

21   Plaintiff De La Sotta again contacted Mr. Witte in February 2021 asking for

22   updates, but Mr. Witte said he had no information at that time.  (Id. ¶ 36.)

23   During this time, Plaintiffs did not look for other work and waited to be called

24   back because they relied on the statements by Defendant Hartley (and the other

25   managers).  (FAC ¶ 79.)  Indeed, Defendant had gone through other restructurings

26   in the past and these Plaintiffs (long-term employees) were always called back.

27   (FAC ¶ 39.)  Thus, they had no reason to believe this time would be different.

28   But unbeknownst to Plaintiffs at the time, Defendant Hartley was lying (and

concealing material facts) when he made these statements to them.  (See FAC ¶ 38.)  Plaintiffs discovered that in July 2020, Defendant Hartley had a meeting with the Graphics Department in which he stated that no one else would be returning and that the company had finally gotten rid of the "dead weight" – obviously implying that Plaintiffs had been terminated because they were useless, incompetent, lacked the necessarily skills, and/or were incapable of performing their jobs.  (See FAC ¶¶ 38.)

Incredulously, however, Defendant never actually told Plaintiffs they were terminated.  Instead, Plaintiffs learned of their termination through others outside the company.  (FAC ¶¶ 39-42.)  For example, in July 2021, Plaintiff Corea learned from his physician that he no longer had health insurance.  (FAC ¶ 40.)  In September 2021, Plaintiff De La Sotta contacted the union to inquire about filing a grievance, only to learn that she had been laid off.  (FAC ¶ 41.)

Plaintiff De La Sotta then went with Plaintiff Tse to Defendant's offices to get their belongings.  (FAC ¶ 47.)  They saw significantly younger artists sitting at their stations, working on the same machines, and doing the same exact work these Plaintiffs had been doing.  (Id.)  Meanwhile, Defendant simply had thrown the other Plaintiffs' belongings in the trash without contacting them.  (See FAC ¶¶ 44-45.)

Plaintiffs lost not only their jobs, but their careers.  (See id. ¶¶ 43, 56-57.)  Being without work during the pandemic was emotionally devastating.  Plaintiffs felt like Defendants had tossed them in the trash because of their age.  (Id.)  But it was not just their discriminatory termination that shocked Plaintiffs.  They felt even more betrayed by how outrageously Defendant did so – through defamation, lies, and deceit – after all the years of service Plaintiffs had given them.  (See id.)

Thus, Plaintiffs First Amended Complaint ("FAC") alleges the following causes of action:  (1) discrimination under the FEHA; (2) wrongful termination in violation of public policy; (3) promissory fraud, intentional misrepresentation, and/or failure to disclose material facts ("fraud"); (4) defamation; and (5) intentional infliction of emotional distress ("IIED").

1    **III.   REMAND IS WARRANTED**

2          The removing defendant bears the burden of demonstrating the grounds for

3    federal jurisdiction.  *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).  To

4    establish whether removal is proper, courts "strictly construe the removal statute

5    against removal jurisdiction."  *Id*.  "Federal jurisdiction must be rejected if there is

6    any doubt as to the right of removal in the first instance."  *Id*.  Thus, the removing

7    party bears a heavy burden to rebut the presumption against removal.  *See id*.

8          **A. There Is No Federal Question Jurisdiction – Section 301 Does Not**

9              **Completely Preempt Plaintiffs' State Law Fraud Claim**

10         Defendant's first basis for removal is based on federal question jurisdiction –

11   namely that Section 301 of the LMRA (29 U.S.C. § 185) preempts Plaintiffs' fraud

12   claim.  It does not.  Nevertheless, Defendant's Removal Notice makes two faulty

13   arguments.  First, Defendant misconstrues Plaintiffs' fraud claim as arising out of

14   the parties' collective bargaining agreement ("CBA").  Case-law is clear, however,

15   that is not the case.  *See Milne*, 960 F.2d at 1408-10 (state law fraud claim does not

16   arise from CBA).  Nor can Defendant remove based on its own (mistaken)

17   alternative theory as Plaintiffs are the masters of their own complaint.  *See*

18   *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398-99 (1987).  Second, Defendant

19   makes the common, but basic, mistake:  it confuses complete preemption (which

20   supports removal jurisdiction) with substantive 301 preemption (which does not

21   support removal jurisdiction).  *In re Marriage of Nasca v. Peoplesoft*, 87 F.Supp.2d

22   967, 970 (N.D. Cal. 1999).  As further explained, neither of Defendant's arguments

23   has merit.

24         "Courts in the Ninth Circuit apply a two-step analysis to determine whether

25   LMRA preemption applies."  *Buckner v. Universal Television, LLC*, No. CV 17-

26   6489-R, 2017 WL 5956678, at *1 (C.D. Cal. Nov. 30, 2017) (alteration

27   incorporated) (internal quotation marks omitted).  First, courts assess "whether the

28   asserted cause of action involves a right conferred upon an employee by virtue of

state law" instead of a CBA; if the right exists solely because of the CBA, then the claim is preempted.  *Id.* (quoting *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007)).  Second, "if the right exists independently of the CBA, [courts] must still consider whether it is nevertheless substantially dependent on analysis of a [CBA]."  *Id.* (alterations in original) (quoting *Burnside*, 491 F.3d at 1059).  Only where such dependence exists is the state law claim preempted by Section 301.  *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1032–33 (9th Cir. 2016).

1.  **Plaintiffs' fraud claim is conferred *solely* by virtue of state law.**

Plaintiffs' fraud claim is a creature of state law and exists whether they are members of a union or not.  *See Lazar v. Sup. Ct.*, 12 Cal. 4th 631, 638 (Cal. 1996).  Indeed, Plaintiffs' fraud claim is solely based on rights derived from California common law and California statutes (see Cal. Civ. Code §§ 1709-1711) and reflects California's legislative declaration that "[e]very person is bound, without contract, to abstain from injuring the person or property of another, or infringing upon any of his rights."  Cal. Civ. Code § 1708.  The basic elements of a fraud claim are: (1) a misrepresentation, such as a false representation or concealment of fact; (2) knowledge of falsity or concealment; (3) intent to defraud, *i.e.,* induce reliance; (4) justifiable reliance; and (5) resulting damage.  *Lazar*, 12 Cal. 4th at 638.

Here, Plaintiffs' fraud claim alleges Defendants – specifically including Defendant Hartley – misrepresented that it was intending to call Plaintiffs back to work (or at least trying to do so) despite knowing full well that they had no intention of ever doing so (due to age discrimination) and further concealing the fact Plaintiffs had already been terminated.  These statements/omissions induced Plaintiffs to forgo looking for work elsewhere, resulting in damages.  Thus, Plaintiffs' FAC alleges the elements of fraud as follows:

(1) False Misrepresentation and Concealment of Fact:

  a.  Defendants (including Defendant Hartley) misled Plaintiffs concerning their "return to work."  (FAC ¶ 77.)

b. Defendant Hartley repeatedly told Plaintiffs "that the Company was trying to bring them back and never once disclosed that Plaintiffs were being laid off or let go..." (Id.)

c. "When Plaintiffs reached out for news, Fox kept dangling the carrot and stringing them along by saying they were still figuring things out and would know more soon ('hang in there')." (FAC ¶ 11.)

d. In July 2020, Helen Kim (Director of Creative Services) told Plaintiff Storm that he was "next on the list" to be called back. (FAC ¶ 30.)

e. On September 15, 2020, Defendant Hartley sent an email to Plaintiffs in which he stated that Defendant had called people back with a focus on managing tasks in the "most efficient manner possible," and that the company's goal was "to return to the world we knew before the pandemic, but it's difficult to predict when that will be." "I can assure you that we are constantly evaluating the near-term future with an eye on getting as many people back to work as possible. As we become aware of additional/new opportunities, we will reach out to you." (FAC ¶ 33.)

f. On December 8, 2020, Corey Witte (Manager, Postproduction) told Plaintiff De La Sotta that he did not have any updates, apologized for the lack of communication, and claimed it was due to HR rules, but he would let her know "right away" once he heard of any updates. (FAC ¶ 34.)

g. On January 6, 2021, Plaintiff reached out to Defendant Hartley for an update. He told Plaintiff De La Sotta that it was "virtually impossible to know how the year will play out," explained various factors in making personnel callback decisions, and said he was sorry, but it was "tough to make predictions" as to when they would be called back to work. (FAC ¶ 35.)

h. Defendant Hartley and the others identified above *concealed* the material fact that **Defendant had *already* decided it was *not* calling Plaintiffs back and they had actually been laid off**. (See FAC ¶¶ 77-79.)

(2) <u>Knowledge of falsity or concealment</u>: Defendants were not being truthful and knew full well they were not calling back these older workers. (FAC ¶¶ 12, 78.) Defendants had no intention of honoring these statements about trying to get Plaintiffs back to work. (Id.) Indeed, in July 2020 – *i.e., prior* **to making the foregoing statements (and concealing the fact of termination)** – Defendant Hartley had a meeting with the Graphics Department in which he stated that no one else would be returning and that the company had finally gotten rid of the "dead weight" – as justification for Plaintiffs' essential terminations. (Id. ¶ 38.) Defendant never told Plaintiffs they had been laid off and instead kept stringing them along until Plaintiffs learned of their termination from others outside the company. (Id. ¶ 79.)

(3) <u>Intent to defraud/induce reliance</u>:  Defendants "made these representations with the intention to induce Plaintiffs to act in reliance on these representations by foregoing other job opportunities (and likely to avoid a lawsuit) in the hopes that they would so act."  (FAC ¶ 81.)

(4) <u>Justifiable reliance</u>:  Plaintiffs had no reason to believe Defendant Hartley (and the other managers) would not honor their promises and would not be anything but truthful.  Plaintiffs reasonably and justifiably relied to their detriment by foregoing other work opportunities and continuing to wait to be called back by Defendant.  (FAC ¶ 81.)

(5) <u>Resulting Damage</u>:  Plaintiffs suffered economic and noneconomic damages as a result.  (FAC ¶¶ 81-82.)

The Ninth Circuit has held such a fraud claim does not create Section 301 preemption.  *See Milne*, 960 F.2d at 1408-10.  *Milne* is directly on point.  In *Milne*, defendants terminated their work force in connection with a company buyout.  *Id*. at 1405-06.  Plaintiffs alleged defendants made statements asking them to "have faith" that their jobs would remain and characterizing the change in control as a "revamping" of other company operations, thus they refrained from seeking other employment.  *Id*.  Plaintiffs alleged, however, that Defendants had secretly planned to liquidate the company and terminate employees all along.  *Id*.  Thus, plaintiffs sued for fraud.  *Id.*

Like our case, the *Milne* employees also had a CBA that addressed the grounds for layoff/termination and procedures for doing so (*e.g.*, notice, seniority, etc.).  *Id*. at 1409.  Defendants attempted to remove arguing Section 301 preemption.  The Ninth Circuit rejected the argument and remanded.  "Resolution of the first three [fraud] elements – misrepresentation, knowledge of falsity, and intent to defraud – does not require interpretation of the employees' [CBA].  Instead, it turns on [defendant's] state of mind and involves 'purely factual questions pertain[ing] to…the conduct and motivation of the employer.'"  *Id*. at 1408 (citation omitted).

Nor did the fourth fraud element, justifiable reliance, require interpretation of the CBA.  *Id*. at 1409.  There was no provision in the CBA that prohibited the company from promising employees that the company would remain open, or their

jobs would continue. *Id*. Whether the CBA had procedures to be followed in the event of layoffs, plant closing, or changes in operations also was irrelevant because **plaintiffs' claims arose "from alleged promises that the company would not close, and not from promises regarding rights or procedures entitled to them if the company closed."** *Id*.; *see also Hrones v. Rideout Memorial Hosp.*, No. 2:20-cv-00449-KJM, 2022 WL 2093729 at *4 (E.D. Cal. June 10, 2022) ("Although it may be necessary to consider [plaintiff's] rights under the [CBA] when deciding whether she was justified in relying on [defendant's] alleged promises, that question would require only an 'examination' of those terms, not an 'interpretation.'"). Thus, "[a]lthough a court resolving [plaintiffs'] fraud claims certainly will be required to interpret or analyze the alleged extracontractual promises, it would have no occasion to interpret the [CBA] itself, in part because these fraud claims do not originate in or refer to rights and duties derived from the [CBA]." *Milne*, 960 F.2d at 1409.

Our case is no different. Here, Plaintiffs' fraud claim arises from alleged promises that Defendants were trying to bring Plaintiffs back to work and to "hang on" – not from any promises regarding rights or procedures entitled to them under the CBA if there was a layoff. Thus, like *Milne*, there is no preemption.

Similarly, in *Niehaus v. Greyhound Lines, Inc.*, 173 F.3d 1207, 1212 (9th Cir. 1999), plaintiff pursued a Nevada state law fraud claim[2] claiming he relied on the union's promise that he could transfer to a union position despite contrary provisions in the applicable CBA. Like Defendant here, the union argued the state law fraud claim was subject to Section 301 preemption because plaintiff's "attempt to transfer from a supervisor position to one within the bargaining unit was covered by the" CBA. *Id.* The Ninth Circuit rejected this argument. "[W]hether Niehaus' reliance on [the union's] statements was justified in light of the [CBA] does not call for an interpretation of the agreement because the parties do not dispute the meaning

---

[2] The elements for fraud under Nevada law are similar to California. *Cf. Niehaus*, 173 F.3d at 1212 *with Lazar*, 12 Cal. 4th at 638.

1  of any of its relevant provisions." *Id.*

2      Just like *Milne* and *Niehaus*, here Plaintiffs' claims arise from alleged

3  promises having nothing to do with the CBA – namely, Defendants' false

4  assurances that they were planning to bring Plaintiffs back to work while concealing

5  the material fact of their termination. Plaintiffs are not disputing any recall or notice

6  rights under the CBA. Indeed, the meaning of the CBA terms are not in dispute in

7  this case. Whether the statements/omissions are actionable as fraud under California

8  law does not require any *interpretation* of rights under the CBA. "[T]he Supreme

9  Court has distinguished between claims that require interpretation or construction of

10  a labor agreement and those that require a court simply to 'look at' the agreement."

11  *Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1108 (9th Cir.

12  2000). "[W]hen the meaning of contract terms is not the subject of dispute, the bare

13  fact that a collective-bargaining agreement will be consulted ... does not require the

14  claim to be extinguished." *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994). "[T]he

15  term 'interpret' is defined narrowly—it means something more than 'consider,'

16  'refer to,' or 'apply.'" *Balcorta*, 208 F.3d at 1108.

17      Despite this clear authority, Defendant's Removal Notice argues that

18  Plaintiffs have "artfully pled" their fraud claim – but this is based on a mistaken

19  (and very twisted) reading of Plaintiffs' FAC. For example, Defendant argues that

20  Plaintiffs allege they were "misclassified" as "daily employees" under the CBA.

21  (Removal at ¶ 15.) <u>This is not true.</u> Plaintiffs FAC makes no such allegation. The

22  word "misclassification" does not even appear in the FAC. There is no cause of

23  action for misclassification. Instead, the FAC makes one passing reference in the

24  introduction that Defendant "called Plaintiffs 'daily hires,' but they functioned as a

25  typical long-term employment relationship." (FAC ¶ 9.) Defendant also claims that

26  Plaintiffs challenge the recall of younger employees with less seniority, thereby

27  alleging a breach of their rights under the CBA. (Removal at ¶ 15.) That too is

28  wrong. The recall of younger less tenured employees has no bearing on whether

Defendants statements/concealment were fraudulent.  Instead, those facts are circumstantial evidence of *age discrimination* under the California FEHA, a claim Defendant does not argue is preempted.  (See FAC ¶¶ 60-69.)

Further, while Defendant's Removal Notice argues the CBA has provisions requiring notice of terminations, the FAC does not reference these provisions.  Again, this is because Plaintiffs are not suing for any failure to comply with such notice provisions or any breach of the CBA (whether Plaintiffs are characterized as daily hires or otherwise).  Instead, Plaintiffs seek to vindicate specific common law rights provided by California law – namely the right to be free from fraud and concealment.  *See Walton v. UTV of San Francisco, Inc.*, 776 F. Supp. 1399, 1402-03 (N.D. Cal. 1991) ("The rights to be free from fraud and misrepresentation are not created nor displaced by any CBA provision but must by nature precede any agreement that can be the subject of the action.  Nor does vindication of these rights require any interpretive analysis of a CBA.")

There is no Section 301 preemption simply because the CBA may be consulted in adjudicating Plaintiffs' independent state law claims.  *See, e.g., Milne*, 960 F.2d at 1409; *Balcorta*, 208 F.3d at 1108.  Nor does it matter if a claim brought in state court asserting an independent state-law right could also give rise to a grievance under the CBA based on "precisely the same set of facts."  *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 410 (1988).  Plaintiffs are the masters of their complaint and Defendant's attempt to recharacterize Plaintiffs' fraud claim as arising under federal law based on an alternate theory is improper as this Court has recognized.  *See Ettedgui v. WB Studio Enterprises Inc.*, No. 2:20-cv-11410-MCS, 2021 WL 633859, at *3 (C.D. Cal. Feb. 18, 2021) (remanding and rejecting defendant's attempt to recharacterize plaintiff's legal theory; "Plaintiff, as the master of his complaint, has chosen to plead his overtime claim not under the CBA, but rather under California law"), *quoting Placencia v. Amcor Packaging, Distrib., Inc.*, No. SACV 14-0379-AG, 2014 WL 2445957, at *2-3 (C.D. Cal. May 12, 2014).

Plaintiff's cause of action for fraud involves rights conferred upon them solely by virtue of state law and not because of the CBA.  There is no Section 301 preemption at the first step.

## 2. <u>Plaintiffs' fraud claim does NOT substantially depend on *interpretation* of the CBA.</u>

Turning to the second step – whether Plaintiffs' fraud claim is substantially dependent on an interpretation of the CBA – the answer is also unequivocally no. Plaintiffs' complaint makes only a passing reference to belonging to a union.  The CBA is not even mentioned.  No rights under the CBA are alleged.  Interpretation of the CBA is not required.

Defendant's Removal Notice, however, argues that Plaintiffs' fraud claim cannot be decided without interpreting the CBA's integration provision and whether it precludes Plaintiffs' from claiming they were misled into believing that the CBA's Daily Employee provisions (including regarding termination without notice) did not apply to them.  (Removal ¶ 17.)  This argument, however, does not create complete preemption, but instead raises *preemption as a defense* – a critical distinction Defendant's Removal Notice overlooks.  *See, e.g., Caterpillar*, 482 U.S. at 392-98; *In re Marriage of Nasca*, 87 F. Supp. 2d at 970 ("The difference between preemption and complete preemption is important.  When the doctrine of complete preemption does not apply, but the plaintiff's state claim is arguably preempted…, the district court, being without removal jurisdiction, cannot resolve the dispute regarding preemption.  It lacks power to do anything other than remand the issue to state court where the preemption issue can be addressed and resolved.")

The Supreme Court made clear in *Caterpillar*: "[I]t is now settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar*, 482 U.S. at 393.  "The fact that an employer

might ultimately prove that an employee's claims are pre-empted does not establish that they are removable." *Id.* at 398.  Thus, a "defendant cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated.  If a defendant could do so, the plaintiff would be master of nothing.  Congress has long since decided that federal defenses do not provide a basis for removal." *Id.* at 399.

The Ninth Circuit has recognized the vital distinction between complete preemption and substantive preemption many times over.  *See, e.g.*, *Niehuas*, 173 F.3d at 1212-13; *see also Sprewell v. Golden State Warriors*, 266 F.3d 979, 991-992 (9th Cir. 2001).  In *Sprewell*, the Ninth Circuit flatly rejected the argument that the employer, like Defendant tries to do here, can bring a case within Section 301 by articulating a defense relying upon the CBA:

> Any attempt by the NBA and the Warriors to pull Sprewell's interference claims into the preemptive scope of section 301 by mounting a defense in reliance on the CBA would be fruitless. This conclusion is compelled by our recent en banc opinion in *Cramer*, in which we held that '[t]he plaintiff's claim is the touchstone for this analysis; the need to interpret the CBA must inhere in the nature of the plaintiff's claim. If the claim is plainly based on state law, *§ 301 preemption is not mandated simply because the defendant refers to the CBA in mounting a defense.*'"

The Ninth Circuit has reached this same conclusion in the context of a fraud claim like the claim Plaintiffs allege here.  For example, in *Romero v. San Pedro Forklift, Inc.*, 266 Fed. Appx. 552 (9th Cir. 2008), the plaintiff claimed his employer made misrepresentations about the existence of a pension plan allegedly set forth in an agreement pre-dating the CBA.  The employer argued the claim was preempted because the CBA governed all the terms and conditions of the plaintiff's employment and, thus, superseded the agreement upon which plaintiff based his claim.  *Id*. at 556.  Thus, the employer argued the court could not resolve plaintiff's fraud claim without interpreting the CBA.  *Id*.

The Ninth Circuit rejected this argument because resolution of the fraud claim

did not turn on an interpretation of the CBA.  *Id*. at 556.  Instead, the employer was using the CBA *as a defense* to plaintiff's state law fraud claim.  *See id*. at 555-56. Yet "a defense based on the CBA is alone insufficient to require preemption" for jurisdictional purposes.  *Id*.

This Court has also recognized that preemption as a defense does not create the complete preemption required for removal.

> Finally, WB argues that simply raising its preemption argument confers jurisdiction. Opp. 15-17. The Court disagrees, as its determination with respect to the two-step *Burnside* analysis means that WB's preemption arguments must be litigated in state court. *Caterpillar*, 482 U.S. at 398-99 ("[T]he presence of a federal question, even a § 301 question, in a defensive argument does not overcome the paramount policies embodied in the well-pleaded complaint rule—that the plaintiff is the master of the complaint, that a federal question must appear on the face of the complaint, and that the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court.") (citations omitted); *Lingle*, 486 U.S. at 413 n.12 (holding that plaintiff's claim was not completely preempted, and noting that state court on remand would have to apply federal law to remaining issues requiring interpretation of collective bargaining agreement); *Cramer*, 255 F.3d at 691 ("If the claim is plainly based on state law, § 301 preemption is not mandated simply because the defendant refers to the CBA in mounting a defense."). WB has therefore failed to satisfy its heavy burden to rebut the presumption against removal. *Gaus*, 980 F.2d at 566; *Hunter*, 582 F.3d at 1042.

*Ettedgui*, 2021 WL 633859, at \*2-4.

Just like *Romero* and *Ettedgui*, upon remand in state court, Defendant is free to argue—as it does in its Removal Notice—that Plaintiffs' reliance was not justified because of provisions in the CBA.  That, however, is a classic example of preemption as a defense, which is properly made in state court.  It does not confer federal subject matter jurisdiction on a purely state law claim.

In sum, Plaintiffs' fraud claim neither arises from rights conferred by the CBA nor requires any *interpretation* of the CBA.  Thus, there is no complete preemption under Section 301 making removal based on federal question jurisdiction improper.

## B. <u>There Is No Diversity Jurisdiction</u>

Alternatively, Defendant's removal is based on diversity jurisdiction arguing

that Defendant Hartley has been fraudulently joined and should be disregarded. Defendant is wrong again.

In evaluating whether complete diversity exists under 28 U.S.C.§ 1332(a), courts may disregard the citizenship of a fraudulently joined nondiverse defendant. *GranCare, LLC v. Thrower ex rel. Mills*, 889 F.3d 543, 548 (9th Cir. 2018) (citing *Chesapeake & Ohio Ry. Co. v. Cockrell*, 232 U.S. 146, 152 (1914)). "There are two ways to establish fraudulent joinder: '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" *Id.* (quoting *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1044 (9th Cir. 2009)).

There is a presumption against fraudulent joinder, and "defendants who assert fraudulent joinder carry a heavy burden of persuasion." *Tanner v. Ford Motor Co.*, 424 F. Supp. 3d 666, 670 (N.D. Cal. 2019). The removing party must rebut this general presumption by clear and convincing evidence. *Hamilton Materials Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007).

A court must resolve all doubts against removal; any disputed questions of fact and ambiguities in controlling state law must be resolved in favor of the nonremoving party. *Onelum v. Best Buy Stores L.P.*, 948 F. Supp. 2d 1048, 1051-52 (C.D. Cal. 2013) (citing *Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 42-43 (5th Cir. 1992)). "[I]f there is a *possibility* that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." *GranCare*, 889 F.3d at 549 (quoting *Hunter*, 582 F. 3d at 1046). In other words, if a plaintiff has *any possibility* of establishing liability, a court must reject a fraudulent joinder argument. *See, e.g.*, *Hunter*, 582 F.3d at 1044-45; *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318-19 (9th Cir. 1998).

Thus, a defendant seeking removal based on alleged fraudulent joinder must do more than show the complaint at the time of removal fails to state a claim against

the non-diverse defendant. *Padilla v. AT&T Corp.*, 697 F.Supp.2d 1156, 1159 (C.D. Cal. 2009). Instead, "[t]he defendant must also show that there is *no possibility* that the plaintiff could prevail on any cause of action it brought against the nondiverse defendant." *Id*. (emphasis added) (internal quotation marks omitted). This means "[r]emand must be granted unless the defendant shows that the plaintiff would not be afforded leave to amend his complaint to cure the purported deficiency." *Nasrawi v. Buck Consultants, LLC,* 776 F. Supp. 2d 1166, 1170 (E.D. Cal. 2011) (alterations and internal quotation marks omitted). The possibility to amend a pleading to state a cause of action against an allegedly sham defendant warrants remand. *Padilla*, 697 F.Supp.2d at 1159.

Here, Plaintiffs' FAC alleges two viable causes of action against Defendant Hartley – defamation and intentional infliction of emotional distress. As further demonstrated, resolving all ambiguities in Plaintiffs' favor, Plaintiffs have at least a *possibility* of establishing liability on these claims.[3]

### 1. **Plaintiffs have the "possibility" of stating a claim against Hartley for defamation.**

Plaintiffs' fourth cause of action is for defamation based on the statement by Defendant Hartley that Plaintiffs were not being returned to work because they were "dead weight." Plaintiffs allege that this statement was made with malice and in reference as justification for Plaintiffs' termination, thereby implying incompetence and/or lack of necessary skills in their jobs.

California Civil Code § 46 provides, in pertinent part: "Slander is a false and unprivileged publication, orally uttered, and also communications by radio or any mechanical or other means which…Tends directly to injure him in respect to his office, profession, trade or business, either by imputing to him general

---

[3] Further, Plaintiffs intend to amend to add Defendant Hartley to the cause of action for fraud, which was inadvertently omitted against him in the FAC. Plaintiff submits that this too would support remand. *See e.g. Ravelo v. Ascendo Res., LLC*, No. 2:20-cv-09274-MCS-JC, 2020 WL 6470381, at *1 (C.D. Cal. Nov. 2, 2020) (court must dismiss an action if it determines at "any time" that it lacks subject matter jurisdiction).

disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade, or business that has a natural tendency to lessen its profits…or [w]hich, by natural consequence, causes actual damage."

Defendant's Removal Notice argues that Plaintiffs cannot state a claim for defamation against Defendant Hartley because "Plaintiffs' sole allegation in support of this cause of action is that Hartley allegedly referred to them as 'dead weight,'" which is nonactionable "opinion."  (Def. Removal at ¶ 50.)  But that is not Plaintiffs' <u>sole</u> allegation.  Nor is the statement nonactionable opinion as a matter of law.  Defendant ignores the proper legal standard – the context of the statement is critical in determining its meaning and effect.

The test of whether a statement is fact or opinion is "whether a reasonable fact finder could conclude that the statement implied a provably false assertion of fact" *under a totality of the circumstances*.  *Kahn v. Bower*, 232 Cal.App.3d 1599, 1600, 1607 (Cal. Ct. App. 1991), reh'g denied and opinion modified (Sept. 6, 1991); *citing Milkovich v. Loran Journal Co.*, 497 U.S. 1, 19 (1990).

### a.  <u>The statement is defamatory on its face.</u>

As a threshold matter, Defendant Hartley's statement is defamatory on its face.  For example, the Urban Dictionary provides the following as a definition for "dead weight": "A person that is usually useless in any sort of participation…" (*https://www.urbandictionary.com/define.php?term=Dead%20Weight*). The similar phrase "deadwood" is defined by Merriam-Webster to include "useless personnel." (*https://www.merriam-webster.com/dictionary/deadwood*); *see also https://www.hilotutor.com/archives_deadwood.html* ("Deadwood is an alternative to the term dead wight.  Whether something is deadwood or dead weight, it's useless, it's a hindrance, it's dragging everything down.")

Moreover, Defendant Hartley did not merely state that Plaintiffs were "dead weight," but provided the statement as justification for the reason Plaintiffs were

terminated.  Thus, the dispositive question here is not whether Plaintiffs can prove false that they were dead weight.  Instead, Plaintiffs intend to prove false that they were *not terminated* because they were dead weight.  This is provably false and not a non-actionable opinion – *i.e.*, Plaintiffs allege the true reason for their termination was age discrimination as they were competent high-performing employees.

An "employer's motivation for terminating employment" is "clearly a 'provable fact,'" as opposed to nonactionable opinion, because it is "a fact plaintiffs attempt to prove routinely in wrongful termination cases."  *Overhill Farms, Inc. v. Lopez*, 190 Cal. App. 4th 1248, 124 (Cal. Ct. App. 2010).  Cases have found derogatory statements regarding performance, particularly in connection with stated grounds for termination, qualify as actionable defamation rather than protected opinion.  *See*, *e.g.*, *Oberkotter v. Woolman*, 187 Cal. 500, 503-04 (Cal. 1921) (accusation teacher was about to be terminated because the city superintendent considered him a "weak spot in the public school system of instruction"); *Umamoto v. Insphere Insurance Solutions, Inc.,* No. 13–CV–0475–LHK, 2013 WL 2084475, *4–5 (N.D. Cal. May 14, 2013) (employer falsely stating plaintiff was terminated "due to performance"); *Gallant v. City of Carson*, 128 Cal. App. 4th 705, 708 (Cal. Ct. App. 2005), *disapproved of on other grounds by Reid v. Google, Inc.*, 50 Cal. 4th 512 (Cal. 2010) (employer said plaintiff "was terminated" because she was "incompetent").  Thus, Defendant Hartley's stated motivation for termination because Plaintiffs were "dead weight" is defamatory on its face.

### b. The statement is defamatory under the totality of the circumstances.

Defendant Hartley's statement is not only defamatory on its face, but especially so under the totality of the circumstances given Hartley's status (as Plaintiffs' supervisor) and the setting of the statement (a corporate meeting).

To make the fact versus opinion determination, courts look at the **"totality of the circumstances,"** including the content of the communication, the context in

which it was made, the unique position of the publisher, and the knowledge and understanding of the audience to whom the publication is directed. *Kahn*, 232 Cal. App. 3d at 1608. One way a statement will be deemed sufficiently factual is if it "implies the allegations of undisclosed defamatory facts as the basis for the opinion." *Okun v. Sup. Ct.*, 29 Cal. 3d 442, 452 (Cal. 1981). This is true even if a statement is couched or stated in language suggesting it is a mere opinion. *See*, *e.g.*, *Kahn*, 232 Cal. App. 3d at 1609 ("I feel her level of incompetence…makes it impossible for us to work with her" is expression of fact because it was "reasonably susceptible of a provable false meaning.")

A defendant may also be liable for defamatory statements that are insinuated rather than stated explicitly. *Stoneking v. Briggs*, 254 Cal. App. 2d 563, 572-73 (Cal. Ct. App. 1967) (statement defamatory because when examined *in totality of circumstances* the insinuation was plaintiff was removed from his position because he failed to act in the best interest of the membership and was incompetent).

Moreover, a statement will also be deemed sufficiently factual (rather than opinion) when, as here, the publication is made by persons with specialized expertise and knowledge (like Defendant Hartley as Plaintiffs' supervisor and a termination decisionmaker) whose accusations "carry the ring of authenticity and reasonably might be understood as being based on fact." *See Slaughter v. Friedman*, 32 Cal. 3d 149, 154 (Cal. 1982).

Generally, the determination of whether a statement is one of fact or opinion is a matter of law for the court. *Kahn*, 232 Cal. App. 3d at 1608. **But when a statement is "ambiguous" and "cannot be characterized as factual or nonfactual as a matter of law," then it is for the jury to determine whether an ordinary person would have understood the statement as asserting fact.** *Id*.

For example, in *Kahn*, 232 Cal. App. 3d at 1604-05, a social worker brought a defamation claim against the director of a facility the company worked with based on a letter sent to plaintiff's supervisor. The letter stated, among other things, that

there were children they felt were "seriously being interfered with by the incompetence of [plaintiff]." *Id*. The letter also included the following: "This goes so far beyond incompetence that I almost wonder about some kind of hostility towards the child or toward handicapped children in general." *Id*.  The letter included various other comments about plaintiff such as the writer's belief that plaintiff did not work at all or well with the schools. *Id*.

The trial court granted judgment on the pleadings on the basis that the statements were opinion and, thus, not actionable, but the California Court of Appeal reversed. *Id*. at 1606.  The Court of Appeal found that because of the writer's professional status and because the letter was sent to plaintiff's director, the letter was susceptible to the interpretation that plaintiff's incompetence was an "actual" condition and a matter of fact. *Id*. at 1610.

Here, viewing the evidence in the non-removing party's favor, a jury could determine based on the totality of the circumstances that Defendant Hartley was implying that Plaintiffs were removed from their positions (*i.e.*, terminated) because they were useless, incompetent, and/or lacked the required skills for the job.  He made the "dead weight" comment in a serious company meeting as Plaintiffs' supervisor and someone who participated in their termination decision.  (See FAC ¶¶ 18, 38; see also Chesler Decl., Ex. A (draft second amended complaint) ¶ 85.)[4]  Thus, Defendant Hartley's statement carries a "ring of authenticity" and, thus, could reasonably be understood as implying a factual statement.  *See Slaughter*, 32 Cal. 3d at 154; *Kahn*, 232 Cal. App. 3d at 1607; *ZL Techs., Inc. v. Does 1-17*, 13 Cal. App. 5th 603, 624 (Cal. Ct. App. 2017).  Certainly, there is at least a "possibility" that Plaintiffs will prevail on their defamation claim against Defendant Hartley.

---

[4] While Plaintiffs believe the FAC sufficiently pleads the facts establishing why remand is proper, in an abundance of caution Plaintiffs provide a draft second amended complaint concurrently with the filing of this motion to further demonstrate why any alleged deficiencies can be cured by amendment.

1

### c.  **Defendant's authority is inapposite.**

2      The cases Defendant cites in its Removal Notice are inapposite.  For example,

3  in *Seelig v. Infinity Broad. Corp.*, 97 Cal. App. 4th 798, 810 (Cal. Ct. App. 2002),

4  the California Court of Appeal found a radio host did not defame plaintiff when he

5  called her a "local loser" and a "chicken butt" because it was stated in a "nonserious

6  manner" and such statements were "too vague to be capable of being proven true or

7  false" in that context.

8      Similarly, in *Moyer v. Amador Valley Joint Union High School District*, 225

9  Cal. App. 3d 720, 721-22 (Cal. Ct. App. 2008), a student ran a story in the school

10  newspaper by the headline "Students terrorize [teacher]" and included comments

11  such as "[teacher] is a babbler, and babblers are annoying to me…," and "he pissed

12  me off, he is the worst teacher at [the school.]"  The California Court of Appeal

13  found there was no factual assertion capable of being proven true or false.  *Id*. at

14  725.  Given the full text and context, the student's statement clearly expressed

15  subjective judgment and was "simply an expression of anger or disgust."  *Id*.

16      Likewise, in *Accinelli v. New Times, Inc.* No. B137472, 2002 WL 532286, at

17  *6 (Cal. Ct. App. Apr. 10, 2002) – which is unpublished – plaintiff's defamation

18  claim was based on *an after-hours discussion solely between plaintiff and his*

19  *supervisor* in which the supervisor told plaintiff that his work was "total shit."

20  Again, context mattered: "[The] remark was crude and impolite.  It was probably

21  not a helpful critique of [plaintiff's] writing.  But there is nothing to suggest it was

22  any more than a vulgar statement of [the supervisor's] opinion.  The statement was

23  made in the middle of a heated discussion between a writer and her editor over the

24  writer's story, and [plaintiff] admitted that [the supervisor's] statement was a clear

25  indication that [he] did not think the story was well written."  *Id*. at *7.

26      Nor are any of these cases analyzed under the standard for *fraudulent joinder*

27  (whether a plaintiff has any possibility of alleging a claim), which is far lower than

28  that in evaluating a claim for purposes of a motion to dismiss.  Indeed, many cases

1  have found against fraudulent joinder and remand appropriate in defamation claims

2  alleging far more vagueness.  *See e.g., Johnson v. Wells Fargo & Co.*, No. CV 14-

3  06708 MMM JCX, 2014 WL 6475128, at \*6–7 (C.D. Cal. Nov. 19, 2014)

4  (remanding despite plaintiff's boilerplate vague allegation that individual defendant

5  made false and defamatory statement that plaintiff was terminated because he

6  violated company policy and/or the law, engaged in misconduct, and engaged in

7  potential criminal activity); *Morales v. Gruma Corp.*, No. CV 13-7341-CAS, 2013

8  WL 6018040 (C.D. Cal. Nov. 12, 2013) (accord); *see also Webber v. Nike USA,*

9  *Inc.,* No. 12–CV–00974 BEN, 2012 WL 4845549, \*6 (S.D. Cal. Oct. 9, 2012)

10  (statement that plaintiff was terminated for "poor performance" sufficient to show

11  "non-fanciful possibility" that Plaintiff adequately stated defamation claim under

12  California law).

13      Plaintiffs have – at a minimum – the possibility of establishing a claim for

14  defamation against Defendant Hartley under California law.

15      **2.  Plaintiffs have the "possibility" of stating a claim against**

16      **Hartley for intentional infliction of emotional distress.**

17      Finally, Defendant argues that Plaintiffs cannot prevail as a matter of law on a

18  claim for intentional infliction of emotional distress ("IIED") against Defendant

19  Hartley because Plaintiffs merely allege personnel management decisions, which

20  cannot constitute "outrageous" conduct as a matter of law, relying upon *Janken v.*

21  *GM Hughes Elecs.*, 46 Cal. App. 4th 55, 80 (Cal. Ct. App. 1996).  (Def. Removal at

22  ¶ 51.)  Defendant is mistaken and again seemingly forgets the applicable standard

23  on fraudulent joinder – whether there is a non-fanciful *possibility* that plaintiff may

24  state a claim.  *See Calero v. Unisys Corp.*, 271 F. Supp. 2d 1172, 1178 n. 2 (N.D.

25  Cal. 2003) (*Janken* inapplicable to remand case as it does not apply the "no

26  possibility standard").

27      Nor does *Janken* hold that discrimination claims cannot form the basis for

28  IIED as a matter of law.  *See* 46 Cal. App. 4th at 80.  Instead, *Janken* simply stated

that alleging discriminatory intent in personnel decisions *alone* is insufficient. *See id*. Indeed, although a manager's act of terminating employees does not by itself generally create an action for IIED, such a claim remains possible "where the behavior goes beyond the act of termination." *Gibson v. Am. Airlines*, No. C 96-1444-FMS, 1996 WL 329632, at *4 (N.D. Cal. June 6, 1996) (individual defendant could not be treated as a sham defendant where IIED claim alleged supervisor had denied her medical leave in a deceptive manner); *see also Dagley v. Target Corp., Inc.*, No. CV 09-1330-VBF, 2009 WL 910558, *3 (C.D. Cal. March 31, 2009) (granting remand and refusing to disregard individual supervisor where IIED claim alleged supervisor terminated plaintiff during medical leave without inquiry or warning because it was possible a jury could find termination constituted denial of right to medical leave in a deceptive manner).

Thus, "if a plaintiff 'alleges conduct other than that inherent in terminating an employee', such as violating a fundamental interest of the employee…in a deceptive manner that results in the plaintiff being denied rights granted to other employees,' then a claim for [IIED] is possible against a supervisor." *Dagley*, 2009 WL 910558, at *3, *citing Gibson*, 1996 WL 329632 at *4; *see also Barsell v. Urban Outfitters, Inc.*, No. CV 09-02604-MMM, 2009 WL 1916495, at *4 (C.D. Cal. July 1, 2009) (granting remand and finding IIED claim possible against supervisor where plaintiff alleged supervisor presented her with false report regarding her tardiness, issued a written warning thereupon, and informed plaintiff's husband she was terminated while plaintiff was in the hospital for depression).

Here, Plaintiffs do not allege simply that they were fired due to their age. Plaintiffs allege that Defendants – including Defendant Hartley – defamed them and terminated them in a fraudulent way by leading them on that Defendants were trying to bring them back to work, while concealing the fact that Plaintiffs had already been terminated, thereby inducing Plaintiffs to refrain from finding other employment. Thus, Plaintiffs have at least a non-fanciful possibility of stating a

claim for IIED against Defendant Hartley.  *See Ybarra v. Universal City Studios, LLC*, No. CV 13-4976-PSG, 2013 WL 5522009, *5 (C.D. Cal. Oct. 2, 2013) (merely a "glimmer of hope" that plaintiff can establish claim sufficient to preclude application of fraudulent joinder doctrine); *see also Barsell*, 2009 WL 1916495, *7 (noting "in other cases in which defendants have argued that a supervisor's alleged conduct was not sufficiently outrageous to support an [IIED] claim, district courts applying the fraudulent joinder standard have generally found a non-fanciful possibility of liability, even where plaintiff's claim appeared 'relatively weak'" and collecting cases).  Accordingly, Defendant cannot meet its heavy burden to demonstrate no reasonable possibility of an IIED claim against Defendant Hartley.

In sum, there is no diversity of citizenship because Defendant Hartley and Plaintiffs are California citizens and Defendant has not established fraudulent joinder.  Thus, the Court lacks jurisdiction, requiring remand.  28 U.S.C. § 1447(c).

## IV.   <u>CONCLUSION</u>

This case involves purely state law claims and non-diverse properly joined parties.  Thus, for all the foregoing reasons, Plaintiffs motion should be granted and this case remanded to California Superior Court.

DATED: November 7, 2022          Respectfully submitted,

CHESLER LAW P.C.

By  /s/ Natasha Chesler
      Natasha Chesler

Attorneys for Plaintiffs
Sammy Corea, Carol De La Sotta,
Bill Hutson, Sinbad Kazakian,
William Alan Pfister, Jr., Rob Ross,
Daniel Storm, Ruby Tse, and
Bernabe Zepeda