MITCHELL SILBERBERG & KNUPP LLP
SETH E. PIERCE (SBN 186576), sep@msk.com
BRIAN M. RAGEN (SBN 275045), byr@msk.com
WILL S. LISA (SBN 310541), wsl@msk.com
2049 Century Park East, 18th Floor
Los Angeles, CA 90067-3120
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

Attorneys for Defendants Sports Media
Services LLC and Gary Hartley

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMMY COREA, CAROL DE LA SOTTA, BILL HUTSON, SINBAD KAZAKIAN, WILLIAM ALAN PFISTER, JR., ROB ROSS, DANIEL STORM, RUBY TSE, and BERNABE ZEPEDA,<br><br>     Plaintiffs,<br><br>     v.<br><br>FOX SPORTS HOLDINGS, LLC, a Delaware Limited Liability Company; SPORTS MEDIA SERVICES LLC, a Delaware Limited Liability Company; FOX PAYROLL SERVICES, INC., a Corporation; FOX PAYROLL SERVICES LLC, a Delaware Limited Liability Company; FOX SPORTS 1, LLC, a Delaware Limited Liability Company; FOX SPORTS 2, LLC, a Delaware Limited Liability Company; GARY HARTLEY, an individual and DOES 1 through 10, inclusive,<br><br>     Defendants. | CASE NO. 2:22-cv-07312-MCS (JCx)<br><br>(Removed from Los Angeles Superior Court Case No. 22STCV26380)<br><br>**DEFENDANTS SPORTS MEDIA SERVICES LLC AND GARY HARTLEY'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>Time:    9:00 a.m.<br>Date:    December 19, 2022<br>Place:   Courtroom 7C |

Mitchell
Silberberg &
Knupp LLP

**MOTION TO DISMISS**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that, on December 19, 2022, in Courtroom 7C of the United States District Court for the Central District of California, located at the First Street Courthouse, 350 W. 1st Street, Los Angeles, California 90012, at 9:00 a.m., or as soon thereafter as the matter may be heard, Defendants Sports Media Services LLC ("SMS") and Gary Hartley ("Hartley") (collectively, "Defendants"), will and hereby do move this Court, pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order dismissing the First Amended Complaint of Plaintiffs Sammy Corea, Carol De La Sotta, Bill Hutson, Sinbad Kazakian, William Alan Pfister, Jr., Rob Ross, Daniel Storm, Ruby Tse and Bernabe Zepeda (collectively, "Plaintiffs") in its entirety.

This Motion is made on the following grounds:[1]

1.	Plaintiffs' First Cause of Action for Age/Disability Discrimination in Violation of Cal. Gov't Code §§ 12900 *et seq*., Second Cause of Action for Wrongful Termination in Violation of Public Policy, and Third Cause of Action for Promissory Fraud/Intentional Misrepresentation and/or Failure to Disclose Material Facts fail to state a cause of action because (a) Plaintiffs have not complied with Federal Rules of Civil Procedure ("Rules") 8 and/or 10, which require them to plead a short and plain statement of the claim as to **each** Plaintiff; and (b) Plaintiffs have not alleged facts sufficient to state an age discrimination, disability discrimination, or fraud claim.

2.	Plaintiffs' First Cause of Action for Age/Disability Discrimination in Violation of Cal. Gov't Code §§ 12900 *et seq*. and Second Cause of Action for Wrongful Termination in Violation of Public Policy fail to state a cause of action because Plaintiffs have not adequately alleged their (alternative) disparate impact theory.

---

[1] Defendant Hartley was named only in Plaintiffs' defamation and intentional infliction of emotional distress causes of action, and therefore moves only as to those claims.

3.      Plaintiffs' Third Cause of Action for Promissory Fraud/Intentional Misrepresentation and/or Failure to Disclose Material Facts is also (a) preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. § 141 *et seq.* because it is a disguised claim for breach of a collective bargaining agreement and/or requires interpretation of a collective bargaining agreement for its resolution; and (b) based on alleged "promises" that are insufficiently definite to be enforceable or justifiably relied upon.

4.      Plaintiffs' Fourth Cause of Action for Defamation fails to state a cause of action because it is based on alleged statements that constitute (at most) opinions, which are not actionable as a matter of law.

5.      Plaintiffs' Fifth Cause of Action for Intentional Infliction of Emotional Distress fails to state a cause of action because Plaintiffs have not pled "extreme and outrageous" conduct as a matter of law.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the accompanying Request for Judicial Notice, the accompanying Declaration of Seth E. Pierce, the pleadings and orders in the Court's files for this case, any other matters of which the Court may or must take judicial notice, any Reply that is filed in support of this Motion, any argument presented at the hearing on this Motion, and any other matters the Court deems proper.

This Motion is made following the conference of counsel pursuant to Civil Local Rule 7-3 that took place by phone on October 7, 2022 and October 10, 2022. *See* Declaration of Seth E. Pierce ("Pierce Decl."), ¶¶2-3.

Mitchell
Silberberg &
Knupp LLP

**MOTION TO DISMISS**

1   DATED: November 11, 2022          Respectfully submitted,

2                                      MITCHELL SILBERBERG & KNUPP LLP
                                       SETH E. PIERCE
3                                      BRIAN M. RAGEN
                                       WILL S. LISA
4

5                                      By: /s/Seth E. Pierce
6                                          Seth E. Pierce
                                           Attorneys for Defendants Sports Media
7                                          Services LLC and Gary Hartley

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ........................................................................................11

II.     STATEMENT OF FACTS.........................................................................13
        A.     Plaintiffs' Employment ...........................................................13
        B.     The Applicable CBA and Plaintiffs' Classification............................13
        C.     The COVID-19 Pandemic Forces SMS to Shut Down .....................14
        D.     Plaintiffs Are Not Called Back to Work ...........................................14

III.    LEGAL ARGUMENT ..............................................................................14
        A.     Plaintiffs' Age/Disability Discrimination, Wrongful Termination
               and Promissory Fraud Claims Do Not Comply With Federal Rules
               of Civil Procedure 8 and/or 10................................................................14
        B.     Plaintiffs Have Not Adequately Pled Age or Disability
               Discrimination..........................................................................18
               1.     Age Discrimination.............................................................18
               2.     Disability Discrimination ...................................................19
        C.     Plaintiffs Have Not Adequately Pled Disparate Impact ....................20
        D.     Plaintiffs' Promissory Fraud Claim Must Be Dismissed...................21
               1.     Plaintiffs' Promissory Fraud Claim Is Preempted...................21
               2.     SMS' Alleged Promises Are Not Sufficiently Definite to
                      Form the Basis of a Promissory Fraud Claim In Any Event....26
        E.     Plaintiffs' Defamation Claim Fails Because the Alleged Statements
               Are at Most Protected Opinions........................................................28
        F.     Plaintiffs' IIED Claim Fails Because They Have Not Alleged Any
               Extreme and Outrageous Conduct. ....................................................29

IV.     CONCLUSION .........................................................................................31

Mitchell
Silberberg &
Knupp LLP

**MOTION TO DISMISS**

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Accinelli v. New Times, Inc.*,
No. B137472, 2002 WL 532286 (Cal. Ct. App. Apr. 10, 2002) ..........................29

*Adams v. BRG Sports, Inc.*,
No. 17-CV-00457-BLF, 2017 WL 5598647
(N.D. Cal. Nov. 21, 2017) ...........................................................................16, 17

*Alaska Airlines v. Schurke*,
898 F.3d 904 (9th Cir. 2018) ..............................................................................23

*Allis-Chalmers Corp. v. Lueck*,
471 U.S. 202 (1985) ............................................................................................21

*Arnold v. Sessions*,
2018 WL 6728008 (N.D. Cal. Dec. 21, 2018) ...................................................20

*Arteaga v. Brink's, Inc.*,
163 Cal. App. 4th 327 (2008) .............................................................................19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ......................................................................................13, 17

*Bale v. Gen. Tel. Co.*,
795 F.2d 775 (9th Cir. 1986) ..............................................................................24

*Bautista v. Los Angeles County*,
216 F.3d 837 (9th Cir. 2000) ..................................................................15, 16, 17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ......................................................................................13, 18

*Brown v. Lucky Stores*,
246 F.3d 1182 (9th Cir. 2001) ............................................................................24

*Brundage v. Hahn*
(1997) 57 Cal. App. 4th 228 ...............................................................................20

*Cahill v. Liberty Mutual Ins. Co.*,
80 F.3d 336 (9th Cir.1996) .................................................................................13

Mitchell
Silberberg &
Knupp LLP

6

**MOTION TO DISMISS**

# TABLE OF AUTHORITIES
<u>(continued)</u>

**Page(s)**

*Campanelli v. Regents of Univ. of California*,
  44 Cal. App. 4th 572 (1996) ....................................................................... 28

*Carlos v. Old Dominion Freight Line, Inc.*,
  No. CV1506127MWFMRWX, 2016 WL 11758480
  (C.D. Cal. May 19, 2016), *aff'd,* 726 F. App'x 576 (9th Cir. 2018) ................... 19

*Caterpillar Inc. v. Williams*,
  482 U.S. 386 (1987) ............................................................................. 23, 24

*Cavallaro v. UMass Mem'l Healthcare, Inc.*,
  678 F.3d 1 (1st Cir. 2012) .......................................................................... 25

*City of Oakland v. Wells Fargo Bank, N.A.*,
  2018 WL 3008538 (N.D. Cal. June 15, 2018) ................................................ 20

*Corona v. Quad Graphics Printing Corp.*,
  218 F. Supp. 3d 1068 (C.D. Cal. 2016) ........................................................ 30

*Cort v. St. Paul Fire & Marine Ins. Cos.*,
  311 F.3d 979 (9th Cir. 2002) ...................................................................... 28

*Erone Corp. v. Skouras Theatres Corp.*,
  19 F.R.D. 299 (S.D.N.Y.1956) ..................................................................... 16

*Everts v. Matteson*,
  21 Cal. 2d 437 (1942) ............................................................................... 26

*Faust v. California Portland Cement Co.*,
  150 Cal.App.4th 864 (2007) ....................................................................... 19

*Filho v. Gansen*,
  2018 WL 5291986 (N.D. Cal. Oct. 19, 2018) ................................................ 20

*Fletcher v. W. Nat'l Life Ins. Co.*,
  10 Cal.App.3d 376 (1970) .......................................................................... 29

*Foley v. Interactive Data Corp.*,
  47 Cal. 3d 654 (1988) ............................................................................... 26

Mitchell
Silberberg &
Knupp LLP

**MOTION TO DISMISS**

1

# TABLE OF AUTHORITIES
<u>(continued)</u>

**<u>Page(s)</u>**

*Foroudi v. Aerospace Corp.*,
  57 Cal. App. 5th 992, 1007 (2020) ....................................................... 18

*Green v. City & Cnty. of San Francisco*,
  No. 17-CV-00607-TSH, 2021 WL 3810243
  (N.D. Cal. Aug. 26, 2021) .................................................................... 20

*Guz v. Bechtel Nat'l Inc.*,
  24 Cal.4th 317 (2000) .......................................................................... 18

*Hall v. FedEx Freight, Inc.*,
  2015 WL 574177 (E.D. Cal. Feb. 11, 2015) ....................................... 26

*Hamilton v. Partners Healthcare Sys., Inc.*,
  209 F. Supp. 3d 397 (D. Mass. 2016) .................................................. 25

*Hayden v. Reickerd*,
  957 F.2d 1506 (9th Cir. 1991) ............................................................. 21

*Hunter v. Up-Right, Inc.*,
  6 Cal. 4th 1174, 864 P.2d 88 (1993) ................................................... 27

*Ibarbia v. Regents of Univ. of California*,
  191 Cal. App. 3d 1318 (1987) ............................................................. 21

*In re Stac Elecs. Sec. Litig.*,
  89 F.3d 1399 (9th Cir. 1996) ............................................................... 27

*Int'l Bhd. of Elec. Workers, AFL-CIO v. Hechler*,
  481 U.S. 851 (1987) ............................................................................. 23

*Janken v. GM Hughes Elecs.*,
  46 Cal. App. 4th 55 (1996) .................................................................. 29

*Johnson v. NBC Universal, Inc.*,
  409 F. App'x 529 (3d Cir. 2010) ......................................................... 25

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ............................................................. 17

Mitchell
Silberberg &
Knupp LLP

8

**MOTION TO DISMISS**

# TABLE OF AUTHORITIES
<u>(continued)</u>

**Page(s)**

*Kobold v. Good Samaritan Reg'l Med. Ctr.*,
  832 F.3d 1024 (9th Cir. 2016) ................................................................... 23

*Moreau v. San Diego Transit Corp.*,
  210 Cal. App. 3d 614 (1989) ..................................................................... 21

*Moyer v. Amador Valley Joint Union High School District*,
  225 Cal. App. 3d 720 (2008) ..................................................................... 29

*Okun v. Superior Ct.*,
  29 Cal. 3d 442 (1981) ................................................................................ 28

*Olguin v. Inspiration Consol. Copper Co.*,
  740 F.2d 1468 (9th Cir. 1984), *overruled in part on other grounds*,
  *Allis-Chalmers Corp.*, 471 U.S ............................................................... 23

*Parrino v. FHP, Inc.*,
  146 F.3d 699 (9th Cir. 1998) *superseded by statute*
  *on other grounds as recognized in*
  *Abrego v. Dow Chemical Co.*, 443 F.3d 676 (9th Cir. 2006) .................... 13

*Roche v. Audio Visual Servs. Grp., Inc.*,
  2010 WL 3021575 (D. Nev. July 28, 2010) .............................................. 30

*Rochlis v. Walt Disney Co.*,
  19 Cal. App. 4th 201 (1993) ...................................................................... 26

*San Joaquin Deputy Sheriffs' Ass'n v. Cnty. of San Joaquin*,
  898 F. Supp. 2d 1177 (E.D. Cal. 2012) ..................................................... 29

*Seelig v. Infinity Broad. Corp.*,
  97 Cal. App. 4th 798 (2002) ...................................................................... 28

*Selby v. Pepsico, Inc.*,
  784 F.Supp. 750 (N.D.Cal. 1991), *aff'd sub nom.*
  *Nesbit v. Pepsico, Inc.*, 994 F.2d 703 (9th Cir. 1993) ............................. 18

*Starzynski v. Capital Pub. Radio, Inc.*,
  88 Cal. App. 4th 33 (2001) ........................................................................ 24

**MOTION TO DISMISS**

Mitchell
Silberberg &
Knupp LLP

1

**TABLE OF AUTHORITIES**
<u>(continued)</u>

2

3

**Page(s)**

4

*Stout v. Potter*,
   276 F.3d 1118 (9th Cir. 2002) .................................................................. 20

5

6

*UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*,
   117 F. Supp. 3d 1092 (C.D. Cal. 2015) ................................................... 17

7

8

*Unterberger v. Red Bull N. America, Inc.*,
   162 Cal.App.4th 414 (2008) ...................................................................... 29

9

10

*Walker v. Boeing Corp.*,
   218 F. Supp. 2d 1177 (C.D. Cal. 2002) ................................................... 30

11

*Young v. Anthony's Fish Grottos, Inc.*,
   830 F.2d 993 (9th Cir. 1987) ..................................................................... 25

12

13

**STATUTES**

14

California Government Code
   § 12941 ........................................................................................................ 21

15

16

Labor Management Relations Act
   § 301 ...............................................................12, 21, 22, 23, 24, 25, 26

17

18

**OTHER AUTHORITIES**

Federal Rules of Civil Procedure
   Rule 8 ...............................................................................12, 14, 15, 17

19

   Rule 8(a)(2) .................................................................................. 14, 17

20

   Rule 9(b) ............................................................................................ 17

   Rule 10 ........................................................................................ 12, 14

21

   Rule 10(b) ................................................................................... 15, 16

22

23

24

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

**MOTION TO DISMISS**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Defendant Sports Media Services LLC ("SMS") prepares graphics for live sports broadcasts aired by Fox Sports and its affiliates (*e.g.*, player profiles; statistical comparisons; animation).  Plaintiffs,[2] all "daily" union employees, worked as graphic artists or otherwise facilitated the creation of these graphics.  Defendant Gary Hartley ("Hartley") supervised Plaintiffs' department.

SMS, like many companies, was severely impacted by the COVID-19 pandemic, as stay-at-home orders were imposed and nearly all major U.S. sports organizations either cancelled or postponed their seasons virtually overnight. Plaintiffs, along with countless other employees, were sent home given the dramatic reduction in work, as well as numerous restrictions on in-person gatherings.

SMS' operations eventually resumed, but Plaintiffs and other personnel were not re-hired.  SMS asserts that is due to changes in the quantity and type of work being performed – changes accelerated by the pandemic and Fox's recent sale of the Fox Regional Sports Networks (where the games for which Plaintiffs created graphics often aired).  Plaintiffs claim that this is mere pretext – a mask for illegal age and disability discrimination – even though Plaintiffs were employed well into their 40s, 50s, 60s, 70s, **and even 80s** by the same personnel who made the decision not to bring them back following dramatic changes to SMS' business needs.

Plaintiffs assert a litany of claims, specifically (1) age/disability discrimination (FAC ¶¶ 59-75); (2) wrongful termination (*id.*); (3) promissory fraud, on the theory that SMS misled Plaintiffs about their prospects for returning or was not more upfront about those prospects (*id.,* ¶¶ 76-83); (4) defamation, on the ground that Hartley purportedly referred to Plaintiffs as "dead weight" (*id.*, ¶¶ 84-92); and (5) intentional infliction of emotional distress (*id.* at ¶¶ 93-98).  But these

---

[2] Plaintiffs Sammy Corea, Carol De La Sotta, Bill Hutson, Sinbad Kazakian, William Alan Pfister, Jr., Robb Ross, Daniel Storm, Ruby Tse and Bernabe Zepeda are referred to herein collectively as "Plaintiffs."

Mitchell
Silberberg &
Knupp LLP

1   claims fail for a multitude of reasons.[3]

2       **First**, Plaintiffs base their age, disability, wrongful termination and

3   promissory fraud claims on improper "group" or "hybrid" pleadings – intermixing

4   allegations specific to one or a small group of plaintiffs (*e.g.*, purported disabilities;

5   purported conversations), with broader allegations of misconduct applicable to all

6   (*e.g.*, blast emails), in an attempt to state the claims as to each Plaintiff.  The starkest

7   example (but by no means the only one) is Plaintiffs' disability claim, which is

8   asserted on behalf of all nine Plaintiffs, even though only two actually identify any

9   alleged disability.  But the law is clear that each Plaintiff must separately allege his

10  or her **own** entitlement to relief.  Composite allegations are impermissible.

11      **Second**, while it would be more obvious if Plaintiffs' claims were separately

12  stated, as required by Rules 8 and 10, Plaintiffs do not allege facts sufficient to

13  establish entitlement to relief for either their age or disability discrimination or fraud

14  theories.

15      **Third**, Plaintiffs' single-sentence allegation of disparate impact does not come

16  close to meeting the standard for pleading that theory of liability as to their age or

17  disability discrimination claims.

18      **Fourth**, Plaintiffs' fraud claim is preempted by Section 301 of the Labor

19  Management Relations Act ("Section 301") because it is a disguised claim for breach

20  of Plaintiffs' collective bargaining agreement and/or requires its interpretation.

21      **Fifth**, Plaintiffs' defamation claim fails because the alleged statement, even if

22  made, constitutes a non-actionable opinion.

23      **Sixth**, Plaintiffs' intentional infliction of emotional distress ("IIED") claim

24  fails because Plaintiffs have not alleged the type of "extreme or outrageous" conduct

25  required to state such a claim.

26

27  _____
[3] Hartley was named only in Plaintiffs' defamation and IIED causes of action, and

28  therefore moves only as to those claims.

Mitchell
Silberberg &
Knupp LLP

**MOTION TO DISMISS**

1   The First Amended Complaint ("FAC") should be dismissed **with prejudice**. [4]

2   **II.   STATEMENT OF FACTS**[5]

3        **A.   Plaintiffs' Employment**

4        Plaintiffs were employed in SMS' Graphics Department in various roles,

5   including Graphic Artists, Electronic Graphics Operators, Head Electronic Graphics

6   Operators, Senior Designers, and Viz Artists. *See* FAC, ¶ 16.  Plaintiffs were

7   primarily responsible for preparing graphics that appeared on various sports

8   broadcasts, or supporting or overseeing such efforts. *See* FAC, ¶ 16-18.

9        **B.   The Applicable CBA and Plaintiffs' Classification**

10       Plaintiffs' employment was governed at all relevant times by the Agreement

11  By and Between IATSE and Sports Media Services LLC Production Facilities (the

12  "CBA").  *See* FAC, ¶ 9 (Plaintiffs "belonged to the union"); Request for Judicial

13  Notice ("RJN"); Pierce Decl. ¶ 4, Ex. A, Article 1, § 1.02 ("The Company hereby

14  recognizes the Union as the sole and exclusive bargaining agent …").[6]

15       SMS classified Plaintiffs as "Daily Employees" under the CBA, though

16  Plaintiffs dispute that classification – the importance of which is discussed below.

17  *See* FAC, ¶ 9 ("Fox called Plaintiffs 'day hires,' but they functioned as a typical

18  long-term employment relationship … Thus, while Fox may have termed them 'day

19  ———————————

[4] Plaintiffs have attached a proposed SAC to their Motion to Remand (ECF 16), but

20  have not filed it.  Defendants have, accordingly, moved as to the operative FAC.

But the draft (unfiled) SAC followed an extensive, detailed meet and confer process

21  that laid out the legal arguments/authorities contained herein.  The SAC does not

cure these defects – far from it.  Dismissal **with prejudice** is therefore proper.

22  [5] This Statement of Facts is taken from Plaintiffs' FAC.  *See Cahill v. Liberty

*Mutual Ins. Co.*, 80 F.3d 336, 337–338 (9th Cir.1996) ("allegations of material fact

23  are taken as true "); *but see Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009)

("Threadbare recitals of the elements of a cause of action, supported by mere

24  conclusory statements, do not suffice."); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

547 (2007) (motion to dismiss should be granted if the plaintiff fails to proffer

25  "enough facts to state a claim for relief that is plausible on its face").

26  [6] The Court may consider the CBA in connection with this Motion.  *See Parrino v.

*FHP, Inc.*, 146 F.3d 699, 705–706 (9th Cir. 1998) *superseded by statute on other

27  grounds as recognized in Abrego v. Dow Chemical Co.*, 443 F.3d 676, 681 (9th Cir.

2006) ("[A] district court ruling on a motion to dismiss may consider a document

28  the authenticity of which is not contested, and upon which the plaintiff's complaint

necessarily relies").  *See also* Req. for Jud. Notice, filed contemporaneously.

Mitchell
Silberberg &
Knupp LLP

13

**MOTION TO DISMISS**

hires,' the reality is they were typical on payroll employees.").

While "daily" hires, Plaintiffs worked for SMS (or its predecessors) for years, even decades, with various Plaintiffs working throughout their 40s, 50s, 60s, 70s, and even 80s for the same management team now accused of discrimination, fraud, and the intentional infliction of emotional distress.  *See* FAC, ¶ 14-17.

### C.    The COVID-19 Pandemic Forces SMS to Shut Down

In March 2020, SMS sent Plaintiffs (and countless other employees) home to "help flatten the curve" in connection with the COVID-19 pandemic.  *See* FAC, ¶ 23.  Simultaneously, most major U.S. sports organizations (including the NFL, NBA, MLB, NHL and NCAA) suspended or postponed their seasons, effectively eliminating Plaintiffs' work, at least temporarily.  *See id.* at ¶ 23-25.

### D.    Plaintiffs Are Not Called Back to Work

SMS began re-hiring members of its Graphics Department as sports and thus work resumed – but slowly, consistent with the reduced demand for its services as well as a complex patchwork of federal, state and local rules regarding social distancing and return to work protocols.  *See* FAC, ¶¶ 22-38.

SMS made its re-hiring decisions based on business needs.  *See*, *e.g.*, FAC, ¶ 33 (describing "dramatic restructuring of workflows" and "focus on managing the tasks … in the most efficient manner possible").  Plaintiffs were not called back.

## III.    LEGAL ARGUMENT

Plaintiffs' claims fails for the reasons set forth below.

### A.    Plaintiffs' Age/Disability Discrimination, Wrongful Termination and Promissory Fraud Claims Do Not Comply With Federal Rules of Civil Procedure 8 and/or 10

Rule 8 states, in pertinent part:  "A pleading that states a claim for relief must contain … a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Similarly, Rule 10 states:  "If doing so would promote clarity, each claim founded on a separate transaction or occurrence

1    … must be stated in a separate count …" Fed. R. Civ. P. 10(b).

2         In multi-plaintiff cases, it is well established that **each** plaintiff must allege

3    facts sufficient to state a cause of action as to **each** claim.  In *Bautista v. Los*

4    *Angeles County*, 216 F.3d 837 (9th Cir. 2000), for example, the Court considered

5    allegations remarkably similar to Plaintiffs' composite allegations here:

> [The Complaint] alleges on behalf of all plaintiffs
> collectively that they performed their jobs satisfactorily
> and were each qualified for positions with R.A. Music,
> that they applied for such positions and that they were
> denied employment based upon their race, age and
> disability.  It also alleges that after R.A. Music took over,
> it substantially reduced the percentage of minority workers
> and increased the percentage of white workers, reduced
> the percentage of minority workers in higher paid
> positions, and reduced the percentage of workers over
> forty years of age.

14   *Bautista*, 216 F.3d at 840.

15        The Court held that such aggregated, non-individualized allegations did not

16   comply with Rule 8.  Specifically, the Court stated:

> While the complaint contains stray allegations of
> discriminatory policies or practices imposed by R.A.
> Music, what it seeks is **individual relief** for each of the
> plaintiffs.  Each plaintiff's right to relief therefore depends
> upon proof of the operative facts giving rise to an
> enforceable right in favor of **that plaintiff**.  The three
> claims alleged in the complaint do not meet that test; they
> are hybrids that qualify neither as class action allegations
> nor as statements of individual claims.  To comply with
> Rule 8 **each plaintiff** must plead a short and plain
> statement of the elements of **his or her** claim, identifying
> the transaction or occurrence giving rise to the claim and
> the elements of the prima facie case …

25   *Bautista*, 216 F.3d at 840 (emphasis added).

26        The Court further held that each plaintiff's discrimination claim must be

27   stated in a separate count pursuant to Rule 10(b):

> Moreover, each plaintiff's claim being founded upon a
> separate transaction or occurrence, it is properly "stated in

**MOTION TO DISMISS**

Mitchell
Silberberg &
Knupp LLP

> a separate count ... [because] a separation facilitates the clear presentation of the matters set forth."  Fed. R. Civ. P. 10(b) … Courts have required separate counts where multiple claims are asserted, where they arise out of separate transactions or occurrences, and where separate statements will facilitate a clear presentation.  In such cases, separate counts permit pleadings to serve their intended purpose to frame the issue and provide the basis for informed pretrial proceedings.  Experience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice.

*Id*. at 840-841; *see also Adams v. BRG Sports, Inc.*, No. 17-CV-00457-BLF, 2017 WL 5598647, at *3-4 (N.D. Cal. Nov. 21, 2017) (reaching similar conclusion in multi-plaintiff product defect/failure to warn case; "it is highly unlikely that each Player has an identical [claim] … [Plaintiffs] need to, at a minimum, plead a separate cause of action for each Player …"); *Erone Corp. v. Skouras Theatres Corp.*, 19 F.R.D. 299, 300 (S.D.N.Y.1956) (requiring separation of each plaintiff's claim because "there may be defenses available to the defendants which are applicable to one or more plaintiffs but not to the others").

The FAC clearly runs afoul of this bedrock principle.  For example:

- While Plaintiffs all allege disability discrimination, only two Plaintiffs (Corea and Pfister) actually identify any purported disability.  *See* FAC, ¶ 19 (Corea – hip surgeries in 2018 and 2019); *id*. (Pfister – leave of absence for non-Hodgkin's Lymphoma from June 2009 to June 2010).

- While Plaintiffs all allege age discrimination, three Plaintiffs (Corea, Pfister, and Tse) do not provide any specific allegations, while the other six provide a mix of idiosyncratic anecdotal facts.  *See*, *e.g.*, FAC, ¶ 54 (De La Sotta – not interviewed for open position); *id*. at ¶ 21 (Kazakian – given less desirable projects / work reduced); *id*. at ¶ 22 (Zepeda – not allowed to do 2D work); *id*. at ¶¶ 50-52 (Hutson, Ross, and Storm – purportedly replaced by younger workers).

Mitchell
Silberberg &
Knupp LLP

16

**MOTION TO DISMISS**

1
2
3

- While Plaintiffs all allege promissory fraud, seven Plaintiffs' claims are based, exclusively, on group emails distributed to the entire department, while the other two allege specific individual communications.[7]

4   To permit – for example – seven of the nine Plaintiffs (De La Sotta, Hutson,

5   Kazakian, Ross, Storm, Tse, and Zepeda) to state disability discrimination on the

6   basis of the other two plaintiff's purported disabilities, without more, highlights the

7   very danger articulated in *Bautista*.  It creates the appearance of a claim, but fails to

8   demonstrate each **individual** plaintiff's entitlement to relief.

9   To paraphrase *Adams, supra*, "it is highly unlikely that each [Plaintiff] has an

10   identical [age discrimination, disability discrimination, wrongful termination and/or

11   promissory fraud] claim … [Plaintiffs] need to, at a minimum, plead a separate

12   cause of action for **each** [Plaintiff]" that includes information relating the specific

13   facts giving rise to **his or her** claim.  *Adams*, 2017 WL 5598647, at *3-4 (N.D. Cal.

14   Nov. 21, 2017) (emphasis added).  Indeed, if required to state the specific factual

15   basis for their individual claims, Plaintiffs (or most of them) will not be able to.  It is

16   highly advantageous to all concerned to weed out these baseless claims at the outset.

17   Rule 8, in short, "demands more than an unadorned, the-defendant-

18   unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  The purpose of Rule

19
20
21   [7] Plaintiffs' unfiled SAC alleges that each Plaintiff heard the separate alleged communications "directly" or "indirectly," presumably, second or third hand from their peer Plaintiffs at some unspecified time.  ECF 16, Unfiled SAC, ¶ 76.  But Plaintiffs' transparent attempt to end-run Rule 8 and Rule 9(b) is improper.

22   First, SMS does not believe any of the purported comments are sufficient to state a claim.  *See* Section III.D.2, *infra*.

23
24
25
26
27   Second, fraud claims are subject to heightened pleading requirements under Rule 9(b).  *See* Fed. R. Civ. P. 9(b) ("In alleging fraud …, a party must state with particularity the circumstances constituting fraud …"); *Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) ("Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged"); *UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*, 117 F. Supp. 3d 1092, 1107, 1109 (C.D. Cal. 2015) ("For corporate defendants, a plaintiff must allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written").  Plaintiffs must assert exactly who heard exactly what when, in the complaint, to allow SMS to

28   test the sufficiency of the fraud allegations as to **each** Plaintiff.

8(a)(2) is to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. This requirement exists so that defendants can test the sufficiency of the pleadings at the threshold. Plaintiff's composite or hybrid allegations are insufficient as a matter of law.[8]

### B.  <u>Plaintiffs Have Not Adequately Pled Age or Disability Discrimination</u>

Plaintiffs' composite allegations attempt to give the appearance of sufficiency where none exists. But parsing the claims individually, per Plaintiff, it is clear that no claim has been or can be stated.

#### 1.    Age Discrimination

Age discrimination claims require some proof – "some other circumstance," beyond the Plaintiff's age – "suggest[ing] a discriminatory motive." *Foroudi v. Aerospace Corp.*, 57 Cal. App. 5th 992, 1007 (2020) *citing Guz v. Bechtel Nat'l Inc.*, 24 Cal.4th 317, 354-355 (2000). Put differently, the Plaintiff must establish (at a minimum) "actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a discriminatory criterion . . . ." *Guz*, *supra*, 24 Cal.4th at 355.

In *Guz*, however, the California Supreme Court specifically held that the fact that "certain workers preferred over [plaintiff in a reduction in force] were substantially younger[, without more,] is insufficient to permit a rational inference that age played any significant role in his termination ... ." *Id*. at 327. In other words, such preference, without more, is insufficient to satisfy the required "other circumstance" – as that fact alone does not support a reasonable inference of discrimination.

Federal cases are in accord. *See Selby v. Pepsico, Inc.*, 784 F.Supp. 750, 755 (N.D.Cal. 1991) ("[T]hat plaintiff was discharged and younger employees were

---

[8] Defendants do not oppose reasonable groupings. For example, if seven of the nine plaintiffs are alleging fraud based on the blast emails alone, that claim (albeit baseless) could be pled together, as it does not depend on Plaintiff-specific facts.

1  retained … does not in itself establish discriminatory intent …"), *aff'd sub nom.*

2  *Nesbit v. Pepsico, Inc.*, 994 F.2d 703 (9th Cir. 1993).

3  But that is essentially all that Plaintiffs assert – that when workers were re-

4  hired, following the resumption of professional sports, SMS (allegedly) hired their

5  younger peers.  Parsing the composite complaint, that is Plaintiff Corea's, Hutson's,

6  Pfister's, Ross', Storm's, and Tse's exact claim, **as they allege nothing more**.  But

7  that is not enough.  *See supra.*

8  Plaintiff De La Sotta further alleges that she applied for open positions, but

9  was not granted interviews.  FAC, ¶ 54.  Plaintiff Kazakian also alleges that his

10  work was reduced and he was given less desirable assignments.  *Id.* at ¶ 21.

11  Plaintiff Zepeda finally alleges that he was not permitted to do 2D design work.  *Id.*,

12  at ¶ 22.  But these very general allegations, even if credited, are insufficient to

13  support a reasonable inference of discrimination.  *See generally, e.g. Carlos v. Old*

14  *Dominion Freight Line, Inc.*, No. CV1506127MWFMRWX, 2016 WL 11758480, at

15  *3 (C.D. Cal. May 19, 2016), *aff'd,* 726 F. App'x 576 (9th Cir. 2018) (sufficient

16  nexus between act and purported discrimination required).

17  Plaintiffs have failed to adequately state their age discrimination claim.

18  ## 2.  Disability Discrimination

19  Disability discrimination requires proof of (1) a disability; (2) that Plaintiffs

20  were otherwise qualified to do their jobs; and, (3) that Plaintiffs were subjected to

21  adverse employment action **because of their disabilities**.  *See Faust v. California*

22  *Portland Cement Co.*, 150 Cal.App.4th 864, 886 (2007).

23  Seven of the nine Plaintiffs (De La Sotta, Hutson, Kazakian, Ross, Storm,

24  Tse, and Zepea) **allege no disability whatsoever**.  That is dispositive.  *See Arteaga*

25  *v. Brink's, Inc.*, 163 Cal. App. 4th 327, 344 (2008) ("FEHA requires plaintiff to

26  show ... he [or she] suffers from a disability").

27  Plaintiff Pfister alleges slightly more – that he took a leave of absence from

28  **June 2009 to June 2010** due to non-Hodgkins Lymphoma.  *See* FAC, ¶ 19.  While

Mitchell
Silberberg &
Knupp LLP

1  SMS does not dispute that non-Hodgkins Lymphoma could qualify as a disability,

2  Plaintiff Pfister took that leave in 2009/2010 and was thereafter hired and re-hired,

3  for ten years, prior to the reduction in force in 2020 at issue.  *Id.*, ¶ 19.  This long

4  period of employment following the leave does not merely break the causal chain, it

5  destroys it – preventing Plaintiff from establishing the required nexus on the facts

6  alleged.  *See Brundage v. Hahn* (1997) 57 Cal. App. 4th 228, 235; *Green v. City &*

7  *Cnty. of San Francisco*, No. 17-CV-00607-TSH, 2021 WL 3810243, at *52 (N.D.

8  Cal. Aug. 26, 2021) (proximity of less than three months required to satisfy *prima*

9  *facie* burden for retaliation claims).

10         Plaintiffs' disability discrimination claims should be dismissed.[9]

11         ## C.   <u>**Plaintiffs Have Not Adequately Pled Disparate Impact**</u>

12         Plaintiffs' alternative disparate impact theory requires "plaintiff [to] plead: (1)

13  the existence of outwardly neutral practices; (2) a significantly adverse or

14  disproportionate impact on persons of a particular type produced by the defendant's

15  facially neutral acts or practices; and (3) facts demonstrating a causal connection

16  between the specific challenged practice or policy and the alleged disparate impact."

17  *Arnold v. Sessions*, 2018 WL 6728008, at *3 (N.D. Cal. Dec. 21, 2018).

18         Plaintiffs alleging a disparate impact theory have a significant burden at the

19  pleading stage, and must allege specific facts (or provide statistical evidence)

20  supporting each prong of the *prima facie* case.  *See, e.g.*, *Stout v. Potter*, 276 F.3d

21  1118, 1121–22 (9th Cir. 2002) (neutral practice prong:  plaintiffs must plead a

22  "specific, identified, employment practice"); *Filho v. Gansen*, 2018 WL 5291986, at

23  *4 (N.D. Cal. Oct. 19, 2018) (disproportionate impact prong:  "Plaintiff has not

24  sufficiently plead disparate impact, primarily because ... Plaintiff has not provided

25  any statistical data that shows a disproportionate impact on persons of a particular

26  type"); *City of Oakland v. Wells Fargo Bank, N.A.*, No. 15-CV-04321-EMC, 2018

27  WL 3008538, at *12 (N.D. Cal. June 15, 2018) (causal connection prong:  "At the

28  _____

[9] Plaintiffs appear to agree, as those allegations were omitted in the unfiled SAC.

Mitchell
Silberberg &
Knupp LLP

20

**MOTION TO DISMISS**

pleading stage, a disparate-impact plaintiff must allege facts ... or produce statistical evidence demonstrating a causal connection between the ... policy and the disparate impact."), *aff'd in part, rev'd in part and remanded sub nom. City of Oakland v. Wells Fargo & Co.*, 972 F.3d 1112 (9th Cir. 2020), *reh'g en banc granted, opinion vacated*, 993 F.3d 1077 (9th Cir. 2021), *and on reh'g en banc*, 14 F.4th 1030 (9th Cir. 2021), *and aff'd in part, rev'd in part and remanded sub nom. City of Oakland v. Wells Fargo & Co.*, 14 F.4th 1030 (9th Cir. 2021).

Here, Plaintiffs make a single, stray, generic reference to a disparate impact theory, but do not (1) identify the neutral practice at issue; (2) establish any disparate impact on any particular category of employees; or (3) demonstrate any causal connection. *See* FAC, ¶ 64 (which states, in its entirety as to this claim, "Plaintiffs allege that Defendant had a selection policy that had a disproportionate adverse effect on older workers, such as Plaintiffs, and thereby allege a disparate impact theory, including, but not limited to in violation of California Government Code § 12941.")  This is plainly inadequate.[10]

### D.   Plaintiffs' Promissory Fraud Claim Must Be Dismissed

#### 1.   Plaintiffs' Promissory Fraud Claim Is Preempted

Section 301 of the LMRA preempts any purported state law causes of action by an employee that are "founded directly on rights created by collective-bargaining agreements," or when a claim based on a state law right "requires the interpretation of a collective bargaining-agreement."  *See Hayden v. Reickerd*, 957 F.2d 1506, 1509 (9th Cir. 1991); *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985) ("[W]hen resolution of a state-law claim is substantially dependent upon analysis of

---

[10] In their unfiled SAC, Plaintiffs propose adding the bolded portion:  "Plaintiffs allege that Defendant had a selection policy **for calling employees back (e.g., based on salary)** that had a disproportionate adverse effect on older workers, such as Plaintiffs, and thereby allege a disparate impact theory . . ."  *See* ECF 16, ¶ 63. But this is still inadequate as a matter of law.  *See Ibarbia v. Regents of Univ. of California*, 191 Cal. App. 3d 1318, 1330 (1987) ("speculative allegations without any real substantiation" insufficient; plaintiff "offer[ed] no evidence of any particular practice or policy … which has had a disparate impact … Without this, [Plaintiff] has not stated a valid claim of discrimination due to disparate impact.").

**MOTION TO DISMISS**

Mitchell
Silberberg &
Knupp LLP

1  the terms of [a collective-bargaining] agreement . . . that claim must either be treated

2  as a § 301 claim or dismissed as pre-empted….") (citation omitted).

3      The preemptive strength of Section 301 is "extraordinarily strong;" it displaces

4  any state law claim requiring analysis of the terms of a collective bargaining

5  agreement. *Moreau v. San Diego Transit Corp.*, 210 Cal. App. 3d 614, 622 (1989).

6      Here, Plaintiffs' Third Cause of Action for Promissory Fraud/Intentional

7  Misrepresentation and/or Failure to Disclose Material Facts (the "Promissory Fraud

8  Claim") is preempted by Section 301 both because it is founded on rights created by

9  the CBA, or if not, requires interpretation of the CBA.  Specifically, the Promissory

10 Fraud Claim is preempted for at least the following three reasons:

11     <u>First</u>, Plaintiffs allege that they were misclassified as "Daily Employees"

12 under the CBA.  *See* FAC, ¶ 9 ("Fox called Plaintiffs 'daily hires,' but they

13 functioned as a typical long-term employment relationship . . . while Fox may have

14 termed them 'daily hires,' the reality is they were typical on-payroll employees").

15     This is significant because while "daily" hires had no job security, no right to

16 advance notice of a layoff or termination, and no preference in re-hiring following a

17 layoff, "staff" employees were afforded such rights.  *Compare* RJN; Pierce Decl. ¶

18 4, Ex. A, Article 13, §13.01-13.04 (describing terms of employment applicable to

19 "Staff Production Facilities Employees," including various rights relating to

20 seniority, notice of layoffs, and preference in reemployment) *with id*. at Article 16, §

21 16.01 (describing terms of employment applicable to "Daily Employees," including

22 that they "may be terminated without any advance notice").

23     Plaintiffs' fraud claim is premised, at least in part, on the notion that SMS

24 failed to inform Plaintiffs (sooner or at all) that their jobs had been permanently

25 eliminated.  *See*, *e.g.*, FAC, ¶ 27 ("Fox's communications never indicated in any

26 way that Plaintiffs were being terminated or likely to be.").  But SMS had no such

27

28

Mitchell
Silberberg &
Knupp LLP

**MOTION TO DISMISS**

1  obligation vis-à-vis "daily" hires.   The only employees who could make such a

2  claim were "staff" personnel.  *See supra.*[11]

3      Plaintiffs' fraud claim, thus, is effectively a claim that Plaintiffs were

4  misclassified as "daily" hires and that SMS breached the CBA when it failed to

5  apprise them (sooner or at all), that their positions had been permanently eliminated.

6  *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987) ("Section 301 governs

7  claims founded directly on rights created by collective-bargaining agreements.");

8  *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1032 (9th Cir. 2016)

9  (because Plaintiff seeks to enforce a "right [that] exists solely as a result of the CBA

10  . . . the claim is preempted, and the analysis ends there") (internal quotations and

11  citations omitted); *Alaska Airlines v. Schurke*, 898 F.3d 904, 920-21 (9th Cir. 2018)

12  ("If a claim arises entirely from a right or duty of the CBA – for example, a claim

13  for violation of the labor agreement . . . it is, in effect, a CBA dispute in state law

14  garb, and is preempted.").

15      It is immaterial that Plaintiffs have framed their claim as a state law cause of

16  action for fraud because "a plaintiff may not evade the pre-emptive force of § 301 of

17  the LMRA by casting the suit as a state-law claim." *Int'l Bhd. of Elec. Workers,*

18  *AFL-CIO v. Hechler*, 481 U.S. 851, 857 (1987).

19      Second, even if Plaintiffs concede that they were properly classified as

20  "daily" employees, the claim is still preempted.  In this scenario, the claim is not

21  founded directly on the CBA, but rather, contradicts it.  Plaintiffs' fraud claim, in

22  effect, argues that they were misled as to their prospects for continued or future

23  employment.  But that claim is directly at odds with the CBA, which expressly

24  disclaims any right to continued employment or advance notice of termination (in

25  the case of daily employees).  RJN; Pierce Decl., ¶ 4, Ex. A at Article 16, §16.01A.

26

27  _____

[11] Plaintiffs' repeated references to other employees "with less seniority" being re-hired also bespeaks a claim for misclassification and breach of the CBA, as only "staff" employees enjoyed re-hiring seniority rights.  *Compare* FAC, ¶ 30, 49 with RJN, Ex. A, Article 13, §13.01-13.04 (seniority; preference).

28

Courts have repeatedly found claims premised on a purported contradictory promise "clearly preempted." *See*, *e.g.*, *Olguin v. Inspiration Consol. Copper Co.*, 740 F.2d 1468, 1474 (9th Cir. 1984) (plaintiff's claim "clearly preempted" where plaintiff alleged a contract based on the employer's personnel policy manual, because "[t]o the extent that the alleged policy manual is inconsistent with the provisions of the collective bargaining agreement, the bargaining agreement controls."), *overruled in part on other grounds*, *Allis-Chalmers Corp.*, 471 U.S. at 220; *Bale v. Gen. Tel. Co.*, 795 F.2d 775, 780 (9th Cir. 1986) (finding preemption where plaintiffs would have "to show that the terms of the collective bargaining agreement differed significantly from the individual employment contracts they believed they had made"); *Brown v. Lucky Stores*, 246 F.3d 1182, 1189 (9th Cir. 2001) ("According to [section] 301, to the extent any alleged independent agreement conflicts with a CBA, the terms of the CBA control."); *Starzynski v. Capital Pub. Radio, Inc.*, 88 Cal. App. 4th 33, 38 (2001) ("There cannot be a valid express contract and an implied contract, each embracing the same subject, but requiring different results.") (citation and internal quotation marks omitted).

<u>Third</u>, even if Plaintiff's fraud claim does not emanate from or contradict the CBA, it still would require the Court to interpret the CBA – in direct contravention of Section 301. *See Caterpillar Inc.*, 482 U.S. at 394 ("Section 301 governs claims . . . substantially dependent on analysis of a collective-bargaining agreement.").

Plaintiffs claim, at least in part, that SMS failed to inform them that their positions had been eliminated, that SMS had an obligation to do so, and that its failure to disclose the elimination of Plaintiffs' positions while continuing to communicate with them (regarding the uncertainty of staffing during the pandemic) was fraudulent. FAC, ¶¶ 10 (Fox "went radio silent"), 12 ("Fox never notified Plaintiffs their careers were over") (emphasis omitted), 13 ("Fox ghosted these employees"); 27 (similar).

1   The CBA, however, contains multiple (clearly disputed) provisions that
2   would bear on SMS' actions, including Plaintiff's' awareness that they had been
3   permanently separated and whether SMS believed, in good faith, that no further
4   discussion was required – unless Plaintiffs expressly requested it.  For example:

5   • Article 16, § 16.01(I)(4)(b) provides that if "the Company does not
6     schedule" a daily employee who has notified human resources of
7     his/her interest in continued work "then it will be deemed that the
8     Company has 'permanently ceased to employ' him or her," thus
9     entitling certain daily employees to severance benefits.  See RJN,
10    Pierce Decl., ¶ 4, Ex. A.

11  • Article 16, § 16.01(I)(6) provides that the same employees are
12    "eligible for a 'permanently ceasing to employ meeting'" and that
13    "[t]his meeting shall be the **exclusive process** for [daily employees] to
14    discuss the Company's action." *Id.* (emphasis added).  *See also id.* at
15    Article 2, § 2.02(D) (reiterating exclusivity of process).

16  These provisions, whether they apply, what they require, and whether they
17  were followed, as to each Plaintiff, directly bear on SMS' and Plaintiffs' mindset,
18  particularly where the allegation is that SMS "ghosted" Plaintiffs or intentionally
19  misled Plaintiffs as to their prospects for returning and that Plaintiffs reasonably,
20  detrimentally relied in response.  *See Young v. Anthony's Fish Grottos, Inc.,* 830
21  F.2d 993, 999 (9th Cir. 1987) (state law claims preempted by Section 301 because
22  resolution of claims was "inextricably intertwined" with interpretation of CBA).
23  The CBA, moreover, contains an integration clause that bears directly on
24  whether email communications (of the kind primarily at issue) can modify the terms
25  of the CBA.  Article 18, § 18.07 of the CBA states "This Agreement contains the
26  full and complete agreement between the parties and cannot be changed or
27  terminated orally."  RJN; Pierce Decl., Ex. A.  Does the term "orally" modify the
28  word changed or only the word terminated?

1   This is not academic, as it is central to the question of whether Plaintiffs could
2   even rely on the emails in question, as many Courts have noted.  *See, e.g.*, *Hamilton*
3   *v. Partners Healthcare Sys., Inc.*, 209 F. Supp. 3d 397, 407 (D. Mass. 2016) ("the
4   CBA's integration clause must be interpreted to determine the viability of any other
5   contract between the individuals and Defendants"); *Cavallaro v. UMass Mem'l*
6   *Healthcare, Inc.*, 678 F.3d 1, 6–7 (1st Cir. 2012) ("the need to interpret the CBA's
7   integration provisions … is ultimately sufficiently intertwined with the CBA" to
8   find preemption); *Johnson v. NBC Universal, Inc.*, 409 F. App'x 529, 531–532 (3d
9   Cir. 2010) (plaintiff claimed to have reached agreement with employer inconsistent
10  with applicable CBA, but because of the CBA's integration clause, "[Plaintiff's]
11  claim is completely preempted because both the CBA and the [inconsistent
12  agreement] would need to be interpreted to determine which is controlling.").
13          Plaintiffs' Promissory Fraud Claim is preempted by Section 301.
14          **2.     SMS' Alleged Promises Are Not Sufficiently Definite to Form**
15                  **the Basis of a Promissory Fraud Claim In Any Event**
16          Plaintiffs' Promissory Fraud Claim fails for the independent, and more
17  mundane, reason that SMS never promised that Plaintiffs would be re-hired, or had
18  any obligation to inform them of their prospects for re-hire.  That is dispositive.
19  Indeed, the law is clear, "[p]romises too vague to be enforced will not support a
20  fraud claim any more than they will one in contract."  *Rochlis v. Walt Disney Co.*,
21  19 Cal. App. 4th 201, 219 (1993) (involving "promises . . . regarding 'appropriate'
22  financial rewards which were not honored"), *as modified* (Oct. 6, 1993), *and*
23  *disapproved of on other grounds by Turner v. Anheuser-Busch, Inc.*, 7 Cal. 4th 1238
24  (1994); *see also Everts v. Matteson*, 21 Cal. 2d 437, 451 (1942).  In such cases, there
25  is no misleading statement, nor is reasonable detrimental reliance possible.
26          Similarly, absent a special relationship, there is no duty to disclose or provide
27  information.  Employers do not have a special relationship to employees.  *See Foley*
28  *v. Interactive Data Corp.*, 47 Cal. 3d 654, 693 (1988) (holding that employer and

employee have no special relationship warranting extension of tort cause of action to contractual employment relationship).  There is no obligation to inform an employee, in advance, that he or she will be terminated or laid off, or any obligation to inform them of their prospects for re-hire, if any.  Indeed, California is an at-will state, and Plaintiffs were "daily" hires pursuant to a CBA that expressly denoted the at-will, no notice nature of their employment. *See* RJN; Pierce Decl. ¶4, Ex. A, Article 16, § 16.01.A.

Plaintiffs quote numerous emails in the FAC.  But these emails make it clear that SMS and Hartley made no promises or guarantees of employment.  Quite the contrary, SMS, and indeed the world, were experiencing an unprecedented disruption of everyday and business life, a disruption that made future staffing predictions impossible – a point SMS/Hartley clearly and repeatedly conveyed.

Plaintiffs' quotations cannot mask this dispositive fact – as this sentiment pervades the emails (or other communications), even as selectively quoted or paraphrased in certain instances: [12]

- "still figuring things out" (FAC, ¶ 11, 27);
- "I don't know what the plan is [going forward]" (FAC, ¶ 25);
- "provide[d] information regarding unemployment" benefits (FAC, ¶ 26);
- "book only as needed" (FAC, ¶ 28);
- "no new information" (FAC, ¶ 29);
- "did not know when that [i.e., returning] would be" (FAC, ¶ 30);
- "didn't have any updates on work as of now" (FAC, ¶ 34); and
- "virtually impossible to know" (FAC, ¶ 35).

---

[12] Plaintiffs have selectively quoted various emails in the FAC, but the Court may and should consider the full documents.  *See, e.g.*, *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996) ("The district court considered the full text of the Prospectus, including portions which were not mentioned in the complaints.  We note that such consideration is appropriate in the context of a motion to dismiss, and does not convert the motion into one for summary judgment.")  While not critical to resolving this Motion, Hartley's March 23, 2020 and September 25, 2020 emails are noteworthy, and are attached to the Pierce Decl. as Ex. B and C (**"I'm sorry this isn't the news you want to hear…"**) (emphasis added).

Mitchell Silberberg & Knupp LLP

27

**MOTION TO DISMISS**

1     Plaintiffs have not identified any promise that SMS breached; indeed, the

2 communications at issue bespeak uncertainty and doubt (*see, e.g.*, FAC ¶ 35

3 "virtually impossible to know how the year will play out"), not the definiteness

4 required to create a misrepresentation **or rely upon it** – particularly where Plaintiffs

5 were "daily" employees who, per the CBA, had no job security, could be removed

6 from the schedule without notice, and had the right to request a formal meeting to

7 discuss the company's action, if desired.  *See Hunter v. Up-Right, Inc.*, 6 Cal. 4th

8 1174, 1178 (1993) ("Tort recovery is available only if the plaintiff can establish all

9 of the elements of fraud with respect to a misrepresentation that is separate from the

10 termination of the employment contract, i.e., when the plaintiff's fraud damages

11 cannot be said to result from termination itself.").

12     Plaintiffs' quotations also contradict any notion that Plaintiffs were ghosted –

13 though, legally-speaking, SMS had no obligation to tell them anything regarding

14 their prospects for return, while they had the right to demand a formal meeting if

15 they wanted more information.  *See, supra*.

16     **E.**     **Plaintiffs' Defamation Claim Fails Because the Alleged Statements**

17          **Are at Most Protected Opinions**

18      Defamatory statements "must contain a false **statement of fact**."  *Cort v. St.*

19 *Paul Fire & Marine Ins. Cos.*, 311 F.3d 979, 985-86 (9th Cir. 2002) (emphasis

20 added).  Statements of opinion are not actionable.  *Campanelli v. Regents of Univ. of*

21 *California*, 44 Cal. App. 4th 572, 578 (1996) ("A publication must contain a false

22 statement of *fact* to give rise to liability for defamation.  Even if they are objectively

23 unjustified or made in bad faith, publications which are statements of *opinion* rather

24 than fact cannot form the basis for a libel action.") (italics in original); *see also*

25 *Okun v. Superior Ct.*, 29 Cal. 3d 442, 450 (1981) ("whether the allegedly

26 defamatory statement constitutes fact or opinion is a question of law").

27     Plaintiffs' defamation claim (in the FAC and unfiled SAC) is based

28 exclusively on allegations that Hartley (and possibly others) referred to Plaintiffs as

Mitchell
Silberberg &
Knupp LLP

"dead weight."  *See* FAC, ¶¶ 12, 38, 56(e), 57, 85.  But even if Hartley referred to Plaintiffs that way or others repeated that statement (both of which Defendants deny), that would be an opinion – not an actionable statement of fact.  *See Campenelli*, 44 Cal. App. 4th at 578.  There is simply no way to prove whether someone is "dead weight."

Numerous courts have made this exact point in dismissing defamation claims based on similar, if not more egregious, statements of opinion.  *See*, *e.g.*, *Seelig v. Infinity Broad. Corp.*, 97 Cal. App. 4th 798, 810 (2002) (statement that plaintiff was a "loser" not actionable); *Moyer v. Amador Valley Joint Union High School District*, 225 Cal. App. 3d 720, 725 (2008) (statement that plaintiff was "the worst teacher" at the school was not a "factual assertion capable of being proved true or false").

Plaintiffs' defamation claim fails as a matter of law and must be dismissed.

### F.  <u>Plaintiffs' IIED Claim Fails Because They Have Not Alleged Any Extreme and Outrageous Conduct.</u>

Plaintiffs' IIED claim also fails and must be dismissed.  In order to state that cause of action, Plaintiffs "must plead: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) that the plaintiff suffered severe or extreme emotional distress; and (3) that the plaintiff's injuries were actually or proximately caused by the defendant's outrageous conduct."  *San Joaquin Deputy Sheriffs' Ass'n v. Cnty. of San Joaquin*, 898 F. Supp. 2d 1177, 1192 (E.D. Cal. 2012).

The conduct alleged must be so extreme as to "exceed all bounds of that usually tolerated in a civilized community."  *Unterberger v. Red Bull N. America, Inc.*, 162 Cal.App.4th 414, 423 (2008).  The distress must be so severe that "no reasonable [person] in a civilized society should be expected to endure it."  *Fletcher v. W. Nat'l Life Ins. Co.*, 10 Cal.App.3d 376, 397 (1970).

Numerous decisions have noted that discrimination claims, in and of themselves, are insufficient to state an IIED claim.  The plaintiff must plead more.

1  *See Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 80 (1996) ("Managing

2  personnel is not outrageous conduct beyond the bounds of human decency … A

3  simple pleading of personnel management activity is insufficient to support a claim

4  of intentional infliction of emotional distress, even if improper motivation is alleged.

5  If personnel management decisions are improperly motivated, the remedy is a suit

6  against the employer for discrimination."); *Walker v. Boeing Corp.*, 218 F. Supp. 2d

7  1177, 1190 (C.D. Cal. 2002) ("Terminating an employee for improper or

8  discriminatory reasons, like many other adverse personnel management decisions, is

9  insufficiently extreme or outrageous to give rise to a claim for intentional infliction

10  of emotional distress."); *Corona v. Quad Graphics Printing Corp.*, 218 F. Supp. 3d

11  1068, 1074 (C.D. Cal. 2016) ("termination is not alone sufficient to satisfy the

12  standard for extreme and outrageous conduct").

13       "In order for a plaintiff to survive a motion to dismiss an intentional infliction

14  of emotional distress claim the complaint must allege conduct that goes beyond that

15  of a run of the mill harassment or discrimination claim." *Roche v. Audio Visual*

16  *Servs. Grp., Inc.*, 2010 WL 3021575, at *2 (D. Nev. July 28, 2010).  Plaintiffs' FAC

17  and unfiled SAC do not come even close to meeting the standard, nor can they.

18       Plaintiffs were not taunted, abused, or otherwise degraded – they were laid

19  off.  SMS is not unsympathetic.  Anytime a longstanding employee is laid off, that is

20  unfortunate.  But it is not illegal; nor was there any attempt or desire to emotionally

21  damage Plaintiffs – as the communications quoted in the FAC make clear.[13]

22       In the alternative, Plaintiffs IIED claims are barred because Workers'

23  Compensation is their exclusive remedy.  *See Walker*, 218 F. Supp. 2d 1177, 1189

24  (C.D. Cal. 2002) ("if the injury arises out of employment and if the employer

25  maintains workers compensation insurance, then claims for intentional or negligent

26  _____

27  [13] Similarly, to the extent Plaintiffs base their IIED claim on Hartley's alleged
defamatory statement, that is likewise insufficient.  *See, e.g.*, *Walker*, 218 F. Supp.
2d at 1191 ("California cases … confirm that a mere allegation that one employee
defamed another is insufficient basis for an intentional infliction of emotional
distress claim").

28

inflition of emotional distress are preempted by the exclusivity provisions of the workers' compensation law," including "purely emotional injuries").

## IV.   CONCLUSION

Plaintiffs FAC should be dismissed with prejudice.

DATED: November 11, 2022                Respectfully submitted,

MITCHELL SILBERBERG & KNUPP LLP
SETH E. PIERCE
BRIAN M. RAGEN
WILL S. LISA


By:/s/Seth E. Pierce
Seth E. Pierce
Attorneys for Defendants Sports Media
Services LLC and Gary Hartley

**MOTION TO DISMISS**

Mitchell
Silberberg &
Knupp LLP