1   MITCHELL SILBERBERG & KNUPP LLP
    SETH E. PIERCE (SBN 186576), sep@msk.com
2   BRIAN M. RAGEN (SBN 275045), byr@msk.com
    WILL S. LISA (SBN 310541), wsl@msk.com
3   2049 Century Park East, 18th Floor
    Los Angeles, CA  90067-3120
4   Telephone: (310) 312-2000
    Facsimile: (310) 312-3100
5
    Attorneys for Defendants Sports Media
6   Services, LLC and Gary Hartley

7

8                   UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10

11  SAMMY COREA, CAROL DE LA           CASE NO. 2:22-cv-07312-MCS (JCx)
    SOTTA, BILL HUTSON, SINBAD
12  KAZAKIAN, WILLIAM ALAN             (Removed from Los Angeles Superior
    PFISTER, JR., ROB ROSS, DANIEL     Court Case No. 22STCV26380)
13  STORM, RUBY TSE, and BERNABE
    ZEPEDA,                            **DEFENDANTS SPORTS MEDIA
14                                     SERVICES, LLC AND GARY
                 Plaintiffs,           HARTLEY'S OPPOSITION TO
15                                     PLAINTIFFS' MOTION TO
            v.                         REMAND**
16
    FOX SPORTS HOLDINGS, LLC, a        Time:    9:00 a.m.
17  Delaware Limited Liability Company; Date:    December 5, 2022
    SPORTS MEDIA SERVICES LLC, a       Place:   Courtroom 7C
18  Delaware Limited Liability Company;
    FOX PAYROLL SERVICES, INC., a
19  Corporation; FOX PAYROLL
    SERVICES LLC, a Delaware Limited
20  Liability Company; FOX SPORTS 1,
    LLC, a Delaware Limited Liability
21  Company; FOX SPORTS 2, LLC, a
    Delaware Limited Liability Company;
22  GARY HARTLEY, an individual and
    DOES 1 through 10, inclusive,
23
                 Defendants.
24

25

26

27

28

**OPPOSITION TO MOTION TO REMAND**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................9

II.   PLAINTIFFS' PROMISSORY FRAUD CLAIM IS PREEMPTED ..........10
      A.   Applicable Standard ...............................................................10
      B.   Plaintiffs Seek to Enforce Rights "Staff" Employees Enjoy ..............10
      C.   Plaintiffs Seek to Enforce Rights Inconsistent with the CBA .............12
      D.   Plaintiffs' Fraud Claim Requires Interpretation of the CBA.............12
      E.   Plaintiffs' Authority Is Inapposite .........................................14

III.  DIVERSITY JURISDICTION ALSO EXISTS............................................16
      A.   Hartley's California Citizenship Must Be Disregarded as the Case
           Was Removed Before He Was Served ..........................................17
      B.   Fraudulent Joinder....................................................................18
           1.   Legal Standard ............................................................18
           2.   Defamation.....................................................................20
                a.   Basic Legal Principles .........................................20
                b.   FAC Defamation Allegations.........................................20
                c.   Additional Allegations in Unfiled SAC ........................21
                d.   Plaintiffs' Arguments/Citations Unavailing..................22
           3.   Intentional Infliction of Emotional Distress ............................25
           4.   Fraudulent Misrepresentation / Omission .................................31
                a.   Procedural Defects .........................................31
                b.   Substantive Defects .........................................31
      C.   Defendant Fox Payroll Systems, Inc....................................................33
           1.   Snap Removal Doctrine Applies ...........................................33
           2.   Uncontested That Fox Payroll Is A Sham Defendant .............33

IV.   CONCLUSION ....................................................................................33

Mitchell
Silberberg &
Knupp LLP

**OPPOSITION TO MOTION TO REMAND**

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page(s)</u>

3

### CASES

4

*Alaska Airlines v. Schurke*,
   898 F.3d 904 (9th Cir. 2018) ................................................................. 11

5

6

*Allis-Chalmers Corp. v. Lueck*,
   471 U.S. 202 (1985) ............................................................................... 10

7

8

*Bale v. Gen. Tel. Co.*,
   795 F.2d 775 (9th Cir. 1986) ................................................................. 11

9

10

*Barsell v. Urban Outfitters, Inc.*,
   No. CV 09-02604-MMM, 2009 WL 1916495 (C.D. Cal. July 1,
   2009) ....................................................................................................... 30

11

12

*Boese v. Paramount Pictures Corp.*,
   952 F. Supp. 550 (N.D. Ill. 1996) .......................................................... 22

13

14

*Broadway Grill, Inc.*, 2016 WL 5390415, at *2 (N.D. Cal. Sept. 27,
   2016), *rev'd on other grounds*, 856 F.3d 1274 (9th Cir. 2017) ..................... 11, 31

15

16

*Brown v. Lucky Stores*,
   246 F.3d 1182 (9th Cir. 2001) ............................................................... 12

17

18

*Campanelli v. Regents of Univ. of California*,
   44 Cal. App. 4th 572 (1996) .................................................................. 20

19

20

*Caterpillar Inc. v. Williams*,
   482 U.S. 386 (1987) ................................................................. 11, 12, 15, 16

21

22

*Cavallaro v. UMass Mem'l Healthcare, Inc.*,
   678 F.3d 1 (1st Cir. 2012) ...................................................................... 14

23

24

*Choi v. Gen. Motors LLC*,
   No. CV 21-5925-GW-MRWX, 2021 WL 4133735 (C.D. Cal. Sept.
   9, 2021) ................................................................................................... 18

25

26

*Cort v. St. Paul Fire & Marine Ins. Cos.*,
   311 F.3d 979 (9th Cir. 2002) ................................................................. 20

27

28

*Dagley v. Target Corp., Inc.*,
   No. CV 09-1330-VBF, 2009 WL 910558 (C.D. Cal. March 31, 2009) ............... 30

Mitchell
Silberberg &
Knupp LLP

3

**OPPOSITION TO MOTION TO REMAND**

1

## TABLE OF AUTHORITIES
<u>(continued)</u>

2

3

**Page(s)**

4

*Dechow v. Gilead Scis., Inc.*,
     358 F. Supp. 3d 1051 (C.D. Cal. 2019) ................................................. 17

5

*Deutsche Bank Nat'l Tr. Co. as Tr. for Am. Home Mortg. Inv. Tr. 2007-*
6   *1 v. Old Republic Title Ins. Grp., Inc.*,
     532 F. Supp. 3d 1004, 1011 (D. Nev. 2021) ........................................ 18

7

8   *Encompass Ins. Co. v. Stone Mansion Rest., Inc.*,
     902 F.3d 147 (3d Cir. 2018) ........................................................ 17, 18

9

10  *Ettedgui v. WB Studio Enterprises Inc.*,
     2021 WL 633859 (C.D. Cal. Feb. 18, 2021) ........................................ 16

11

12  *Everts v. Matteson*,
     21 Cal. 2d 437 (1942) ................................................................. 32

13

14  *Fletcher v. W. Nat'l Life Ins. Co.*,
     10 Cal.App.3d 376 (1970) ............................................................ 26

15

16  *Gallant v. City of Carson*,
     128 Cal. App. 4th 705 (Cal. Ct. App. 2005).......................................... 23

17

18  *Gibbons v. Bristol-Myers Squibb Co.*,
     919 F.3d 699 (2d Cir. 2019) ....................................................... 17, 18

19

20  *Gibson v. Am. Airlines*,
     No. C 96-1444-FMS, 1996 WL 329632 (N.D. Cal. June 6, 1996) ................... 30

21

22  *Hall v. FedEx Freight, Inc.*,
     2015 WL 574177 (E.D. Cal. Feb. 11, 2015) ......................................... 32

23  *Hamilton v. Partners Healthcare Sys., Inc.*,
     209 F. Supp. 3d 397 (D. Mass. 2016)................................................. 14

24

25  *Hayden v. Reickerd*,
     957 F.2d 1506 (9th Cir. 1991) ....................................................... 10

26

27  *Hrones v. Rideout Memorial Hosp.*,
     2022 WL 2093729 (E.D. Cal. June 10, 2022)......................................... 15

28

Mitchell
Silberberg &
Knupp LLP

4

## OPPOSITION TO MOTION TO REMAND

1

## TABLE OF AUTHORITIES
<u>(continued)</u>

2

3

<u>Page(s)</u>

4

*Int'l Bhd. of Elec. Workers, AFL-CIO v. Hechler*,
    481 U.S. 851 (1987) ................................................................... 11

5

*Janken v. GM Hughes Elecs.*,
6      46 Cal. App. 4th 55 (1996) .............................................. 16, 21, 24, 26

7

*Johnson v. NBC Universal, Inc.*,
8      409 F. App'x 529 (3d Cir. 2010) ........................................... 13

9

*Johnson v. Wells Fargo & Co.*,
10     No. CV 14-06708 MMM JCX, 2014 WL 6475128 (C.D. Cal. Nov.
       19, 2014) ...................................................................................... 24

11

12

*Kacludis v. GTE Sprint Commc'ns Corp.*,
       806 F. Supp. 866 (N.D. Cal. 1992) ........................................ 21

13

*Kahn v. Bower*,
14     232 Cal. App. 3d 1599 (Ct. App. 1991) ...................................... 23, 24

15

*Lazar v. Sup. Ct.*,
16     12 Cal. 4th 631 (Cal. 1996) ..................................................... 16

17

*Lewis v. Time Inc.*,
18     83 F.R.D. 455 (E.D.Cal.1979) ................................................. 19

19

*May v. Haas*,
20     No. 12 CV 01791(MCE)(DAD)), 2012 WL 4961235, at *2 (E.D.
       Cal. Oct. 16, 2012) ................................................................. 18

21

*McCabe v. Gen. Foods Corp.*,
22     811 F.2d 1336 (9th Cir. 1987) .................................................. 19

23

*MetLife Home Loans, LLC v. Fid. Nat'l Title Grp., Inc.*,
24     No. 220CV01798GMNVCF, 2021 WL 4096540 (D. Nev. Sept. 8,
       2021) ......................................................................................... 18

25

26

*Milne Employees Ass'n v. Sun Carriers*,
       960 F.2d 1401 (9th Cir. 1991) .................................................. 14, 15

27

*Moradi v. Marsh USA, Inc.*,
28     219 Cal. App. 4th 886 (2013) ................................................... 16

Mitchell
Silberberg &
Knupp LLP

5

**OPPOSITION TO MOTION TO REMAND**

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page(s)**

3

4  *Morales v. Gruma Corp.*,
5      No. CV 13-7341 CAS FFMX, 2013 WL 6018040, at *5 (C.D. Cal.
       Nov. 12, 2013) ............................................................................................... 25

6  *Moreau v. San Diego Transit Corp.*,
7      210 Cal. App. 3d 614 (1989) ................................................................. 10, 15

8  *Moyer v. Amador Valley Joint Union High School District*,
9      225 Cal. App. 3d 720 (2008) .......................................................................... 20

10  *Niehaus v. Greyhoud Lines, Inc.*,
       173 F.3d 1207 (9th Cir. 1999) ....................................................................... 15
11

12  *Oberkotter v. Woolman*,
       187 Cal. 500 (Cal. 1921) ................................................................................ 23
13

14  *Okun v. Superior Ct.*,
       29 Cal. 3d 442 (1981) ............................................................................... 20, 24

15
16  *Olguin v. Inspiration Consol. Copper Co.*,
       740 F.2d 1468 (9th Cir. 1984), *overruled in part on other grounds,*
17     *Allis-Chalmers Corp.*, 471 U.S ..................................................................... 12

18  *Overhill Farms, Inc. v. Lopez*,
19     190 Cal. App. 4th 1248 (2010) ....................................................................... 22

20  *Padilla v. AT&T Corp.*,
       697 F. Supp. 2d 1156 (C.D. Cal. 2009) ................................................... 19, 28
21

22  *Roche v. Audio Visual Servs. Grp., Inc.*,
       2010 WL 3021575 (D. Nev. July 28, 2010) .................................................. 27

23
24  *Rochlis v. Walt Disney Co.*,
       19 Cal. App. 4th 201 (1993) .......................................................................... 32

25  *Romero v. San Pedro Forklift, Inc.*,
26     266 Fed. Appx. 552 (9th Cir. 2008) .............................................................. 16

27  *Saks v. Franklin Covey Co.*,
28     316 F.3d 337 (2d Cir. 2003) .......................................................................... 17

Mitchell
Silberberg &
Knupp LLP

**OPPOSITION TO MOTION TO REMAND**

**TABLE OF AUTHORITIES**
<u>(continued)</u>

**Page(s)**

*San Joaquin Deputy Sheriffs' Ass'n v. Cnty. of San Joaquin,*
   898 F. Supp. 2d 1177 (E.D. Cal. 2012) .................................................................. 26

*Seelig v. Infinity Broad. Corp.,*
   97 Cal. App. 4th 798 (2002) ........................................................................................ 20

*Shepard v. Courtoise,*
   115 F. Supp. 2d 1142 (E.D. Mo. 2000) .................................................................. 22

*Slaughter v. Friedman,*
   32 Cal. 3d 149 (Cal. 1982) ........................................................................................ 25

*Sprewell v. Golden State Warriors,*
   266 F.3d 979 (9th Cir. 2001) .................................................................................... 16

*Starzynski v. Capital Pub. Radio, Inc.,*
   88 Cal. App. 4th 33 (2001) ........................................................................................ 12

*Stoneking v. Briggs,*
   254 Cal. App. 2d 563 (1967) .................................................................................... 24

*Tex. Brine Co., LLC v. Am. Arbitration Ass'n. Inc.,*
   955 F.3d 482 (5th Cir. 2020) ........................................................................... 17, 18

*Travis v. Irby,*
   326 F.3d 644 (5th Cir. 2003) .................................................................................... 28

*Umamoto v. Insphere Insurance Solutions, Inc.,*
   No. 13–CV–0475–LHK, 2013 WL 2084475 (N.D. Cal. May 14, 2013) ................................................................................................................................ 23

*United States v. Centeno,*
   793 F.3d 378 (3d Cir. 2015) ...................................................................................... 31

*Unterberger v. Red Bull N. America, Inc.,*
   162 Cal.App.4th 414 (2008) ...................................................................................... 26

*Walker v. Boeing Corp.,*
   218 F. Supp. 2d 1177 (C.D. Cal. 2002) ........................................................... 26, 29

Mitchell
Silberberg &
Knupp LLP

7

**OPPOSITION TO MOTION TO REMAND**

**TABLE OF AUTHORITIES**
<u>(continued)</u>

**Page(s)**

*Webber v. Nike USA, Inc.*,
No. 12-CV-00974 BEN WVG, 2012 WL 4845549 (S.D. Cal. Oct. 9,
2012) .......................................................................................................... 25

*Young v. Anthony's Fish Grottos, Inc.*,
830 F.2d 993 (9th Cir. 1987) .................................................................. 13

**STATUTES**

28 U.S.C.
§ 1441 ................................................................................................. 9, 17
§ 1441(a) ................................................................................................ 18
§ 1441(b) ................................................................................................ 18
§ 1441(b)(2) ..................................................................................... 17, 18

Cal. Civil Code
§ 47 ........................................................................................................ 21

Cal. Labor Code
§ 2802 .................................................................................................... 16

Labor Management Relations Act
§ 301 .................................................................................... 9, 10, 11, 12

**OPPOSITION TO MOTION TO REMAND**

Mitchell
Silberberg &
Knupp LLP

# I.    INTRODUCTION

Plaintiffs' Motion should be denied on federal question and diversity grounds.

Plaintiffs' Promissory Fraud Claim is preempted by Section 301 of the Labor Management Relations Act ("LMRA") – as it is either a disguised claim for breach of the collective bargaining agreement ("CBA") or requires its interpretation.

Plaintiffs' Promissory Fraud Claim is premised, primarily, if not exclusively, on Defendant Sports Media Services, LLC's ("SMS") purported failure to inform Plaintiffs of the layoff and give them preference in re-hiring – rights enjoyed by "staff," but not "daily" employees, under the parties' CBA.  Plaintiffs, however, claim that Plaintiffs' classification as "daily" employees was a fiction.  This is the very definition of a Section 301 claim – a basis for jurisdiction that is not defeated by the post-removal deletion of the misclassification allegation in Plaintiffs' unfiled Second Amended Complaint ("SAC").

Plaintiffs' Promissory Fraud claim would require interpretation of disputed CBA provisions in any event, as the claim depends on emails, the enforceability of which is unclear under the CBA's integration clause, among other provisions.

Plaintiffs' claims must remain in federal court regardless, as diversity jurisdiction clearly exists – for two separate, independent reasons.

First, Defendant SMS removed the case before Defendant Gary Hartley was "properly joined and served" in the action under 28 U.S.C. § 1441.  Section 1441 means what it says – if removal is perfected before non-diverse defendants are served – removal jurisdiction attaches, as the Second, Third, and Fifth Circuit Courts of Appeal, and multiple California federal district court decisions, have held.  This is dispositive regardless of the sufficiency of the allegations against Defendant Hartley.

Second, Plaintiffs have not stated and cannot "possibly" state a defamation or intentional infliction of emotional distress ("IIED") claim against Defendant Hartley in any event – a defect the proposed SAC fails to correct.  "Dead weight" is an opinion, while "run of the mill"-discrimination allegations are simply not enough.

9

**OPPOSITION TO MOTION TO REMAND**

1    Plaintiffs' Motion to Remand should be denied.

2    **II.     PLAINTIFFS' PROMISSORY FRAUD CLAIM IS PREEMPTED**

3        **A.     Applicable Standard**

4        Section 301 of the LMRA preempts any purported state law causes of action

5    that are "founded directly on rights created by collective-bargaining agreements," or

6    when a claim based on a state law right "requires the interpretation of a collective

7    bargaining-agreement." *Hayden v. Reickerd*, 957 F.2d 1506, 1509 (9th Cir. 1991);

8    *see also Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985) ("[W]hen

9    resolution of a state-law claim is substantially dependent upon analysis of the terms

10   of agreement . . . that claim must either be treated as a § 301 claim or dismissed as

11   pre-empted….") (citation omitted).

12       The preemptive strength of § 301 is "extraordinarily strong"; it displaces any

13   state law claim requiring analysis of the terms of a collective bargaining agreement.

14   *Moreau v. San Diego Transit Corp.*, 210 Cal. App. 3d 614, 622 (1989).

15       Here, Plaintiffs' Third Cause of Action for Promissory Fraud/Intentional

16   Misrepresentation and/or Failure to Disclose Material Facts (the "Promissory Fraud

17   Claim") is preempted by § 301, both because it is founded on rights created by the

18   CBA and/or requires interpretation of the CBA.  Specifically, the Promissory Fraud

19   Claim is preempted for at least the following three reasons:

20       **B.     Plaintiffs Seek to Enforce Rights "Staff" Employees Enjoy**

21       Plaintiffs' First Amended Complaint ("FAC") clearly alleges that Plaintiffs

22   were regular, not "daily" employees.  *See* FAC, ¶ 9 ("Fox called Plaintiffs 'daily

23   hires,' but … **while Fox may have termed them 'daily hires,' the reality is** they

24   were typical on-payroll employees") (emphasis added).

25       While Plaintiffs now try to disavow that allegation (*see* Mot. at 11), the FAC is

26   unequivocal and speaks for itself.  Plaintiffs need not have alleged a

27   "misclassification" cause of action (or used that specific term); the gravamen of the

28

FAC is clear: [1]  Plaintiffs should have been given notice that they were being laid off and/or been brought back before other, more junior employees.  *See*, *e.g.*, FAC, ¶ 27 ("Fox's communications never indicated in any way that Plaintiffs were being terminated or likely to be."); *id*. at ¶ 49 ("Fox did not call back Plaintiffs [] who had more seniority ...."); *id.* at ¶¶ 13, 43 (ghosting allegations).

But notice of layoffs and preference in re-employment (based on seniority), are rights enjoyed solely by "staff" employees – not "daily" employees.  *Compare* Declaration of Seth E. Pierce ("Pierce Decl."), Ex. A, Article 13, §13.01-13.04 (describing terms of employment applicable to "Staff" employees) *with id*. at Article 16, § 16.01 (describing terms of employment applicable to "Daily Employees," including that they "may be terminated without any advance notice").

In other words, Plaintiffs are (1) effectively arguing that even though "Fox called Plaintiffs 'daily hires' . . . the reality is they were typical on-payroll [*i.e.*, "staff"] employees," and (2) seeking to enforce notice-of-layoff and preference-in-reemployment rights enjoyed by "staff" employees.

The fact that Plaintiffs label this claim "fraudulent omission," rather than "misclassification" under the CBA, is irrelevant – as the practical effect is the same: Plaintiffs are trying to enforce a CBA right.  *See Int'l Bhd. of Elec. Workers, AFL-CIO v. Hechler*, 481 U.S. 851, 857 (1987) (a plaintiff may not evade the pre-emptive force of § 301 of the LMRA by casting the suit as a state-law claim).

Claims for direct violation of a CBA are plainly preempted.  *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987); *Alaska Airlines v. Schurke*, 898 F.3d 904, 920-21 (9th Cir. 2018) ("If a claim arises entirely from a right or duty of the CBA – for example, a claim for violation of the labor agreement . . . it is, in effect, a CBA

---

[1] Plaintiffs' unfiled, proposed SAC (ECF 16-1, Ex. A) conveniently and tellingly drops this allegation.  But removal jurisdiction attaches (or not) at the time of removal.  Post-removal amendments do not defeat jurisdiction.  *See Broadway Grill, Inc.*, 2016 WL 5390415, at *2 (N.D. Cal. Sept. 27, 2016), *rev'd on other grounds*, 856 F.3d 1274 (9th Cir. 2017) ("propriety of the removal is determined solely based on the pleadings filed in the state court").

**OPPOSITION TO MOTION TO REMAND**

Mitchell
Silberberg &
Knupp LLP

1    dispute in state law garb, and is preempted.").

2        **C.**    <u>**Plaintiffs Seek to Enforce Rights Inconsistent with the CBA**</u>

3           Separately, even if Plaintiffs now concede that they were properly classified as

4    "Daily Employees," their Promissory Fraud Claim is still preempted.  In this

5    scenario, the claim is not founded directly on the CBA, but rather, contradicts it.

6           Plaintiffs' Promissory Fraud Claim, in effect, argues that they were misled as

7    to their prospects for continued or future employment.  But that claim is directly at

8    odds with the CBA, which expressly disclaims any right to continued employment or

9    advance notice of termination (in the case of Daily Employees).  *See* Pierce Decl.,

10   Ex. A, Article 16, § 16.01 ("Daily Employees" . . . "may be terminated without any

11   advance notice"); *id.*, Article 1, § 1.01(3) (complete discretion in staffing).

12          Courts have repeatedly found claims premised on a purported promise

13   inconsistent with a CBA "clearly preempted."  *See*, *e.g.*, *Olguin v. Inspiration*

14   *Consol. Copper Co.*, 740 F.2d 1468, 1474 (9th Cir. 1984) (plaintiff's claim "clearly

15   preempted" because "[t]o the extent that the alleged policy manual is inconsistent

16   with the provisions of the collective bargaining agreement, the bargaining agreement

17   controls."), *overruled in part on other grounds, Allis-Chalmers Corp.*, 471 U.S. at

18   220;[2] *Starzynski v. Capital Pub. Radio, Inc.*, 88 Cal. App. 4th 33, 38 (2001) ("There

19   cannot be a valid express contract and an implied contract, each embracing the same

20   subject, but requiring different results.") (citation/internal quotation marks omitted).

21       **D.**    <u>**Plaintiffs' Fraud Claim Requires Interpretation of the CBA**</u>

22          Finally, even if Plaintiff's Promissory Fraud Claim does not emanate from or

23   contradict the CBA, it still would require the Court to interpret the CBA.  *See*

24   *Caterpillar Inc.*, 482 U.S. at 394 ("Section 301 governs claims . . . substantially

25   _____

26   [2] *See also, e.g., Bale v. Gen. Tel. Co.*, 795 F.2d 775, 780 (9th Cir. 1986) (finding
     preemption where plaintiffs would have "to show that the terms of the collective
27   bargaining agreement differed significantly from the individual employment
     contracts they believed they had made"); *Brown v. Lucky Stores*, 246 F.3d 1182,
28   1189 (9th Cir. 2001) ("According to [§] 301, to the extent any alleged independent
     agreement conflicts with a CBA, the terms of the CBA control.").

Mitchell
Silberberg &
Knupp LLP

**OPPOSITION TO MOTION TO REMAND**

1    dependent on analysis of a collective-bargaining agreement.").

2        Plaintiffs claim, at least in part, that SMS failed to inform them that their

3    positions had been eliminated, that SMS had an obligation to do so, and that its

4    failure to disclose the elimination of Plaintiffs' positions while continuing to

5    communicate with them (regarding staffing uncertainty) was fraudulent. *See, e.g.*,

6    FAC, ¶ 10 (Fox "went radio silent"), ¶ 12 ("Fox never notified Plaintiffs their careers

7    were over") (emphasis omitted), ¶ 13 ("Fox ghosted these employees").

8        The CBA, however, contains multiple (clearly disputed) provisions bearing

9    directly on SMS' obligation to communicate with Plaintiffs regarding termination of

10   their employment.  For example:

11       • Article 16, § 16.01(I)(4)(b) provides that if "the Company does not

12          schedule" a daily employee who has notified human resources of his/her

13          interest in continued work "then it will be deemed that the Company has

14          'permanently ceased to employ' him or her," thus entitling certain daily

15          employees to severance benefits.

16       • Article 16, § 16.01(I)(6) provides that the same employees are "eligible for

17          a 'permanently ceasing to employ meeting'" and that "[t]his meeting shall

18          be the **exclusive process** for [Daily Employees] to discuss the Company's

19          action."  (Emphasis added.)  *See also* Article 2, § 2.02(D) (reiterating).

20       These provisions, including whether they apply, what they require, and

21   whether they were followed as to each Plaintiff **(including whether the emails**

22   **could constitute a "meeting," given the impossibility of in-person interaction**

23   **during a global pandemic)**, bear directly on Plaintiffs' Promissory Fraud Claim,

24   including with respect to whether SMS intentionally misled Plaintiffs and whether

25   Plaintiffs reasonably, detrimentally relied in response.  Resolution of these issues is

26   inextricably intertwined with the CBA.  *See Young v. Anthony's Fish Grottos, Inc.*,

27   830 F.2d 993, 999 (9th Cir. 1987) (state law claims preempted because resolution of

28   claims was "inextricably intertwined" with interpretation of CBA).

1    Similarly, the CBA contains an integration clause that bears directly on

2  whether email communications (of the kind primarily at issue) can **modify** the terms

3  of the CBA.  Article 18, § 18.07 of the CBA (Pierce Decl., Ex. A) states "This

4  Agreement contains the full and complete agreement between the parties and cannot

5  be changed or terminated orally."  Among other issues raised by this provision, does

6  the term "orally" modify the word "changed" or only the word "terminated"?

7    This is not academic, as Plaintiffs' claim of deception is rooted in the emails.

8  The ability of the emails to modify the CBA bears directly on the fraud claim,

9  including Plaintiffs' ability to rely on purported email modifications.  Multiple courts

10  have reached this same conclusion in finding preemption.  *See, e.g.*, *Hamilton v.*

11  *Partners Healthcare Sys., Inc.*, 209 F. Supp. 3d 397, 407 (D. Mass. 2016) ("the

12  CBA's integration clause must be interpreted to determine the viability of any other

13  contract between the individuals and Defendants"); *Cavallaro v. UMass Mem'l*

14  *Healthcare, Inc.*, 678 F.3d 1, 6–7 (1st Cir. 2012) ("the need to interpret the CBA's

15  integration provisions … is ultimately sufficiently intertwined with the CBA").[3]

16    **E.    Plaintiffs' Authority Is Inapposite**

17    Plaintiffs' arguments and purported authorities to the contrary are unavailing.

18    First, Plaintiffs argue that their "state law fraud claim does not arise from [the]

19  CBA"), citing *Milne Employees Ass'n v. Sun Carriers*, 960 F.2d 1401 (9th Cir.

20  1991), for the (mistaken) proposition that "state law fraud claims" cannot be

21  preempted.  *See* Mot. at 6.  *Milne*, however, actually **supports** preemption here.

22    In *Milne*, the plaintiffs alleged that the company's owners "secretly planned to

23  liquidate Milne's assets" while "visit[ing] with employees . . . in an effort to address

24  industrywide rumors of the company's imminent closing," which included "speeches

25  and [] videotapes promising the employees job security . . . and asking them to

---

26
27  [3] *See also Johnson v. NBC Universal, Inc.*, 409 F. App'x 529, 531–532 (3d Cir. 2010) (plaintiff claimed to have reached agreement with employer inconsistent with applicable CBA, but because of the CBA's integration clause, "[Plaintiff's] claim is completely preempted because both the CBA and the [inconsistent agreement] would
28  need to be interpreted to determine which is controlling.").

Mitchell
Silberberg &
Knupp LLP

**OPPOSITION TO MOTION TO REMAND**

1  refrain from seeking other employment." *Milne*, 960 F.2nd at 1405.

2      The Court in *Milne* expressly noted that "[b]ecause the employees knew at the

3  time of the alleged fraud that their employment with Milne was governed by

4  collective bargaining agreements, they must prove that their reliance was justified in

5  light of the agreements." *Id*. at 1409.  The Court then looked for any provision of the

6  CBA it might have to interpret to determine whether the plaintiffs' reliance was

7  justified before concluding:  there is "no provision or term which arguably conflicts

8  with Milne's promises regarding its continued operations and employee job security,

9  that would call for interpretation . . . ." *Id*.

10     **But that is not the case here**.  SMS' alleged promises of continued

11  employment (or alleged failure to provide advance notice of the termination of

12  Plaintiffs' employment) **do** conflict with the CBA, including Article 16, § 16.01

13  ("Daily Employees" . . . "may be terminated without any advance notice"); the

14  "permanently ceasing to employ" provisions; and the integration provision, as

15  described above.  *Milne* is distinguishable.[4]

16     <u>Second</u>, Plaintiffs argue that they "are the masters of their own complaint,"

17  which precludes SMS from recasting their claims.  Mot. at 6 (*citing Caterpillar Inc.*

18  *v. Williams*, 482 U.S. 386 (1987)).  While "the 'well-pled complaint' rule . . . holds a

19  plaintiff is the 'master' of his complaint . . . an independent corollary to the 'well-

20  pled complaint' rule is the 'artful pleading' rule . . . This doctrine states that while

21  couched in state contract or tort terms, federal jurisdiction exists if the issues actually

22  raise an essentially federal question."  *Moreau*, 210 Cal. App. 3d at 620 (1989).

23  Plaintiffs' claims emanate directly from and/or require interpretation of the CBA.

24  _____

25  [4] Plaintiffs' citations to *Hrones v. Rideout Memorial Hosp.*, 2022 WL 2093729 (E.D. Cal. June 10, 2022) and *Niehaus v. Greyhoud Lines, Inc.*, 173 F.3d 1207 (9th Cir. 1999) are distinguishable for the same reason.  Both cases, like *Milne*, acknowledge that a fraud claim **would** be preempted if there were any disputed provision in the CBA that bore on the claim, before noting that no such disputes existed on the facts presented in those particular cases.  *See Hrones*, 2022 WL 2093729, at *4 (no "dispute to resolve"); *Niehaus*, 173 F.3d at 1212 ("the parties do not dispute the meaning of any of [the CBA's] relevant provisions.").

28  Mitchell Silberberg & Knupp LLP

15
**OPPOSITION TO MOTION TO REMAND**

1   Plaintiffs' carefully worded pleading does not preclude jurisdiction.

2   _Finally_, Plaintiffs argue that SMS' CBA-based arguments constitute a federal

3   defense to their fraud claim, which is insufficient for preemption.  But that is not

4   true.  SMS' preemption arguments go to the core of Plaintiffs' ***prima facie* case**,

5   including whether SMS had any intent to defraud (or was just following the

6   communication protocol established by the CBA's "permanently ceasing to employ"

7   provisions) and justifiable reliance (*i.e.*, whether Plaintiffs could have expected

8   continued employment in light of the CBA's Daily Employee and integration

9   provisions).  *See Lazar v. Sup. Ct.*, 12 Cal. 4th 631, 638 (Cal. 1996) (stating well-

10  established elements of fraud claim).  Cases like *Caterpillar*, *Sprewell v. Golden*

11  *State Warriors*, 266 F.3d 979 (9th Cir. 2001); *Ettedgui v. WB Studio Enterprises Inc.*,

12  2021 WL 633859 (C.D. Cal. Feb. 18, 2021); and *Romero v. San Pedro Forklift, Inc.*,

13  266 Fed. Appx. 552 (9th Cir. 2008) – in which the defendants were found to be

14  asserting a federal **defense** – are simply inapplicable here.

15      Plaintiffs' Promissory Fraud Claim, in sum, presents a federal question.

16  **III.   DIVERSITY JURISDICTION ALSO EXISTS**

17      Diversity jurisdiction exists, as well, in any event.[5]

18  _____

19  [5] Plaintiffs' decision to name Hartley is a transparent attempt to defeat
    diversity jurisdiction.  Defendant SMS was Plaintiffs' employer and, if Plaintiffs are

20  successful, would be liable for the causes of action asserted against Harley – *i.e.*,
    defamation and IIED.  Indeed, even if Hartley were found jointly liable, Defendant

21  SMS would be obligated to indemnify Hartley pursuant to Cal. Labor Code Section
    2802; *Moradi v. Marsh USA, Inc.*, 219 Cal. App. 4th 886, 894 (2013) ("employers

22  are vicariously liable"); *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 75 (1996)
    ("The plaintiff-employee's primary target remains the employer. Adding individual

23  supervisors personally as defendants adds mostly an *in terrorem* quality to the
    litigation, … enhancing a plaintiff's possibility of extracting a settlement on a basis

24  other than the merits.").

25      Plaintiffs did not even name Hartley originally.  *See* ECF 2, Ex. 3.  The initial
    claims were only filed against SMS and various other corporate entities (Plaintiffs

26  believed might be their employer).  It was only when Defendants' counsel informed
    Plaintiffs' counsel that Fox Payroll Services, Inc. – **the only California citizen** – had

27  been sold to Disney a year prior to the events in question, and was therefore not a
    proper party and should be dismissed, that Plaintiffs (suddenly and without warning)
    amended their complaint to name Hartley directly.

28      Plaintiffs' maneuvering should not be rewarded.

1

2

**A.** **Hartley's California Citizenship Must Be Disregarded as the Case Was Removed Before He Was Served**

3

4

5

6

The federal removal statute provides that a suit that is "otherwise removable solely on the basis of … [diversity of citizenship] may not be removed if any of the parties in interest **properly joined and served** as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2) (emphasis added).

7

8

9

10

11

Defendant Hartley was not properly joined and served until **October 14, 2022**. *See* ECF 14. Removal jurisdiction attaches, or not, at the time of removal – in this case, **October 6, 2022**. *See* ECF 1. Because Hartley was not "properly joined and served" when the case was removed, his presence as a defendant does not preclude removal.

12

13

14

The Second, Third and Fifth Circuit Courts of Appeal, as well as numerous district courts within the Ninth Circuit, have reached this exact conclusion. In effect, these courts have all concluded that Section 1441 means what it says:

15

16

17

18

19

20

21

22

> Every exercise in statutory construction must begin with the words of the text." *Saks v. Franklin Covey Co.*, 316 F.3d 337, 345 (2d Cir. 2003). As the Third Circuit . . . recognized in *Encompass Insurance*, **"the language of the forum defendant rule in section 1441(b)(2) is unambiguous."** The statute plainly provides that an action may not be removed to federal court on the basis of diversity of citizenship **once a home-state defendant has been "properly joined and served."** 28 U.S.C. § 1441(b)(2) (emphasis added). By its text, then, Section 1441(b)(2) is inapplicable until a home-state defendant has been served in accordance with state law; until then, a state court lawsuit is removable under Section 1441(a) so long as a federal district court can assume jurisdiction over the action.

23

24

25

26

27

28

*Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 705-706 (2d Cir. 2019); *see also Encompass Ins. Co. v. Stone Mansion Rest., Inc.*, 902 F.3d 147, 150-152 (3d Cir. 2018) ("[S]ection 1441(b)(2) is unambiguous. Its plain meaning precludes removal on the basis of in-state citizenship only when the defendant has been properly joined and served."); *Tex. Brine Co., LLC v. Am. Arbitration Ass'n. Inc.*, 955 F.3d 482 (5th Cir. 2020) ("'By its text, then, Section 1441(b)(2) is inapplicable until a home-state

1   defendant has been served in accordance with state law; until then, a state court

2   lawsuit is removable under Section 1441(a) so long as a federal district court can

3   assume jurisdiction over the action.'"); *Dechow v. Gilead Scis., Inc.*, 358 F. Supp. 3d

4   1051, 1054-55 (C.D. Cal. 2019) (denying remand where plaintiff had time to serve

5   defendant prior to filing of notice of removal but failed to do so; "Adopting any other

6   interpretation of the statute would violate the ... text" of the statute).[6]

7        The so-called "snap removal" doctrine is applicable and dispositive here.[7]

8        **B.    Fraudulent Joinder**

9        Defendant Hartley is a sham defendant in any event.

10            **1.    Legal Standard**

11        The standard for proving fraudulent joinder is well established.  *See generally*

12   Mot. at 16.  Defendants must demonstrate that Plaintiffs' claims are deficient as a

13

14   [6] *See also, e.g., May v. Haas*, No. 12 CV 01791(MCE)(DAD)), 2012 WL 4961235,
     at *2 (E.D. Cal. Oct. 16, 2012) (removal proper; "the Court finds no reasons to
15   depart from the plain language of § 1441(b)"); *Choi v. Gen. Motors LLC*, No. CV 21-
     5925-GW-MRWX, 2021 WL 4133735, at *4 (C.D. Cal. Sept. 9, 2021) ("Section
16   1441(b)(2) demonstrates that a 'local defendant' has to be 'properly joined and
     served' before the prohibition present in Section 1441(b)(2) goes into effect.").

17   [7] Certain opinions, primarily from the District of Nevada, have rejected this
     interpretation as inconsistent with legislative intent or hazarding absurd results.  *See,*
18   *e.g., Deutsche Bank Nat'l Tr. Co. as Tr. for Am. Home Mortg. Inv. Tr. 2007-1 v. Old*
     *Republic Title Ins. Grp., Inc.*, 532 F. Supp. 3d 1004, 1011 (D. Nev. 2021) ("such a
19   reading would contravene Congressional intent").  But no Circuit Court of Appeal
     has adopted this view; to the contrary, *Gibbons*, *Encompass*, and *Tex. Brine* (all
20   Circuit level decisions) specifically rejected it.  And even in Nevada, the more recent
     and better view is that determining Congressional intent is unnecessary because the
21   plain language of the statute is clear, nor does that plain language necessarily lead to
     absurd results.  *See, e.g., MetLife Home Loans, LLC v. Fid. Nat'l Title Grp., Inc.*, No.
22   220CV01798GMNVCF, 2021 WL 4096540, at *5 (D. Nev. Sept. 8, 2021) ("Given
     the plain language of the statute, the Court need not consider the legislative history of
23   28 U.S.C. § 1441[,]" and "the legislative history of the 1948 revision provides no
     explanation for the inclusion" of the key language, which precludes the conclusion
24   "that strict adherence...would be plainly at variance with the policy behind the
     statute.").  This is particularly true where, as here, there was no "race to remove" or
25   procedural gamesmanship – as SMS removed just days before its removal deadline,
     not prior to service, a key factor in some of the decisions granting remand.  *See May,*
26   2012 WL 4961235, at *3 ("Schneider National did not 'race' to the courthouse to
     remove this case to federal court. Therefore, the concern of procedural
27   gamesmanship by defendants is not present here. Accordingly, the Court finds no
     reasons to depart from the plain language of § 1441(b).").

28

1  matter of law and that such deficiencies cannot be cured.[8]  *See, e.g., Lewis v. Time*
2  *Inc.*, 83 F.R.D. 455, 460 (E.D.Cal.1979) ("'Fraudulent joinder' is a term of art, it
3  does not reflect on the integrity of plaintiff or counsel, but is merely the rubric
4  applied when a court finds either that no cause of action is stated against the
5  nondiverse defendant…."); *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th
6  Cir. 1987) ("If the plaintiff fails to state a cause of action against a resident
7  defendant, and the failure is obvious according to the settled rules of the state, the
8  joinder of the resident defendant is fraudulent.").

9       While the standard is higher than a traditional Rule 12(b)(6) Motion to
10  Dismiss, it is not the impossible one Plaintiffs seem to suggest.  Plaintiffs cannot
11  merely tender the fanciful or theoretical possibility of pleading a claim; they must
12  demonstrate some **realistic** prospect of doing so.  *See, e.g.*, *Padilla v. AT&T Corp.,*
13  697 F. Supp. 2d 1156, 1159 (C.D. Cal. 2009) (must show that "plaintiff would not be
14  afforded leave to amend his complaint to cure the purported deficiency").

15       Plaintiffs have filed two complaints and tendered (but not yet filed) a third
16  one.  *See* ECF 16-1 (Chesler Decl., Ex. A.)[9]  This last attempt followed a detailed
17  meet and confer process that focused on the viability of the defamation and IIED
18  claims, among other issues.  *See* Pierce Decl., ¶¶ 3-4, Ex. B.

19       Plaintiffs, in short, have had multiple chances to allege the defamation and
20  intentional infliction causes of action directed at Defendant Hartley.  Plaintiffs have
21  clearly alleged what they could consistent with Rule 11. The question is no longer
22  whether Plaintiffs can **possibly** state a claim, but whether they have stated one.

23

24  _____
25  [8] Defendants do not aver "actual fraud" as to "the jurisdictional facts."  Mot. at 16.
    [9] Plaintiffs' refusal to file their draft SAC appears strategic.  Defendants asked
26  Plaintiffs to file the SAC so that Defendants could file their Motion to Dismiss as to
    Plaintiffs' current allegations.  Plaintiffs declined, preferring to leave open the
27  "possibility" of further amending their claims.  *See* Pierce Decl., ¶ 4; *compare* Mot.
    at 16-17 (noting that remand is possible where Plaintiff can "possibly" state a claim
28  by amending).  The Court should not reward such gamesmanship, nor is the
    fraudulent joinder rule so easily circumvented.

### 2. Defamation

Plaintiffs' defamation claim is not viable.

#### a. Basic Legal Principles

Defamatory statements "must contain a false **statement of fact**." *Cort v. St. Paul Fire & Marine Ins. Cos.*, 311 F.3d 979, 985-86 (9th Cir. 2002) (emphasis added). Statements of opinion are not actionable. *Campanelli v. Regents of Univ. of California*, 44 Cal. App. 4th 572, 578 (1996) ("A publication must contain a false statement of *fact* to give rise to liability for defamation. Even if they are objectively unjustified or made in bad faith, publications which are statements of *opinion* rather than fact cannot form the basis for a libel action.") (italics in original).[10]

#### b. FAC Defamation Allegations

Plaintiffs' FAC defamation claim is based exclusively on allegations that Hartley referred to Plaintiffs as "dead weight." *See* FAC, ¶¶ 12, 38, 56(e), 57, 85.[11] But even if Hartley referred to Plaintiffs that way (which Defendants deny), that would be an opinion – not an actionable statement of fact. *See Campenelli*, 44 Cal. App. 4th at 578. There is simply no way to prove if someone is "dead weight."

Indeed, numerous courts have held that highly similar (or even more egregious) comments constitute statements of opinion. *See*, *e.g.*, *Seelig v. Infinity Broad. Corp.*, 97 Cal. App. 4th 798, 810 (2002) (statement that plaintiff was a "loser" not actionable); *Moyer v. Amador Valley Joint Union High School District*, 225 Cal. App. 3d 720, 725 (2008) (statement that plaintiff was "the worst teacher" at the school was not a "factual assertion capable of being proved true or false").

---

[10] "Whether the allegedly defamatory statement constitutes fact or opinion is a question of law." *Okun v. Superior Ct.*, 29 Cal. 3d 442, 450 (1981). *See* Mot. at 20 ("Generally, the determination … is a matter of law for the court.").

[11] Plaintiffs' FAC and unfiled SAC state that the defamatory remarks "included but were not limited to" the "dead-weight" remark. ECF 16-1, Ex. A (unfiled SAC) at ¶ 84; *see also* Mot. at 18 ("not … sole allegation"). But no other comment has been pleaded, despite Plaintiffs' multiple opportunities to do so. If Plaintiffs could allege additional remarks they no doubt would have. This phrasing does not mean it is possible for Plaintiffs to assert a viable defamation claim.

20

**OPPOSITION TO MOTION TO REMAND**

Mitchell Silberberg & Knupp LLP

1   **c.   Additional Allegations in Unfiled SAC**

2   Plaintiff's unfiled SAC further alleges, **on information and belief,** that

3   Hartley told other **unspecified** "employees – as well as management level employees

4   – that Plaintiffs lacked the required skill set for their jobs."  ECF 16-1, Ex. A (unfiled

5   SAC) at ¶ 85.  But this contention fares no better.

6   First, Plaintiffs' allegation is the definition of threadbare.  Plaintiff makes no

7   attempt to provide any specifics, including who was told this comment, when, why,

8   or in what context – or if it was made in reference to all of the plaintiffs, some of

9   them, or only one.  *See* ECF 17 (Defs' Motion to Dismiss) at 14-18 (noting the

10  impropriety of composite pleadings).

11  Second, Hartley's belief as to Plaintiffs' skills (or lack thereof) and their

12  suitability for a specific role or position at the company is the very definition of an

13  opinion – particularly given the creative nature of much of the work at issue.

14  Third, Plaintiffs' new allegation is not phrased in inflammatory terms, but at

15  most, constitutes the communication of a manager's assessment of a subordinate's

16  performance and capability to another manager and/or other co-worker.  Such

17  statements clearly fall within management privilege; indeed, if such opinions could

18  be considered defamatory, managers would be effectively precluded from negatively

19  commenting upon a subordinate's performance.  That is not and cannot be the law.

20  *See generally Janken*, 46 Cal. App. 4th at 64 ("Without making personnel decisions,

21  a supervisory employee simply cannot perform his or her job duties."); *Kacludis v.*

22  *GTE Sprint Commc'ns Corp.*, 806 F. Supp. 866, 872 (N.D. Cal. 1992) (supervisor

23  "made disparaging comments to others within Sprint concerning [plaintiff's]

24  qualifications," which the Court found privileged under Civil Code § 47; "[T]he sort

25  of communications alleged here is paradigmatic of the sort of activities protected by

26  the manager's privilege . . . If that privilege protects nothing else, it protects a

27  manager's right to manage personnel . . . without fear of independent liability . . .

28  The manager's privilege thus protects [supervisor making the disparaging comments]

Mitchell
Silberberg &
Knupp LLP

21

**OPPOSITION TO MOTION TO REMAND**

1    from liability for all causes of action pled herein.").

2                    **d.    Plaintiffs' Arguments/Citations Unavailing**

3            Plaintiffs make a number of arguments – none convincing.

4            <u>First,</u> Plaintiffs characterize the term "dead weight" as "defamatory on its

5    face," citing the "Urban Dictionary" and Miriam-Webster, both of which define

6    "dead weight" to mean "useless."  *See* Mot. at 18.  But this does not make the term

7    defamatory on its face, as numerous courts have held that the term "useless" is itself

8    a non-actionable expression of opinion.  *See*, *e.g.*, *Shepard v. Courtoise*, 115 F. Supp.

9    2d 1142, 1147 (E.D. Mo. 2000) ("The court concludes that the term[] 'useless

10   individual' . . . [is] not actionable as defamation."); *Boese v. Paramount Pictures*

11   *Corp.*, 952 F. Supp. 550, 559 (N.D. Ill. 1996) ("'useless piece of shit' . . . non-

12   actionable expression of opinion").

13           <u>Second,</u> Plaintiffs seek to distinguish Defendants' clearly applicable case

14   citations by claiming that Hartley used the term "dead weight" to explain why

15   Plaintiffs' employment was terminated, and that "[a]n employer's motivation for

16   terminating employment is clearly a provable fact."  Mot. at 19.[12]  But the cases

17   Plaintiffs cite in support did not involve "opinions" at all – but concrete facts.

18           In *Overhill Farms, Inc. v. Lopez*, 190 Cal. App. 4th 1248, 1261 (2010), for

19   example, defendants called plaintiff "racist" and accused plaintiff of using an

20   "alleged social security number discrepancy" as an excuse to target "immigrant

21   women."  *Id*. at 1261.  The Court explained that it was not the term "racist" that was

22   defamatory; it was the provably false factual allegation that the plaintiff had used a

23   social security number discrepancy to target certain employees for termination.  *Id*. at

24   _____

25   [12] Plaintiffs, moreover, provide no support for the connection they assert (*i.e.*, that
     dead weight referred to Plaintiff's skills); that is just their belief.  While Hartley
26   denies that he ever referred to Plaintiffs as dead weight, even if he had, there is no
     allegation in the FAC or unfiled SAC that Hartley specifically referred to Plaintiffs'
27   skills in making that comment, nor is there any necessary correlation between the
     two concepts.  To take a simple example (with a nexus to this case), if Hartley
28   thought everyone over 40 was dead weight, that would still be an opinion – one with
     no connection to skill or competence.

**OPPOSITION TO MOTION TO REMAND**

Mitchell
Silberberg &
Knupp LLP

1   1262 ("an accusation of concrete wrongful conduct").

2       In *Umamoto v. Insphere Insurance Solutions, Inc.*, No. 13–CV–0475–LHK,

3   2013 WL 2084475 (N.D. Cal. May 14, 2013) – which involved statements that the

4   plaintiffs were terminated "due to performance" – the sales employee plaintiffs were

5   objectively ranked by sales figures and plaintiffs were among the highest producers.

6   Thus, in this context, being terminated "due to performance" implied poor sales

7   metrics, which was a provably-false assertion of fact.  *See id.* at *2.  Plaintiffs' role

8   here and the term "dead weight" do not involve any such provably-false metrics.

9   Moreover, and notably, *Umamoto* contains no discussion of the opinion-versus-

10  provably-false-assertions-of-fact issue at all.  *Umamoto* was focused entirely on

11  whether the statement had actually been published and by whom, and whether it was

12  privileged.  Opinions are not authority for issues never discussed or ruled upon.[13, 14]

13      Third, Plaintiffs argue that, as Hartley's true motivation was age discrimination,

14  the assertion that Plaintiffs were "dead weight" was a false, factual statement as to the

15  reason SMS did not call them back.  Mot. at 19.  In other words, if Plaintiffs prevail

16  on their age discrimination claim, then the stated reason was false and defamatory.

17  But if SMS prevails, the statement was true and no action lies.  But this theory, if

18  credited, would make supervisors liable for discrimination claims – in direct

19

20  ───────────────

21  [13] Plaintiffs appeal to *Oberkotter v. Woolman*, 187 Cal. 500  (Cal. 1921) – a **101-year old case** in which a teacher was permitted to pursue defamation claims based on a

22  statement that he was a "weak spot[] in the public school system of instruction" – is hardly a reflection of current law and contains no discussion whatsoever of opinions versus provably false assertions of fact.

23   *Gallant v. City of Carson*, 128 Cal. App. 4th 705, 708 (Cal. Ct. App. 2005) is

24  similarly inapt.  The terms "competent" and "incompetent" have been held to be sufficiently objective to be provably false.  *See Kahn v. Bower*, 232 Cal. App. 3d

25  1599, 1609 (Ct. App. 1991) ("['incompetent'] is reasonably susceptible of a provably false meaning.").  "Dead weight" is far more subjective, and there is no authority

26  finding it – or similar terms like "useless" – susceptible of a provably false meaning.

27  [14] Plaintiffs also provide no support for the claim that Hartley used the term "dead weight" to **justify** "the reason Plaintiffs were terminated."  Mot. at 18-19.  The exact wording of the FAC and unfiled SAC do not support that characterization.  *See,*

28  *infra*, § III.B.2.d (parsing the exact wording alleged and not).  Plaintiffs' entire claim hinges on a purported implication.

23
**OPPOSITION TO MOTION TO REMAND**

1  contravention of California law.  *Janken*, 46 Cal. App. 4th at 55, 65 (1996) (Liability

2  for discrimination … is limited to the "employer.").

3       <u>Fourth,</u> Plaintiffs argue that, under the totality of the circumstances, Hartley's

4  comment "'implie[d]…undisclosed defamatory facts as the basis for the opinion.'"

5  Mot. at 20 (*quoting Okun*, 29 Cal. 3d at 452).  But all Hartley is purported to have

6  said is "dead weight."  That opinion does not yield any undisclosed defamatory facts,

7  and this case is not remotely close to those (cited in Plaintiffs' Motion) finding an

8  actionable cause of defamation.  For example:

9       • In *Kahn*, a supervisor criticized a social worker in a written

10         communication, stating, "[W]hat is the matter with Marilyn Kahn[?]  Is

11         it **incompetence** or exactly what is it? . . . [S]ending the child back to

12         Alaska, taking her away from her foster parents she loved, in absolute

13         contradiction to our report . . . goes so far beyond incompetence that I

14         almost wonder **if she has some kind of hostility towards the child or**

15         **toward handicapped children in general** . . . her level of

16         incompetence . . .makes it impossible for us to work with her."  *Kahn,*

17         232 Cal. App. 3d at 1608-09.  The plaintiff contended that these

18         statements conveyed that she had engaged in conduct that was hostile to

19         children.  *Id*. at 1609.  There is no such suggestion of untoward conduct

20         associated with the term "dead weight."

21       • In *Stoneking v. Briggs*, 254 Cal. App. 2d 563 (1967), the president of a

22         financially troubled union was removed, and another executive of the

23         union informed a local newspaper of the removal, stating that the

24         president "had been under investigation for some time and extensive

25         hearings had been held," strongly suggesting financial improprieties on

26         the part of the president.  *Id*. at 568.  Again, here, the term "dead

27         weight" does not suggest any such improper (or illegal) activity.

28

Mitchell
Silberberg &
Knupp LLP

**OPPOSITION TO MOTION TO REMAND**

- In *Slaughter v. Friedman*, 32 Cal. 3d 149 (Cal. 1982), dental plan administrators wrote letters to a dentist's patients informing them that reimbursement for their procedures had been denied because the procedures were "unnecessary" and the dentist's charges were "excessive." The Court found that such "accusations by professional dental plan administrators carry a ring of authenticity and reasonably might be understood as being based on fact." *Id*. at 154. But "unnecessary" and "excessive" are provably false in a way that "dead weight" simply is not, no matter how much authority Hartley had.

<u>Finally</u>, Plaintiffs argue that the bar is exceptionally low where the issue is remand (as opposed to sufficiency). But Plaintiffs overstate the holdings of *Johnson*, *Morales*, and *Webber* (*see* Mot. at 23), all of which hold that the standard is still whether Plaintiffs can state a cause of action "according to the settled rules of the state," including by amendment. *See Webber v. Nike USA, Inc.*, No. 12-CV-00974 BEN WVG, 2012 WL 4845549, at *2 (S.D. Cal. Oct. 9, 2012) ("To prevail under the fraudulent joinder theory, a defendant must show the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state."); *Johnson v. Wells Fargo & Co.*, No. CV 14-06708 MMM JCX, 2014 WL 6475128, at *8 (C.D. Cal. Nov. 19, 2014) (remand appropriate only because "it is possible that such deficiencies can be cured by amendment"); *Morales v. Gruma Corp.*, No. CV 13-7341 CAS FFMX, 2013 WL 6018040, at *5 (C.D. Cal. Nov. 12, 2013) (same). Here, there is simply no amendment that will make "dead weight" actionable defamation, as evidenced by Plaintiffs' repeated failure to do so.

### 3. Intentional Infliction of Emotional Distress

Plaintiffs also cannot possibly state an IIED claim against Hartley.

Plaintiffs, to prove an IIED claim, must establish "(1) **extreme and outrageous conduct** by the defendant **with the intention of causing**, or reckless disregard of the probability of causing, emotional distress; (2) that the plaintiff

Mitchell
Silberberg &
Knupp LLP

25

suffered severe or extreme emotional distress; and (3) that the plaintiff's injuries were actually or proximately caused by the defendant's outrageous conduct." *San Joaquin Deputy Sheriffs' Ass'n v. Cnty. of San Joaquin*, 898 F. Supp. 2d 1177, 1192 (E.D. Cal. 2012) (emphasis added).

The conduct alleged must be so extreme as to "exceed all bounds of that usually tolerated in a civilized community" – conduct so severe "no reasonable [person] in a civilized society should be expected to endure it." *Unterberger v. Red Bull N. America, Inc.*, 162 Cal.App.4th 414, 423 (2008); *Fletcher v. W. Nat'l Life Ins. Co.*, 10 Cal.App.3d 376, 397 (1970).

Numerous decisions have noted that discrimination claims, in and of themselves, are insufficient to state an IIED claim.  The plaintiff must plead more:

- *Janken*, 46 Cal. App. at 80.  In *Janken*, the plaintiff alleged a "policy of termination, or forcing the resignation of, employees over the age of 40" and that plaintiffs' supervisors willfully engaged in a plethora of activity designed to implement this illegal policy *Id.*, at 61, 79.  But the Court dismissed the claim, finding that "If personnel management decisions are improperly motivated, the remedy is a suit against the employer for discrimination[,]" not a claim against the supervisor for IIED.  *Id.*  Such conduct, without more, "is not outrageous conduct beyond the bounds of human decency."  *Id.* at 80-81 (The allegations in the complaint here fail to plead facts which, if true, could legally constitute harassment.").[15]

- *Walker v. Boeing Corp.*, 218 F. Supp. 2d 1177, 1190 (C.D. Cal. 2002).  In *Walker*, the plaintiff alleged that defendants "conspired" to "fabricate a sexual harassment claim" as a pretext for terminating his

---

[15] Plaintiffs note that *Janken* is not a remand decision.  *See* Mot. at 23 (*citing Calero v. Unisys Corp.*, 271 F. Supp. 2d 1172 (N.D. Cal. 2003)).  That is true but irrelevant.  The standard is the same regardless of context – *i.e.*, has a claim been stated or can it be through amendment.  *See supra*.

1     employment.  *Id.*, at 1179.  But the Court dismissed the IIED claim,

2     finding that "[t]erminating an employee for improper or discriminatory

3     reasons, like many other adverse personnel management decisions, is

4     insufficiently extreme or outrageous to give rise to a claim for

5     intentional infliction of emotional distress."  *Id.*

6        Plaintiffs, "to survive a motion to dismiss an intentional infliction of emotional

7  distress claim … must allege conduct that goes beyond that of a run of the mill

8  harassment or discrimination claim."  *Roche v. Audio Visual Servs. Grp., Inc.*, 2010

9  WL 3021575, at *2 (D. Nev. July 28, 2010).  Plaintiffs' FAC and unfiled SAC do not

10 come close to meeting the standard, nor can they.

11       Plaintiffs were not taunted, abused, or otherwise degraded – they were laid off.

12 SMS is not unsympathetic.  Anytime a longstanding employee is laid off, that is

13 unfortunate.  But it is not illegal; nor was there any attempt or desire to emotionally

14 damage Plaintiffs – as the communications quoted in the FAC make clear:

15     • March 19, 2020 blast email to entire department:  "We will bring

16         production support back on the schedule as demand warrants.  At this

17         point the returning shows are not requesting graphic or edit

18         support….thank you for your professional attitudes and patience as this

19         week has unfolded.  **I am hopeful** that the weeks to come will bring a

20         clearer schedule as to when we can bring you back onto the schedule.

21         Stay healthy…"  Hartley Decl., Ex. A (emphasis added).

22     • September 15, 2020 blast email to entire department:  "In response to

23         your emails and calls regarding the situation…the following is a

24         snapshot of where we are now….Broadly speaking the company and

25         FOX Sports in particular have undergone a dramatic restructuring….We

26         have called people back into serve with a focus on managing the tasks

27         assigned to us in the most efficient manner possible as we do our best to

28         ensure the health and safety of everyone in the building.  While our goal

27

**OPPOSITION TO MOTION TO REMAND**

is to return to the world we knew before the pandemic, it's difficult to predict when that will be.  I can assure you that we are constantly evaluating the near-term future with an eye on getting as many people back to work as possible.  As we become aware of additional/new opportunities we will reach out to you.  **I'm sorry this isn't the news you want to hear but it's as honest as I can be as of today….You all are constantly in my thoughts and I sincerely hope to see you in the near future.**"  Hartley Decl., Ex. B (emphasis added).

Other emails, not cited in the FAC, bolster this (inevitable) conclusion.

- June 21, 2021 email responding to Plaintiff Zepeda inquiry about future work:  "Unfortunately the company/department workflow has evolved from where we were a year ago as we've been tasked with cutting budgets and altering processes.  As this point it doesn't appear that we will be calling additional people back in the foreseeable future.  **Wish I had better news….**"  Hartley Decl., Ex. C (emphasis added).[16]

- September 10, 2021 email responding to Plaintiff Corea inquiry about future work:  "Unfortunately we're not looking to bring you back in for the foreseeable future.  The department has significantly evolved in both workflow and labor needs since we last saw you….If anything changes we'll reach out but I would pursue other opportunities if I were you.  You have many transferable skills….  **If I hear of anything out there I will forward to you.**"  Hartley Decl., Ex. D (emphasis added).

Plaintiffs' Motion to Remand and SAC seem to accept that alleged discrimination "*alone* is insufficient" (Mot. at 24 (italics in original)), and thus focus

---

[16] The Court may go beyond the pleadings and consider "summary judgment-type evidence."  *See Padilla*, 697 F. Supp. 2d at 1159 ("Although the basis for a removability determination is generally limited to the plaintiff's pleadings, where fraudulent joinder is an issue the Court may look beyond the pleadings."); *see also Travis v. Irby*, 326 F.3d 644, 648–649 (5th Cir. 2003) ("For fraudulent joinder, the district court may, as it did in this case, 'pierce the pleadings' and consider summary judgment-type evidence in the record").

Mitchell
Silberberg &
Knupp LLP

28

**OPPOSITION TO MOTION TO REMAND**

on two points in response – the purported "dead weight" comment and Hartley "ghosting" Plaintiffs.  But neither is sufficient to plead, let alone prove, the IIED.

First, Plaintiffs do not allege, nor can they, that Hartley ever referred to Plaintiffs as "dead weight."  The most that Plaintiff have alleged is that Hartley used that phrase in a meeting.  *See* ECF 16-1, Ex. A (unfiled SAC) at ¶ 11.  While Plaintiffs allege this was an "obvious reference" to Plaintiffs, it necessarily follows that Plaintiffs were not actually mentioned.  *Id.*  Indeed, Plaintiffs assume the reference related to them because it was "made clear" that "no one else was being called back" and that the dead weight had been "gotten rid of."  But, apparently, with the exception of the phrase "dead weight" itself, even Plaintiffs concede the remaining words were not actually spoken.  If they had been, Plaintiffs would have alleged the statement, not the purported implication.

Plaintiffs assert that the comment was about them, but their own allegations don't support that assertion.  But even if the Court assumes the statement was made, as characterized by Plaintiffs, a single statement, not directed to Plaintiffs, stated during an internal meeting and without any expectation that Plaintiffs would hear it (or of it), hardly meets the high standard for pleading and proving an IIED claim.  *See also Walker*, 218 F. Supp. 2d at 1185 ("Defamatory accusations are insufficient to give rise to an action for intentional infliction of emotional distress.") (collecting cases).

Second, Plaintiffs base their IIED claim on Hartley's failure to definitively tell them, sooner, that their positions had been eliminated.  *See, e.g.*, ECF 16-1, Ex. A (unfiled SAC) at ¶¶ 12, 41 (repeatedly alleging that Hartley "ghosted" Plaintiffs and that they deserved better).[17]  But SMS and Hartley had no such obligation; Plaintiffs were "daily" or freelance employees pursuant to a union contract.  The contract gave SMS absolute discretion in staffing personnel and specifically stated that daily hires

---

[17] Plaintiffs do not allege that Hartley promised them that they would return or discouraged them from taking other assignments (or looking for other work).  Nor can Plaintiffs make that allegations, as the cited/quoted emails make clear.

1   "may be terminated without any advance notice."  Pierce Decl., Ex. A at Article 16,

2   § 16.01; *see also id.*, at Article I, § 1.01(2) (staffing discretion).

3        Plaintiffs, as union members, were on notice of these provisions – as well as

4   their right to request a "permanently ceasing to employ meeting" if they wanted more

5   information as to why they were no longer being scheduled.  *Id.*, at Article 16, §

6   16.01(I)(6).  Plaintiffs were also aware, per their CBA, that this meeting was the

7   "**exclusive process** for [daily employees] to discuss the Company's action."  *Id.*

8   (emphasis added).  *See also* Article 2, § 2.02(D) (reiterating exclusivity of process).

9   Plaintiffs do not allege they requested and were denied a meeting (or that their

10  request for such a meeting was ignored).

11       Plaintiffs' position – daily work – is the epitome of insecure.  While it is false

12  to claim that Hartley ghosted them, as the quoted emails make clear, even had he

13  done so, failing to expressly tell a "daily" hire (even a long-standing one) that he or

14  she would not be further scheduled is not enough to state or prove an IIED claim.

15       The standard is "outrageous conduct" that "no reasonable [person] in a

16  civilized society should be expected to endure."  But the asserted conduct does not

17  come close to meeting the high standard; Plaintiffs cannot possibly prove this claim.

18       Plaintiffs' case citations – all of which involved refusal to provide medical

19  leave – have no bearing on the facts here:

20       • *Gibson v. Am. Airlines*, No. C 96-1444-FMS, 1996 WL 329632, at *4

21         (N.D. Cal. June 6, 1996): deceptive denial of medical leave to an

22         employee whose child suffered a medical emergency.  *Id*. at *1-2.

23       • *Dagley v. Target Corp., Inc.*, No. CV 09-1330-VBF, 2009 WL 910558,

24         *3 (C.D. Cal. March 31, 2009): deceptive denial of medical leave to an

25         employee who required surgery.  *Id*. at *3.

26       • *Barsell v. Urban Outfitters, Inc.*, No. CV 09-02604-MMM, 2009 WL

27         1916495, at *4 (C.D. Cal. July 1, 2009):  deceptive denial of medical

28         leave to an employee hospitalized for severe depression.  *Id*. at *8.

Mitchell
Silberberg &
Knupp LLP

30

**OPPOSITION TO MOTION TO REMAND**

1   Plaintiffs' IIED claim is not merely weak, it is baseless and fanciful.  Plaintiffs

2   are clearly upset and believe they were owed more.  But that is not enough.  If the

3   phrases "outrageous conduct" and "no reasonable [person]…should…endure" are to

4   have any meaning, Plaintiffs' Motion to Remand must be denied.

### 4.     Fraudulent Misrepresentation / Omission

6   Plaintiffs assert, in a footnote (Mot. at 17, n. 3), that Plaintiffs also intend to

7   assert their fraud cause of action against Hartley, and "that this too would support

8   remand."  But this is no impediment, both procedurally and on the merits.

### a.     Procedural Defects

10   Plaintiffs' passing reference, in a footnote, is improper and may simply be

11   disregarded.  *See, e.g.*, *United States v. Centeno*, 793 F.3d 378, 388 n.9 (3d Cir.

12   2015) (holding that issues that were not "squarely argued" and were merely "raised

13   in passing (such as, in a footnote)" were waived).

14   Post-removal amendments are irrelevant in any event.  *See, e.g.*, *Broadway*

15   *Grill, Inc.*, 2016 WL 5390415, at *2 ("propriety of the removal is determined solely

16   based on the pleadings filed in the state court").

17   Finally, even if considered (and Plaintiffs could possibly state a fraud claim

18   against Hartley), Plaintiffs' amendment would not defeat jurisdiction.  Under the

19   "snap removal"-doctrine, removal jurisdiction was properly perfected prior to the

20   proposed amendment, and thus cannot be destroyed by asserting a new claim **against**

21   **the same party** that was not served prior to removal.  *See, supra*, § III.B.

### b.     Substantive Defects[18]

23   Plaintiffs' fraud claim is meritless in any event, as Hartley never promised that

24   Plaintiffs would be re-hired, or had any obligation to inform them of their prospects

25   for re-hire.  That is dispositive.  Indeed, the law is clear, "[p]romises too vague to be

26

27   _____

[18] Comments attributed in the FAC (or unfiled SAC) to other SMS personnel cannot form the basis for a fraud claim against Hartley.  But these statements, which similarly warn of uncertainty, further undercut any suggestion that Plaintiffs were misled or could have detrimentally relied on anything in Hartley's emails.

28

**OPPOSITION TO MOTION TO REMAND**

enforced will not support a fraud claim any more than they will one in contract." *Rochlis v. Walt Disney Co.*, 19 Cal. App. 4th 201, 216 (1993) (involving "promises . . . regarding 'appropriate' financial rewards which were not honored"), *disapproved on other grounds by Hall v. FedEx Freight, Inc.*, 2015 WL 574177 (E.D. Cal. Feb. 11, 2015); *see also Everts v. Matteson*, 21 Cal. 2d 437, 451 (1942). In such cases, there is no misleading statement, nor is reasonable detrimental reliance possible.

Similarly, absent a special relationship, there is no duty to disclose or provide information. Employers do not have a special relationship to employees; there is no obligation to inform an employee, in advance, that he or she will be terminated or laid off, or any obligation to inform them of their prospects for re-hire, if any. Indeed, California is an at-will state, and Plaintiffs were "daily" hires pursuant to a CBA that expressly denoted the at-will, no notice nature of their employment.

Plaintiffs have selectively quoted various emails, but even these quotes make it clear that SMS and Hartley made no promises or guarantees of employment. Quite the contrary, SMS, and indeed the world, was experiencing an unprecedented disruption of everyday and business life, a disruption that made future staffing predictions impossible – a point Hartley clearly and repeatedly conveyed.

Plaintiffs' quotations cannot mask this dispositive fact – as this sentiment pervades the emails, even as selectively quoted or paraphrased. (Plaintiffs allege no in-person or telephonic communications with Hartley; just emails.)

- "I don't know what the plan is [going forward]" (FAC, ¶ 25);
- "virtually impossible to know" (FAC, ¶ 35); and
- "difficult to predict when that will be" (FAC, ¶ 33).

Plaintiffs were also specifically told that they would have to rely on unemployment insurance after April 19, 2020. *See* FAC, ¶ 24.

Plaintiffs have not identified any promise that Hartley made or breached; indeed, the communications at issue bespeak uncertainty and doubt (*see*, *e.g.*, FAC, ¶ 35 ("virtually impossible to know how the year will play out")), not the definiteness

**OPPOSITION TO MOTION TO REMAND**

Mitchell
Silberberg &
Knupp LLP

1  required to create a misrepresentation or rely upon it – particularly where Plaintiffs

2  were "daily" employees who, per the CBA, knew they could be let go at any time.

3       Plaintiffs' quotations also contradict any notion that Plaintiffs were ghosted –

4  though, legally-speaking, SMS had no obligation to tell them anything regarding

5  their prospects for return, while they had the right to demand a formal meeting if

6  they wanted more information.

7       **C.**     <u>**Defendant Fox Payroll Systems, Inc.**</u>

8            **1.**     **Snap Removal Doctrine Applies**

9       Defendant Fox Payroll Systems, Inc. has never been served in this matter and

10  thus must be disregarded, for purposes of the diversity jurisdiction/removal analysis,

11  for the same reasons set forth in § III.B, *supra – i.e.*, snap removal doctrine applies.

12            **2.**     **Uncontested That Fox Payroll Is A Sham Defendant**

13       Defendant Fox Payroll Systems, Inc. ("FPSI") cannot be liable in any event.

14  All of Plaintiffs' claim center around the March 2020 pandemic induced layoff and

15  Defendant SMS' decision not to rehire Plaintiffs when work resumed.  (Plaintiffs'

16  fraud, defamation, and IIED claim also focus on that decision and its aftermath.)  But

17  FPSI, as stated in Defendant SMS' removal papers and now supported by the

18  accompanying Declaration of Joseph Ahn, was sold to The Walt Disney Company as

19  part of the well-publicized Disney/Fox transaction, which closed in March 2019 –

20  one year prior to the events in question.  Defendant FPSI cannot be liable for

21  employment related decisions or actions that post-date its sale.  Plaintiffs' Motion to

22  Remand does not argue otherwise, and thus has waived any argument to the contrary.

23  **IV.**   **CONCLUSION**

24       Plaintiffs' Motion to Remand should be denied.

25  DATED: November 14, 2022   Respectfully submitted,

26              MITCHELL SILBERBERG & KNUPP LLP

27              By:/s/Seth E. Pierce

28              Seth E. Pierce,  Attorneys for Defendants Sports
               Media Services, LLC and Gary Hartley

**OPPOSITION TO MOTION TO REMAND**