1  NATASHA CHESLER (S.B. #227540)
   CHESLER LAW P.C.
2  1900 Avenue of the Stars, Suite 900
   Los Angeles, California 90067
3  Telephone: (310) 421-8697
   Facsimile:  (310) 861-8852
4  E-Mail:      natasha@cheslerlaw.com

5  Attorneys for Plaintiffs
   Sammy Corea, Carol De La Sotta,
6  Bill Hutson, Sinbad Kazakian,
   William Alan Pfister, Jr., Rob Ross,
7  Daniel Storm, Ruby Tse, and
   Bernabe Zepeda
8

9              UNITED STATES DISTRICT COURT

10     CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

11

12  SAMMY COREA, CAROL DE LA           CASE NO. 2:22-cv-07312-MCS-JC
    SOTTA, BILL HUTSON, SINBAD
13  KAZAKIAN, WILLIAM ALAN
    PFISTER, JR., ROB ROSS, DANIEL     **PLAINTIFFS' OPPOSITION TO**
14  STORM, RUBY TSE, and BERNABE       **DEFENDANTS' MOTION TO**
    ZEPEDA,                            **DISMISS PURSUANT TO FRCP**
15                                     **12(b)(6)**
                  Plaintiffs,
16                                     Date:         December 19, 2022
17            vs.                      Time:         9:00 a.m.
                                       Courtroom:    7C
18  FOX SPORTS HOLDINGS, LLC, a                      First Street Courthouse
    Delaware Limited Liability Company;             350 W. 1st Street
19  SPORTS MEDIA SERVICES LLC, a                    Los Angeles, CA 90012
    Delaware Limited Liability Company;
20  FOX PAYROLL SERVICES, INC., a
    Corporation; FOX PAYROLL
21  SERVICES LLC, a Delaware Limited
    Liability Company; FOX SPORTS 1,
22  LLC, a Delaware Limited Liability
    Company; FOX SPORTS 2, LLC, a
23  Delaware Limited Liability Company;
    GARY HARTLEY, an individual and
24  DOES 1 through 10, inclusive,

25                Defendants.

26

27

28

# **TABLE OF CONTENTS**

I.   INTRODUCTION ............................................................................................ 1

II.  BACKGROUND FACTS ............................................................................... 1

III. LEGAL STANDARD ................................................................................... 4

IV.  LEGAL ARGUMENT ................................................................................... 5

  A.  Plaintiffs Have Complied With FRCP Rule 10 ....................................... 5

  B.  Plaintiffs Have Properly Pled Age Discrimination .............................. 6

    1.  Disparate impact ............................................................................... 7

    2.  Disparate impact ............................................................................. 10

  C.  Plaintiffs Have Properly Pled Fraud ..................................................... 12

    1.  Plaintiffs' fraud claim is conferred solely by virtue of state law.......... 12

    2.  Plaintiffs' fraud claim does not contradict the CBA ......................... 14

    3.  No interpretation of the CBA is required. ....................................... 15

    4.  Plaintiffs have properly identified fraudulent concealment................. 16

  D.  Plaintiffs Have Properly Pled Defamation............................................ 19

    1.  The statement is defamatory on its face. ...................................... 19

    2.  The statement is defamatory under the totality of the circumstances.......... 20

  E.  Plaintiffs Have Properly Pled IIED....................................................... 23

V.   CONCLUSION ........................................................................................... 25

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>Federal Cases</u>

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ...................................................................4, 5

*Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102 (9th Cir. 2000) ......15

*Bale v. Gen Tel. Co.*, 795 F.2d 775 (9th Cir. 1986) ...................................................14

*Barsell v. Urban Outfitters, Inc.*, 2009 WL 1916495 (C.D. Cal. July 1, 2009) ........24

*Bautista v. Los Angeles County*, 216 F.3d 837 (9th Cir. 2009)....................................5

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) ...................................................4, 7

*Brown v. Lucky Stores*, 246 F.3d 1182 (9th Cir. 2001) .............................................15

*Chen v. Santa Monica Coll. Dist.*, 829 F.App'x 770 (9th Cir. 2020).........................8

*City of Los Angeles Bank of Am. Corp.*, 691 F.App'x 464 (9th Cir. 2017)..............11

*City of Oakland v. Wells Fargo Bank, N.A.*, 2018 WL 3008538 (N.D. Cal. June 15,
2018), *aff'd in part, rev'd in part and remanded sub nom. City of Oakland v. Wells
Fargo & Co.*, 972 F.3d 1112 (9th Cir. 2020), *reh'g en banc granted, opinion
vacated*, 993 F.3d 1077 (9th Cir. 2021), and *on reh'g en banc*, 14 F.4th 1030 (9th
Cir. 2021), and *aff'd in part, rev'd in part and remanded sub nom. City of Oakland
v. Wells Fargo & Co.*, 14 F.4th 1030 (9th Cir. 2021)...........................................11

*Corona v. Quad Graphics Printing Corp.*, 218 F. Supp. 3d 1068 (C.D. Cal. 2016) 24

*Filho v. Gansen,* 2018 WL 5291986 (N.D. Cal. Oct. 19, 2018) ...............................11

*Gibson v. Am. Airlines*, No. C 96-1444-FMS, 1996 WL 329632 (N.D. Cal. June 6,
1996) ......................................................................................................................24

*Hause v. The Salvation Army*, 2007 WL 4219450 (C.D. Cal. Nov. 27, 2007) .........24

*Hrones v. Rideout Memorial Hosp.*, 2022 WL 2093729 (E.D. Cal. June 10, 2022).16

*Johnson v. NBC Universal, Inc.*, 409 F.App'x 529 (3d Cir. 2010)...........................15

*Karpe v. Chao*, 416 F.Supp.3d 1021 (S.D. Cal. 2019)..............................................10

Lee v. City of Los Angeles, 250 F.3d 668 (9th Cir. 2001)............................................5

*Livadas v. Bradshaw*, 512 U.S. 107 (1994)..............................................................16

*Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025 (9th Cir. 2008) ...........5

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).........................................7

*Milkovich v. Loran Journal Co.*, 497 U.S. 1 (1990)....................................................19

*Miller v. Fairchild Indus., Inc.*, 885 F.2d 498 (9th Cir. 1989) ..................................17

*Milne Employees Ass'n v. Sun Carriers*, 960 F.2d 1401 (9th Cir. 1991)..............14, 16

*Niehaus v. Greyhound Lines, Inc.*, 173 F.3d 1207 (9th Cir. 1999) ...........................16

*Olguin v. Inspiration Consol. Copper Co.*, 740 F.2d 1468 (9th Cir. 1984), *overruled*

*in part on other grounds, Allis-Chalmers Corp.*, 471 U.S. at 220.........................14

*Park v. Thompson*, 851 F.3d 910 (9th Cir. 2017)........................................................5

*Rodriguez v. SGLC, Inc.*, 2010 WL 2943128 (E.D. Cal. July 23, 2010) ...............5, 6

*Selby v. Pesico, Inc.*, 784, F.Supp. 750 (N.D. Cal. 1991), *aff'd sub nom. Nesbit v.*

*Pepsico, Inc.*, 994 F.2d 703 (9th Cir. 1993)............................................................9

*Sheppard v. David Evans & Assoc.*, 694 F.3d 1045 (9th Cir. 2012)......................7, 8

*Stout v. Potter*, 276 F.3d 1118 (9th Cir. 2002)..........................................................11

*Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002) ...................................................7

*Umamoto v. Insphere Insurance Solutions, Inc.*, 2013 WL 2084475 (N.D. Cal. May

14, 2013) ...................................................................................................................20

*Walker v. Boeing Corp.*, 218 F.Supp.2d 1177 (9th Cir. 2002)..................................24

*Walton v. UTV of San Francisco, Inc.*, 776 F. Supp. 1399 (N.D. Cal. 1991) ...........14

*Webber v. Nike USA, Inc.*, 2012 WL 4845549 (S.D. Cal. Oct. 9, 2012)...................24

*Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993 (9th Cir. 1987) ......................15

**State Cases**

*Agosta v. Astor*, 120 Cal.App.4th 596 (2004) ...........................................................17

*Balla v. Hall*, 59 Cal.App.5th 652 (2021) .................................................................20

*Foroudi v. Aerospace Corp.*, 57 Cal.App.5th 992 (2020)............................................7

*Gallant v. City of Carson*, 128 Cal.App.4th 705 (2005), *disapproved of on other*

*grounds by Reid v. Google, Inc.*, 50 Cal.4th 512 (2010) .......................................20

*Guz v. Bechtel Nat., Inc.*, 24 Cal.4th 317 (2000)...........................................................9

*Kahn v. Bower*, 232 Cal.App.3d 1599 (1991), reh'g denied and opinion modified
   (Sept. 6, 1991) ...........................................................................................19, 21, 22

*Lazar v. Sup. Ct.*, 12 Cal.4th 631 (1996)....................................................................12

*Light v. Cal. Dept. of Parks & Recreation*, 14 Cal.App.5th 75 (2017)....................26

*Livitsanos v. Sup. Ct.*, 2 Cal.4th 744 (1992)...............................................................24

*Mktg. W., Inc. v. Sanyo Fisher (USA) Corp.*, 6 Cal.App.4th 603, 613 (1992)....17, 18

*Moyer v. Amador Valley Joint Union High School District*, 225 Cal.App.3d 720,
   721-22 (2008)...........................................................................................................23

*Oberkotter v. Woolman*, 187 Cal. 500, 503-04 (1921)...............................................20

*Okun v. Sup. Ct.*, 29 Cal.3d 442 (1981)......................................................................21

*Overhill Farms, Inc. v. Lopez*, 190 Cal.App.4th 1248 (2010)...................................20

*Seelig v. Infinity Broad. Corp.*, 97 Cal.App.4th 798 (2002) .....................................22

*Slaughter v. Friedman*, 32 Cal.3d 149, 154 (1982)....................................................21

*Spinks v. Equity Residential Briarwood Apartments*, 171 Cal.App.4th 1004 (2009)24

*Starzynski v. Capital Pub. Radio, Inc.*, 88 Cal.App.4th 33 (2001) ...........................15

*State Personnel Bd. v. Fair Employment & Housing Comm'n*, 39 Cal.3d 422 (1985)
   .....................................................................................................................................8

*Stoneking v. Briggs*, 254 Cal.App.2d 563 (1967)......................................................21

*Warner Constr. Corp. v. City of Los Angeles* 2 Cal.3d 285 (1970) ..........................17

*ZL Techs., Inc. v. Does 1-17*, 13 Cal.App.5th 603, 624 (2017)................................22

**<u>Federal Statutes</u>**

Fed. R. Civ. P. 12(b)(6) ........................................................................*passim*

Fed. R. Civ. P. 15(a) ........................................................................5

Fed. R. Civ. P. 10(b) ........................................................................5

**<u>State Statutes</u>**

Cal. Civ. Code § 1708 ........................................................................12

Cal. Civ. Code §§ 1709-1711 ........................................................................12

**<u>Other Authorities</u>**

Judicial Council of California Civil Jury Instruction ("CACI") 1602 (July 2022) ...23

Case No. 22:22-cv-07312-MCS-JC

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Defendants Sports Media Services LLC's ("SMS's") and Gary Hartley's ("Hartley's") (collectively "Defendants'") motion to dismiss for failure to state a claim under Federal Rules of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") lacks merit. Defendants apply the wrong legal standard (confusing Rule 12(b)(6) with the more onerous standard at summary judgment), cite legal propositions without authority, rely upon outdated caselaw, and misconstrue the facts of this straightforward case.

Plaintiffs allege SMS sent its workforce home during the beginning of the Covid pandemic – but then called back younger employees in Plaintiffs' positions despite Plaintiffs' strong performance histories and superior qualifications.  To add insult to injury, Defendants concealed the fact of Plaintiffs' termination from them and instead led them to believe that their return to work remained possible and imminent.  In reliance thereon, Plaintiffs did not look for other work.  Plaintiffs only learned of their termination (as opposed to remaining on furlough type leave) from others outside the company nearly one year later.  They further learned Defendants had thrown their belongings in the trash and did not even allow them an opportunity to get samples of their work, crucial to obtaining other employment.  Finally, Plaintiffs learned Hartley also defamed them by telling others that Plaintiffs were "dead weight" and implying that was the reason they were terminated.

Thus, Plaintiffs' FAC alleges causes of action under state law for age discrimination, wrongful termination in violation of public policy, fraud, defamation, and intentional infliction of emotional distress.  As further set forth herein, these claims are plausible based on the facts alleged.  Defendants' motion should be denied.

## II.   BACKGROUND FACTS

Plaintiffs were longtime employees in Defendant's Graphics Department producing the graphic images/animations for sports television broadcasts.  (FAC

¶¶ 8, 16.)  They reported directly to Hartley.  (Id. ¶ 18.)  All Plaintiffs were over 40 years old at the time of termination Corea (59); De La Sotta (63); Hutson (70); Kazakian (62); Pfister (68); Ross (49); Storm (52); Tse (80); and Zepeda (55).  (Id. ¶ 15.)  Collectively they devoted over 190 years working for Defendant.  (Id. ¶ 8.) They had positive employment histories, were beyond capable at their jobs, and were Emmy Award winning artists.  (Id. ¶ 14.)

In March 2020, Defendant sent home its employees due to the growing Covid-19 pandemic.  (FAC ¶ 23.)  Throughout March and April 2020, Defendant told Plaintiffs to essentially "hang on" as Defendant was working on a solution to bring everyone back.  (Id. ¶¶ 24-17.)

By July of 2020, Defendant began calling back employees in the Graphics Department, but not these Plaintiffs.  (See FAC ¶ 30.)  Plaintiffs reached out to Hartley and other managers asking about returning to work.  (See FAC ¶¶ 28-39.) Defendant's managers (including Hartley) continually strung Plaintiffs along leading them to believe that Defendant was planning to bring them back at some point – or at least trying to do so.  (See id.)

For example, in July 2020, Plaintiff Storm contacted Helen Kim (Director of Creative Services) to inquire about his status as he had heard other (younger) employees had been returned to work.  (FAC ¶ 30.)  Ms. Kim told Storm he was "next on the list" to be called back but she did not know when that would be.  (Id.)

Plaintiffs continued to reach out for updates, but the response was continually more of the same, that Defendant would know more soon.  (Id. ¶ 30-32.)  On September 15, 2020, Hartley sent an email to Plaintiffs stating the company's goal was "to return to the world we knew before the pandemic."  (Id. ¶ 33.)  "I can assure you that we are constantly evaluating the near-term future with an eye on getting as many people back to work as possible.  As we become aware of additional/new opportunities, we will reach out to you."  (Id.)

In December 2020, Plaintiff De La Sotta contacted Corey Witte (Manager,

Postproduction) again asking for updates about returning to work.  (Id. ¶ 34.)  Mr. Witte said he had no information, apologized for the lack of communication, but said he would let her know "right away" as soon as he heard of any updates.  (Id.)

Plaintiff De La Sotta again reached out to Hartley in January 2021.  (Id. ¶ 35.) He replied on January 5, 2021, stating that it was "virtually impossible to know how the year will play out," claiming various factors were involved in making personnel decisions and it was just too "tough to make predictions" on when Plaintiffs would be called back.  (Id.)  Plaintiff De La Sotta again contacted Mr. Witte in February 2021 asking for updates, but he said he had no information at that time.  (Id. ¶ 36.)

During this time, Plaintiffs did not look for other work because they relied on the statements by Hartley (and the other managers).  (FAC ¶ 79.)  Indeed, Defendant had gone through other restructurings in the past and these Plaintiffs (long-term employees) were always called back.  (FAC ¶ 39.)  Thus, they had no reason to believe this time would be different or that Defendants would lie to them.

But unbeknownst to Plaintiffs at the time, Hartley and the other managers were indeed lying (and concealing material facts) when they made these statements. (See FAC ¶ 38.)  **The truth was Hartley *had already fired Plaintiffs* and had *no intention of ever calling them back.***  Plaintiffs subsequently discovered that in July 2020, Hartley had a meeting with the Graphics Department in which he stated that no one else would be returning and that the company had finally gotten rid of the "dead weight" – obviously implying that Plaintiffs had been terminated because they were useless, incompetent, lacked the necessarily skills, and/or were incapable of performing their jobs.  (See FAC ¶¶ 38.)

Incredulously, however, Defendant never actually told Plaintiffs they were terminated (as opposed to remaining on furlough).  Instead, Plaintiffs learned of their termination through others outside the company.  (FAC ¶¶ 39-42.)  For example, in July 2021, Plaintiff Corea learned from his physician that he no longer had health insurance.  (FAC ¶ 40.)  In September 2021, Plaintiff De La Sotta

1  contacted the union to inquire about filing a grievance, only to learn that she had
2  been laid off.  (FAC ¶ 41.)

3      Plaintiff De La Sotta then went with Plaintiff Tse to Defendant's offices to get
4  their belongings.  (FAC ¶ 47.)  They saw significantly younger artists sitting at their
5  stations, working on the same machines, and doing the same exact work these
6  Plaintiffs had been doing.  (Id.)  Meanwhile, Defendant simply had thrown the other
7  Plaintiffs' belongings in the trash without contacting them.  (See FAC ¶¶ 44-45.)
8  Moreover, Defendants did not even allow Plaintiffs an opportunity to get samples of
9  their work, which is critical in obtaining other employment.  (FAC ¶ 48.)

10     Plaintiffs lost not only their jobs, but their careers.  (See id. ¶¶ 43, 56-57.)
11  Being without work during the pandemic was emotionally devastating.  Plaintiffs
12  felt like Defendants had tossed them in the trash because of their age.  (Id.)  But it
13  was not just their discriminatory termination that shocked Plaintiffs.  They felt even
14  more betrayed by how outrageously Defendant did so – through defamation, lies,
15  and deceit – after all the years of service Plaintiffs had given them.  (See id.)

16     Thus, Plaintiffs First Amended Complaint ("FAC") alleges the following
17  causes of action: (1) discrimination under the FEHA; (2) wrongful termination in
18  violation of public policy; (3) promissory fraud, intentional misrepresentation,
19  and/or failure to disclose material facts ("fraud"); (4) defamation; and (5) intentional
20  infliction of emotional distress ("IIED").

21  **III.  <u>LEGAL STANDARD</u>**

22     Federal Rule of Civil Procedure 12(b)(6) allows an attack on the pleadings for
23  "failure to state a claim upon which relief can be granted."  "To survive a motion to
24  dismiss, a complaint must contain sufficient factual matter, accepted as true, to
25  'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662,
26  678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A
27  claim has facial plausibility when the plaintiff pleads factual content that allows the
28  court to draw the reasonable inference that the defendant is liable for the misconduct

1 | alleged." *Iqbal*, 556 U.S. at 678.

2 | The determination of whether a complaint satisfies the plausibility standard is

3 | a "context-specific task that requires the reviewing court to draw on its judicial

4 | experience and common sense." *Id.* at 679. Generally, a court must accept the

5 | factual allegations in the pleadings as true and view them in the light most favorable

6 | to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017); *Lee v. City of*

7 | *Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). But a court is "not bound to accept

8 | as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678

9 | (quoting *Twombly*, 550 U.S. at 555).

10 | Further, leave to amend a dismissed complaint should be freely granted unless

11 | it is clear the complaint cannot be saved by any amendment. Fed. R. Civ. P. 15(a);

12 | *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

13 | **IV.** **LEGAL ARGUMENT**

14 | **A. Plaintiffs Have Complied With FRCP Rule 10**

15 | Defendants misleadingly assert that "[i]n multi-plaintiff cases, it is well

16 | established that **each** plaintiff **must** allege facts sufficient to state a cause of action

17 | as to **each** claim. (Def. Mot. at 13.) (Emphasis in original and added.) That,

18 | however, is not the law. The cases Defendants cite all rely upon FRCP Rule 10(b),

19 | which states: "…If doing so would promote clarity, each claim founded on a

20 | separate transaction or occurrence – and each defense other than a denial – must be

21 | stated in a separate count or defense." Thus, pleading in separate counts is only

22 | required when claims are *founded on a separate transaction or occurrence* and,

23 | even then, *only if doing so promotes clarity*.

24 | Here, however, Plaintiffs' claims arise from the same occurrence. Plaintiffs

25 | were all terminated at the same time, by the same decision maker, for the same

26 | alleged reason. Having separate counts for all nine (9) plaintiffs would not promote

27 | clarity but would instead result in an unnecessarily unwieldy complaint.

28 | Defendants' reliance upon *Bautista v. Los Angeles County*, 216 F.3d 837 (9th

1  Cir. 2009) is misplaced.  *See Rodriguez v. SGLC, Inc.*, 2010 WL 2943128, at *3–4

2  (E.D. Cal. July 23, 2010).

> The present action is distinct from *Bautista*. In that case, a large group
> of plaintiffs brought discrimination claims against a mutual employer.
> Plaintiffs sought to plead their discrimination claims collectively,
> without specifying the acts that gave rise to the dispute. Plaintiffs to
> that action had been hired and fired at different times and for different
> reasons, but this information was not provided in the complaint. In that
> case, a more specific pleading was necessary to serve the intent of the
> Federal Rules to 'secure the just, speedy, and inexpensive
> determination of every action and proceeding.' Fed.R.Civ.P. 1.
>
> In the present action, efficiency and fairness would not be served by
> demanding a more specific pleading. A complaint that alleged separate
> violations on behalf of each of the 44 Plaintiffs would be dense,
> overlong, and unwieldy and would not "facilitate a clear presentation."
> Moreover, it would exceed the demands of Rule 8(a) for a "short and
> plain statement of the claim showing that the pleader is entitled to
> relief." Fed.R.Civ.P. 8(a)(2).

12  *Id.*  (Internal citations omitted.)

13         Thus, Plaintiffs submit they have properly alleged their claims in a

14  streamlined pleading since their claims arise out of the same common nucleus of

15  operative facts.  All of them were subject to the same discriminatory practice and

16  decision.  There is simply no need for each Plaintiff to repeat the same operative

17  facts separately.  *See Rodriguez, supra*, at *3-4.  Should the Court, however, believe

18  that pleading the complaint in separate counts per each plaintiff would promote

19  clarity, Plaintiffs respectfully request leave to amend to do so.  *See Bautista*, 216

20  F.3d at 841-42 (district court's "sudden-death" response dismissing second amended

21  complaint for failure to set forth separate counts abuse of discretion).[1]

22         **B.  Plaintiffs Have Properly Pled Age Discrimination**

23         Plaintiffs' claim for age discrimination[2] under the California Fair

24  Employment and Housing Act ("FEHA") is based on two alternative theories –

25  disparate impact and disparate treatment.  Both theories are plausible on their face.

26

27  [1] Defendants do not present any other legal argument regarding dismissal of Plaintiffs' claim for
    wrongful termination in violation of public policy and, thus, it is not otherwise addressed herein.

28  [2] Plaintiffs will withdraw their disability discrimination claim.

### 1. **Disparate impact**

As a threshold matter, Defendants fail to apply the correct legal standard applicable to FEHA claims at the Rule 12(b)(6) stage, conflating the *Twombly/Iqbal* notice pleading requirements applicable for Rule 12(b)(6) with the *McDonnell Douglas* evidentiary burden shifting test applicable for summary judgment.

California resolves employment discrimination claims *at the summary judgment stage* by applying the long-standing burden shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See Foroudi v. Aerospace Corp.*, 57 Cal.App.5th 992, 1007 (2020). Under this three-step framework, first a plaintiff must establish a *prima facie* case. *McDonnell Douglas*, 411 U.S. at 802. At the second step, the burden then shifts to defendant to articulate a legitimate, nondiscriminatory reason for its conduct. *Id*. At the third step, if the defendant provides such reasons, the burden shifts back to the plaintiff to show the employer's proffered reasons were not its actual reasons, but a pretext for discrimination. *Id*.

**The United States Supreme Court has held, however, that the *McDonnell Douglas* framework – including plaintiffs' requirement to establish a prima facie case – does not apply in analyzing a motion to dismiss under Rule 12(b)(6). *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 510-12 (2002).** This is because the *prima facie* case is "an evidentiary standard, not a pleading requirement," that often requires discovery to fully adduce. *Id*. Instead, all that is required of a plaintiff for purposes of a Rule 12(b)(6) motion are "enough facts to state a claim to relief that is plausible on its face." *Sheppard v. David Evans & Assoc.*, 694 F.3d 1045, 1050 (9th Cir. 2012), *citing Twombly*, 550 U.S. at 570 (2007).[3] "The standard provides for liberal treatment of a plaintiff's complaint at

---

[3] Although the general 12(b)(6) standard used in *Swierkiewicz* was overruled by *Twombly*, the analysis cited here remains good law. The *Twombly* Court made clear its holding did not contradict the *Swierkiewicz* rule that a complaint in an employment discrimination lawsuit [need] not contain specific facts establishing a prima facie case of discrimination. 550 U.S. at 556.

1  the pleading stage." *Sheppard*, 694 F.3d at 1050.

2       The Ninth Circuit has consistently followed *Swierkiewicz* in rejecting the

3  *McDonnell Douglas* test when deciding a motion under Rule 12(b)(6).  *See*, *e.g.*,

4  *Sheppard*, 694 F.3d at 1050, n. 2; *Austin v. University of Oregon*, 925 F.3d 1133,

5  1137 (2019); *see also McGary v. City of Portland*, 386 F.3d 1259, 1262 (9th Cir.

6  2004); *Keil v. Coronado*, 52 F.App'x 995, 996 (9th Cir. 2002); *Edwards v. Marin*

7  *Park, Inc.*, 356 F.3d 1058, 1061-62 (9th Cir. 2004).

8       For example, in *Sheppard*, plaintiff sufficiently pled a case for age

9  discrimination where she alleged "that she was over forty and 'received consistently

10  good performance reviews,' but was nevertheless terminated from employment

11  while younger workers in the same position kept their jobs."  694 F.3d at 1050.

12  "This is an 'entirely plausible scenario' of employment discrimination."  *Id*.

13  Similarly, in *Chen v. Santa Monica Coll. Dist*., 829 F.App'x 770, 771 (9th Cir.

14  2020), the Ninth Circuit reversed dismissal of an age discrimination case where

15  plaintiff alleged she was at least forty years old, was performing her job

16  satisfactorily, was discharged, and was replaced by substantially younger employees

17  with less experience.  "These allegations are sufficient to state a plausible

18  discrimination claim."  *Id*.[4]

19       Likewise, here, Plaintiffs allege they were over 40, had positive employment

20  histories, but were nevertheless terminated while younger workers in the same

21  position kept their jobs.  (FAC ¶¶ 14, 62-64.)  Thus, as in *Sheppard* and *Chen*, such

22  facts are sufficient to state a plausible age discrimination claim under Rule 12(b)(6).

23       Moreover, in situations where plaintiff's allegations meet the *prima facie* case

24  under *McDonnell Douglas* – which is also the case here – then the complaint is

25  clearly sufficient to survive Rule 12(b)(6)'s lower standard.  *See Sheppard*, 694 F.3d

26

27  ---
[4] While these are ADEA age discrimination cases, California courts look to federal case law in interpreting analogous provisions of the FEHA as the objectives under the FEHA and the ADA are identical.  *State Personnel Bd. v. Fair Employment & Housing Comm'n*, 39 Cal. 3d 422, 431 (1985).

28

at 1050, n. 2.  The *prima facie* case for age discrimination under *McDonnell Douglas* is "not onerous" and generally requires plaintiff show the actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a prohibited discriminatory criterion.  *See Guz v. Bechtel Nat., Inc.*, 24 Cal.4th 317, 254-55 (2000).  The specific elements of a *prima facie* case may vary depending on the particular facts.  *Id*.  Generally, the plaintiff must provide evidence that (1) he was a member of a protected class, (2) he was qualified for the position he sought or was performing competently in the position he held, (3) he suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive.  *Id*.

Defendants **misrepresent *Guz*** for the proposition that being replaced by a younger worker (without more) is insufficient to satisfy the *prima facie* case requirement of "some other circumstance suggesting discriminatory motive."  (Def. Mot. at 18.)  But that is not what *Guz* held.  To the contrary, in *Guz*, the court moved to the *third step* of *McDonnell Douglas* (pretext) and specifically noted that **the *prima facie* case had been met**.  24 Cal. 4th at 367 ("Here, for several reasons, we conclude the comparative-age evidence cited by Guz, **even if barely adequate to demonstrate a *prima facie* case**, is insufficient for trial in the face of Bechtel's strong contrary showing [at step two of *McDonnell Douglas*] that its reasons were unrelated to age-related bias.")  (Emphasis added.)  The court further specified that evidence an age-protected worker was replaced by a "significantly younger" person may permit an inference of intentional age discrimination.  *Id*. at 366-67; *see also Begnal v. Canfield Assoc., Inc.*, 78 Cal.App.4th 66, 72 (2000) (under *McDonnell Douglas* framework evidence employee is replaced by substantially younger person permits inference termination was based on age for *prima facie* case, which may be rebutted by employer at second step with evidence of non-age-related reasons for the termination).

Thus, Plaintiffs' allegation that they were replaced by younger workers with less skill and qualifications is sufficient to meet the *prima facie* case under *McDonnell Douglas* even if the test applies.[5]  Accordingly, Plaintiffs' have stated a plausible case of age discrimination under the FEHA based on disparate treatment.

## 2. __Disparate impact__

Next Defendants argue that Plaintiffs' disparate impact theory must fail because they do not have "statistical evidence."  (Def. Mot. at 20-21.)  Defendant is again putting the cart before the horse.  Discovery has not yet even begun.  To hold Plaintiffs to such a requirement at this early pleading stage is improper.  *See Karpe v. Chao*, 416 F.Supp.3d 1021, 1029-30 (S.D. Cal. 2019) (internal citations omitted):

> Defendants argue Plaintiff fails to state a claim because he does not provide "statistically significant analysis of alleged disparities across the agency." Plaintiff alleges he cannot provide statistical evidence at this stage of the proceedings without the benefit of discovery.  Indeed, Plaintiff is "not required at the pleading stage to produce statistical evidence proving a disparate impact [because] ... all that is required is fair notice of the claims and the grounds upon which they rest, sufficient to raise a right to relief above the speculative level." *See Garcia v. Country Wide Financial Corp.*, No. 07-1161, 2008 WL 7842104, at *6 (C.D. Cal. Jan. 17, 2008) (citing *Twombly*, 127 S.Ct. at 1964–65; *see also Swierkiewicz v. Sorema*, 534 U.S. 506, 514–15, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (finding there is no heightened pleading standard to state a discrimination claim).

Defendants further claim that Plaintiffs have not identified a specific neutral practice or causation.  This, however, can easily be cured by amendment (although it is referred to in the current operative complaint).  (See FAC ¶ 14.)  Namely, Plaintiffs allege that Defendants used salary as the basis for differentiating between employees when terminating employment and that it adversely impacted older workers as a group.  The California legislature has specifically established this form of proof for age discrimination.  California Gov't Code § 12941 provides:

> The Legislature hereby declares its rejection of the court of appeal opinion in Marks v. Loral Corp. (1997) 57 Cal.App.4th 30, and states

---

[5] Defendants reliance on *Selby v. Pesico, Inc.*, 784, F.Supp. 750, 758-59 (N.D. Cal. 1991), *aff'd sub nom. Nesbit v. Pepsico, Inc.*, 994 F.2d 703 (9th Cir. 1993) has no applicability here as it is a summary judgment case and the issue "was not [that plaintiff was] replaced, but rather his position was [entirely] eliminated."  Here, however, Plaintiffs' positions were not eliminated.

that the opinion does not affect existing law in any way, including, but not limited to, the law pertaining to disparate treatment. The Legislature declares its intent that the use of salary as the basis for differentiating between employees when terminating employment may be found to constitute age discrimination if use of that criterion adversely impacts older workers as a group, and further declares its intent that the disparate impact theory of proof may be used in claims

of age discrimination. The Legislature further reaffirms and declares its intent that the courts interpret the state's statutes prohibiting age discrimination in employment broadly and vigorously, in a manner comparable to prohibitions against sex and race discrimination, and with the goal of not only protecting older workers as individuals, but also of protecting older workers as a group, since they face unique obstacles in the later phases of their careers…

Defendant again relies on summary judgment standard cases that have no bearing here. *See Stout v. Potter*, 276 F.3d 1118, 1121-22 (9th Cir. 2002) (analyzing disparate impact claim at summary judgment); *Filho v. Gansen,* 2018 WL 5291986, at *4 (N.D. Cal. Oct. 19, 2018) (relying upon *City of Los Angeles Bank of Am. Corp.*, 691 F.App'x 464, 465 (9th Cir. 2017), also a summary judgment case).

Further, Defendants' reliance on *City of Oakland v. Wells Fargo Bank, N.A.*, 2018 WL 3008538, at *9 (N.D. Cal. June 15, 2018), *aff'd in part, rev'd in part and remanded sub nom. City of Oakland v. Wells Fargo & Co.*, 972 F.3d 1112 (9th Cir. 2020), *reh'g en banc granted, opinion vacated*, 993 F.3d 1077 (9th Cir. 2021), and *on reh'g en banc*, 14 F.4th 1030 (9th Cir. 2021), and *aff'd in part, rev'd in part and remanded sub nom. City of Oakland v. Wells Fargo & Co.*, 14 F.4th 1030 (9th Cir. 2021), is similarly misplaced.  In that case, proximate causation was called into question because at issue were policies/practices regarding home loans, with many links in the "causal chain" to ultimate foreclosure. *Id*. at *5.  Here, however, proximate causation is easily met – plaintiffs allege the use of salary as a basis for making termination decisions directly and adversely affected older workers.

Thus, Plaintiffs have properly pled facts sufficient to state a claim for age discrimination on a disparate impact theory.  To the extent, however, the Court believes statistical data or further specifics on the policy or causation is still required, Plaintiffs respectfully request leave to amend to do so.

### C. **Plaintiffs Have Properly Pled Fraud**

Next, Defendants move to dismiss Plaintiffs' fraud claim as preempted by Section 301 of the LMRA because it allegedly is founded upon rights created by a collective-bargaining agreement ("CBA") or based on a state law right requiring interpretation of the CBA.  (Def. Mot. at 21.)  Defendant is wrong again.

### 1. **Plaintiffs' fraud claim is conferred *solely* by virtue of state law.**

Plaintiffs' fraud claim is a creature of state law and exists whether they are members of a union or not.  *See Lazar v. Sup. Ct.*, 12 Cal. 4th 631, 638 (Cal. 1996).  Indeed, Plaintiffs' fraud claim is solely based on rights derived from California common law and California statutes (see Cal. Civ. Code §§ 1709-1711) and reflects California's legislative declaration that "[e]very person is bound, without contract, to abstain from injuring the person or property of another, or infringing upon any of his rights."  Cal. Civ. Code § 1708.  The basic elements of a fraud claim are: (1) a misrepresentation, such as a false representation or concealment of fact; (2) knowledge of falsity or concealment; (3) intent to defraud, *i.e.,* induce reliance; (4) justifiable reliance; and (5) resulting damage.  *Lazar*, 12 Cal. 4th at 638.

Here, Plaintiffs' fraud claim alleges Defendants (including Hartley) misrepresented that they were intending to call Plaintiffs back to work (or at least trying to do so) while concealing the truth – namely, that Defendants had no intention of ever calling Plaintiffs back to work and Plaintiffs had, in fact, *already been terminated*.  These statements/omissions induced Plaintiffs to forgo looking for work elsewhere, resulting in damages.  Thus, Plaintiffs' FAC alleges the elements of fraud as follows:

(1) False Misrepresentation and Concealment of Fact:

    a. Defendants (including Hartley) misled Plaintiffs concerning their "return to work." (FAC ¶ 77.)

    b. Hartley repeatedly told Plaintiffs "that the Company was trying to bring them back and never once disclosed that Plaintiffs were being laid off or let go..." (Id.)

    c. "When Plaintiffs reached out for news, Fox kept dangling the carrot and stringing them along by saying they were still figuring things out and would know more soon ('hang in there')."  (FAC ¶ 11.)

    d. In July 2020, Helen Kim (Director of Creative Services) told Plaintiff Storm that he was "next on the list" to be called back.  (FAC ¶ 30.)

    e. On September 15, 2020, Hartley sent an email to Plaintiffs in which he stated that Defendant had called people back with a focus on managing tasks in the "most efficient manner possible," and that the company's goal was "to return to the world we knew before the pandemic, but it's difficult to predict when that will be."  "I can assure you that we are constantly evaluating the near-term future with an eye on getting as many people back to work as possible.  As we become aware of additional/new opportunities, we will reach out to you."  (FAC ¶ 33.)

    f. On December 8, 2020, Corey Witte (Manager, Postproduction) told Plaintiff De La Sotta that he did not have any updates, apologized for the lack of communication, and claimed it was due to HR rules, but he would let her know "right away" once he heard of any updates.  (FAC ¶ 34.)

    g. On January 6, 2021, Plaintiff reached out to Hartley for an update.  He told Plaintiff De La Sotta that it was "virtually impossible to know how the year will play out," explained various factors in making personnel callback decisions, and said he was sorry, but it was "tough to make predictions" as to when they would be called back to work.  (FAC ¶ 35.)

    h. Hartley and the others identified above ***concealed*** the material fact that **Defendant had *already* decided it was *not* calling Plaintiffs back and they had actually been laid off**.  (See FAC ¶¶ 77-79.)

(2) <u>Knowledge of falsity or concealment</u>:  Defendants were not being truthful and knew full well they were not calling back these older workers.  (FAC ¶¶ 12, 78.)  Defendants had no intention of honoring these statements about trying to get Plaintiffs back to work.  (Id.)  Indeed, in July 2020 – ***i.e., prior* to making the foregoing statements (and concealing the fact of termination)** – Hartley had a meeting with the Graphics Department in which he stated that no one else would be returning and that the company had finally gotten rid of the "dead weight" – as justification for Plaintiffs' essential terminations.  (Id. ¶ 38.)  Defendant never told Plaintiffs they had been laid off and instead kept stringing them along until Plaintiffs learned of their termination from others outside the company.  (Id. ¶ 79.)

(3) <u>Intent to defraud/induce reliance</u>:  Defendants "made these representations with the intention to induce Plaintiffs to act in reliance on these representations by foregoing other job opportunities (and likely to avoid a lawsuit) in the hopes that they would so act."  (FAC ¶ 81.)

13

(4) <u>Justifiable reliance</u>:  Plaintiffs had no reason to believe Hartley (and the other managers) would not honor their promises and would not be anything but truthful.  Plaintiffs reasonably and justifiably relied to their detriment by foregoing other work opportunities and continuing to wait to be called back by Defendant. (FAC ¶ 81.)

(5) <u>Resulting Damage</u>:  Plaintiffs suffered economic and noneconomic damages as a result.  (FAC ¶¶ 81-82.)

These allegations make clear Plaintiffs' fraud claim has nothing to do with whether Plaintiffs were classified as "daily hires" or given *advance notice* of termination.  Instead, the claim arises from the fact Hartley (and other supervisors) misled Plaintiffs to believe they would be brought back to work and, more importantly, *concealed the fact of their past termination*.  (See id.)  Such facts give rise to promissory fraud under California law and do not arise out of the CBA.  *See, e.g. Milne Employees Ass'n v. Sun Carriers*, 960 F.2d 1401, 1409 (9th Cir. 1991) ("The duty to disclose does not stem from the [CBA]; instead, it arises out of state law obligations imposed on a party in a fiduciary relationship, a party actively concealing undisclosed matters, or a party to a transaction who is privy to material facts inaccessible to the plaintiff."); *see also Walton v. UTV of San Francisco, Inc.*, 776 F. Supp. 1399, 1402-03 (N.D. Cal. 1991) ("The rights to be free from fraud and misrepresentation are not created nor displaced by any CBA provision but must by nature precede any agreement that can be the subject of the action.  Nor does vindication of these rights require any interpretive analysis of a CBA.")  Because Plaintiffs' fraud claim arises solely from state law, there is no preemption.

## 2.  <u>Plaintiffs' fraud claim does not contradict the CBA</u>.

Nor does Plaintiffs' fraud claim *contradict* the CBA as Defendants erroneously argue.  Defendants have pointed to no provision in the CBA that allows the company to lie about Plaintiffs' employment status or fail to disclose/conceal a termination *after* an employee has been terminated.

The cases upon which Defendants rely all deal with alleged *contractual* rights or promises that were *directly inconsistent to specific contractual rights in the CBA*. *See Olguin v. Inspiration Consol. Copper Co.*, 740 F.2d 1468, 1474 (9th Cir. 1984),

*overruled in part on other grounds, Allis-Chalmers Corp.*, 471 U.S. at 220 (alleging breach of contract for failure to provide progressive discipline in violation of the policy manual, which was governed by the CBA); *Bale v. Gen Tel. Co.*, 795 F.2d 775, 777 (9th Cir. 1986) (plaintiffs alleged they were told they would move from "temporary" employee to "regular" employee after six months, which was specifically governed and contradicted by the CBA); *Brown v. Lucky Stores*, 246 F.3d 1182, 1189 (9th Cir. 2001) (alleging breach of implied contract and covenant of fair dealing, which essentially argued termination "in violation of the CBA"); *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 1001 (9th Cir. 1987) (alleging fraudulent representation that employee could only be fired for cause while the applicable CBA directly provided otherwise); *Johnson v. NBC Universal, Inc.*, 409 F.App'x 529, 531-32 (3d Cir. 2010) (plaintiff's claim "completely preempted because both the CBA and [the inconsistent agreement] would need to be interpreted to determine which is controlling").[6]

Again, here there is no CBA provision that allows Defendants to lie to Plaintiffs about their employment status or termination.  Thus, there is no contradiction to the CBA.

### 3.  No *interpretation* of the CBA is required.

Next, Defendants' argument that Plaintiffs' fraud claim is preempted because it would require *interpretation* of the CBA is equally infirm.  Defendants cite numerous provisions of the CBA relating to *prior notice* of termination, claiming that they must be interpreted.  Again, however, *prior notice* of termination is not the issue here; instead, it is whether Defendants *concealment* of the fact of *past termination* constitutes fraud.  Further, even if such provisions were to come into play, no *interpretation* of these terms is required.

---

[6] Defendants puzzlingly rely upon *Starzynski v. Capital Pub. Radio, Inc.*, 88 Cal.App.4th 33, 38 (2001), which did not even involve a CBA, but instead a summary judgment ruling finding plaintiffs' implied contract claim to be terminated for good cause conflicted with the at will provision in his written employment contract.  Plaintiffs' fraud claim here, however, has nothing to do with their status as at-will employees.

"[T]he Supreme Court has distinguished between claims that require interpretation or construction of a labor agreement and those that require a court simply to 'look at' the agreement." *Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1108 (9th Cir. 2000). "[W]hen the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted ... does not require the claim to be extinguished." *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994). "[T]he term 'interpret' is defined narrowly—it means something more than 'consider,' 'refer to,' or 'apply.'" *Balcorta*, 208 F.3d at 1108.

Here, no one is disputing what the CBA provides. The terms of the CBA are not in dispute. Thus, preemption does not arise because no *interpretation* of the CBA is required. *See, e.g.*, *Niehaus v. Greyhound Lines, Inc.*, 173 F.3d 1207, 1212 (9th Cir. 1999) ("[W]hether Niehaus' reliance on [the union's] [allegedly fraudulent] statements was justified in light of the [CBA] does not call for an interpretation of the agreement because the parties do not dispute the meaning of any of its relevant provisions."); *Hrones v. Rideout Memorial Hosp.*, 2022 WL 2093729 at *4 (E.D. Cal. June 10, 2022) ("Although it may be necessary to consider [plaintiff's] rights under the [CBA] when deciding whether she was justified in relying on [defendant's] alleged promises, that question would require only an 'examination' of those terms, not an 'interpretation.'").

Accordingly, simply because Defendants may point to provisions in the CBA to argue that Plaintiffs' reliance was misplaced, that does not mean that *interpretation* will be required. Indeed, it will not. *See Milne*, 960 F. 2d at 1408-09 (no interpretation of CBA involved where plaintiffs' fraud claim alleged defendants misled them to believe company would remain open and concealed plan to terminate them). In sum, Plaintiffs' fraud claim is not preempted by Section 301.

### 4. **Plaintiffs have properly identified fraudulent concealment.**

Grasping at straws, Defendants argue that Plaintiffs' fraud claim fails because there was no definite promise to continue employment and there was "no special

relationship" giving rise to a duty to disclose.[7]  Defendants' motion boldly asserts – without citation to any authority – that "absent a special relationship, there is no duty to disclose or provide information." (Def. Mot. at 26.)  The law, however, provides otherwise.  "In transactions which do not involve fiduciary or confidential relations, a cause of action for non-disclosure of material facts may arise in at least three instances: (1) the defendant makes representations but does not disclose facts which materially qualify the facts disclosed, or which render his disclosure likely to mislead; (2) the facts are known or accessible only to defendant, and defendant knows they are not known to or reasonably discoverable by the plaintiff; (3) the defendant actively conceals discovery from the plaintiff." *Mktg. W., Inc. v. Sanyo Fisher (USA) Corp.*, 6 Cal.App.4th 603, 613 (1992), *citing Warner Constr. Corp. v. City of Los Angeles* 2 Cal.3d 285, 294 (1970).

For example, in *Marketing West*, promissory fraud was found where plaintiffs alleged they were induced to resign existing employment and sign an at-will agreement (employer claimed it was a "mere formality"), but the employer concealed plans to terminate the employee.  6 Cal.App.4th at 612-14.  "[T]he rule has long been settled in this state that although one may be under no duty to speak as to a matter, 'if he undertakes to do so, either voluntarily or in response to inquiries, he is bound not only to state truly what he tells but also not to suppress or conceal any facts within his knowledge which materially qualify those stated.  If he speaks at all he must make a full and fair disclosure." *Id.*

Nor does it matter that Plaintiffs were at-will with no promise of continued employment.  *See Agosta v. Astor*, 120 Cal.App.4th 596, 606 (2004) (despite at-will employment contract, plaintiff alleged defendant misrepresented length of employment and compensation terms and never intended to live up to agreement; "an 'at-will' employer does not have carte blanche to lie to an employee"); *see also*

---

[7] Defendants' motion does not argue any of the other elements of fraud have not been met.  Thus, Plaintiffs do not address them herein.

*Miller v. Fairchild Indus., Inc.*, 885 F.2d 498, 509 (9th Cir. 1989) (fraud claim based on employer allegedly inducing employees to settle discrimination charges while concealing fact they were likely to be laid off in near future for economic reasons).

Here, Hartley's September 15, 2020, email sent to Plaintiffs stated:

> In response to your emails and calls regarding the situation we currently find ourselves in, the following is a snapshot of where we are now as a centralized resource to FOX Sports. This is to give you a general sense of status not only as a company - but also how Creative Services falls within that structure.

> Broadly speaking the company and FOX Sports in particular have undergone a dramatic restructuring of workflows since we last saw one another on March 12th. The manner in which we produce and support live and studio based programming has been restructured based on a streamlined support system, an emphasis on a smaller production footprint, safety protocols established by the CDC and our own EHS department, a reduction in overall demand of Creative Services, and re-evaluation of business needs across the company.

> We have called people back into service with a focus on managing the tasks assigned to us in the most efficient manner possible as we do our best to ensure the health and safety of everyone in the building. While our goal is to return to the world we knew before the pandemic, it's difficult to predict when that will be

> I can assure you that we are constantly evaluating the near-term future with an eye on getting as many people back to work as possible. As we become aware of additional new opportunities we will reach out to you.

> I'm sorry this isn't the news you want to hear but it's as honest as I can be as of today. Please feel free to contact your HR business partner if you have any other questions.

> You all are constantly in my thoughts and I sincerely hope to see you in the near future.  (Pierce Decl. in Support of Def. Mot. to Dismiss, Ex. C.)

The truth, however, was that as of this time Hartley had *already made the decision to terminate Plaintiffs* and knew *he had no intention of ever calling Plaintiffs back to work.*  Indeed, months prior – in July 2020, Hartley told those that had returned to work that no one else was returning and they had finally gotten rid of the "dead weight."  (FAC ¶ 38.)  Once Hartley undertook to speak to Plaintiffs on the matter of their employment status, he was bound "not only to state truly what he tells but also not to suppress or conceal any facts within his knowledge which

1   materially qualify those stated." *See Mktg. West*, 6 Cal.App.4th at 612-14.

2   Obviously, the fact Plaintiffs had *already been terminated (and Defendants had no*

3   *intention of ever calling Plaintiffs back to work)* would materially qualify Hartley's

4   representation that the company's goal was to return them to work, but it was

5   "difficult to predict" when that would be.  Indeed, it makes Hartley's statement a

6   bold-faced lie.  This alone is sufficient for promissory fraud, although Plaintiffs

7   identify several other statements that similarly concealed the fact that Plaintiffs had

8   already been terminated and were never going to be returned to work.  See § IV.C.1

9   *supra*.  Thus, Plaintiffs allege a plausible claim for fraud under California law.

10              **D.  <u>Plaintiffs Have Properly Pled Defamation</u>**

11          With respect to Plaintiffs' defamation claim, Defendants' sole argument is

12   that the phrase "dead weight" is not actionable because it is a statement of opinion.

13   (Def. Mot. at 28-29.) Defendant again ignores the proper legal standard – the

14   context of the statement is critical in determining its meaning and effect.

15          The test of whether a statement is fact or opinion is "whether a reasonable

16   fact finder could conclude that the statement implied a provably false assertion of

17   fact" *under a totality of the circumstances*.  *Kahn v. Bower*, 232 Cal.App.3d 1599,

18   1600, 1607 (1991), reh'g denied and opinion modified (Sept. 6, 1991); *citing*

19   *Milkovich v. Loran Journal Co.*, 497 U.S. 1, 19 (1990).

20              **1.  <u>The statement is defamatory on its face.</u>**

21          As a threshold matter, Hartley's statement is defamatory on its face.  For

22   example, the Urban Dictionary provides the following as a definition for "dead

23   weight": "A person that is usually useless in any sort of participation…"

24   (*https://www.urbandictionary.com/define.php?term=Dead%20Weight*). The similar

25   phrase "deadwood" is defined by Merriam-Webster to include "useless personnel."

26   (*https://www.merriam-webster.com/dictionary/deadwood*); *see also*

27   *https://www.hilotutor.com/archives_deadwood.html* ("Deadwood is an alternative to

28   the term dead wight.  Whether something is deadwood or dead weight, it's useless,

it's a hindrance, it's dragging everything down.")

Moreover, Hartley did not merely state that Plaintiffs were "dead weight," but provided the statement as justification for the reason Plaintiffs were terminated.  In other words – Hartley implied Plaintiffs were terminated because they were dead weight, which is a provably false assertion.  An "employer's motivation for terminating employment" is "clearly a 'provable fact,'" as opposed to nonactionable opinion, because it is "a fact plaintiffs attempt to prove routinely in wrongful termination cases."  *Overhill Farms, Inc. v. Lopez*, 190 Cal. App. 4th 1248, 124 (2010).  Cases have found derogatory statements regarding performance, particularly in connection with stated grounds for termination, qualify as actionable defamation rather than protected opinion.  *See, e.g.*, *Oberkotter v. Woolman*, 187 Cal. 500, 503-04 (1921) (accusation teacher was about to be terminated because the city superintendent considered him a "weak spot in the public school system of instruction"); *Umamoto v. Insphere Insurance Solutions, Inc.,* 2013 WL 2084475, *4–5 (N.D. Cal. May 14, 2013) (employer falsely stating plaintiff was terminated "due to performance"); *Gallant v. City of Carson*, 128 Cal.App.4th 705, 708 (2005), *disapproved of on other grounds by Reid v. Google, Inc.*, 50 Cal.4th 512 (2010) (employer said plaintiff "was terminated" because she was "incompetent").

## 2. The statement is defamatory under the totality of the circumstances.

Hartley's statement is not only defamatory on its face, but especially so under the totality of the circumstances given Hartley's status (as Plaintiffs' supervisor) and the setting of the statement (a corporate meeting).

> Though mere opinions are generally not actionable, a statement that implies a false assertion of fact is actionable.  It is not the literal truth or falsity of each word or detail used in a statement which determines whether or not it is defamatory; rather, **the determinative question is whether the 'gist or sting' of the statement is true or false, benign or defamatory in substance**.  The pertinent question is whether a reasonable act finder could conclude that the statements as a whole, or nay of its parts, directly made or sufficiently implied a false assertion of defamatory fact that tended to injure plaintiff's reputation.

*Balla v. Hall*, 59 Cal.App.5th 652, 677-78 (2021) (internal quotations and citations omitted) (emphasis added).  In making this determination, courts look at the **"totality of the circumstances,"** including the content of the communication, the context in which it was made, the unique position of the publisher, and the knowledge and understanding of the audience to whom the publication is directed. *Kahn*, 232 Cal.App.3d at 1608.  One way a statement will be deemed sufficiently factual is if it "implies the allegations of undisclosed defamatory facts as the basis for the opinion."  *Okun v. Sup. Ct.*, 29 Cal.3d 442, 452 (1981).  This is true even if a statement is couched or stated in language suggesting it is a mere opinion.  *See*, *e.g.*, *Kahn*, 232 Cal.App.3d at 1609 ("I feel her level of incompetence…makes it impossible for us to work with her" is expression of fact because it was "reasonably susceptible of a provable false meaning.")

A defendant may also be liable for defamatory statements that are insinuated rather than stated explicitly.  *Stoneking v. Briggs*, 254 Cal.App.2d 563, 572-73 (1967) (statement defamatory because when examined *in totality of circumstances* the insinuation was plaintiff was removed from his position because he failed to act in the best interest of the membership and was incompetent).

Moreover, a statement will also be deemed sufficiently factual (rather than opinion) when, as here, the publication is made by persons with specialized expertise and knowledge (like Hartley as Plaintiffs' supervisor and a termination decisionmaker) whose accusations "carry the ring of authenticity and reasonably might be understood as being based on fact."  *See Slaughter v. Friedman*, 32 Cal.3d 149, 154 (1982).

Generally, the determination of whether a statement is one of fact or opinion is a matter of law for the court.  *Kahn*, 232 Cal.App.3d at 1608.  **But when a statement is "ambiguous" and "cannot be characterized as factual or nonfactual as a matter of law," then it is for the jury to determine whether an ordinary person would have understood the statement as asserting fact.**  *Id*.

For example, in *Kahn*, 232 Cal.App.3d at 1604-05, a social worker brought a defamation claim against the director of a facility the company worked with based on a letter sent to plaintiff's supervisor.  The letter stated, among other things, that there were children they felt were "seriously being interfered with by the incompetence of [plaintiff]." *Id*. The letter also included the following: "This goes so far beyond incompetence that I almost wonder about some kind of hostility towards the child or toward handicapped children in general." *Id*.  The letter included various other comments about plaintiff such as the writer's belief that plaintiff did not work at all or well with the schools. *Id*.

The trial court granted judgment on the pleadings on the basis that the statements were opinion and, thus, not actionable, but the California Court of Appeal reversed. *Id*. at 1606.  The Court of Appeal found that because of the writer's professional status and because the letter was sent to plaintiff's director, the letter was susceptible to the interpretation that plaintiff's incompetence was an "actual" condition and a matter of fact. *Id*. at 1610.

Here, viewing the evidence in Plaintiffs' favor, a jury could determine based on the totality of the circumstances that Hartley was implying that Plaintiffs were removed from their positions (*i.e.*, terminated) because they were useless, incompetent, and/or lacked the required skills for the job.  He made the "dead weight" comment in a serious company meeting as Plaintiffs' supervisor and someone who participated in their termination decision.  (See FAC ¶¶ 18, 38.) Thus, Hartley's statement carries a "ring of authenticity" and, thus, could reasonably be understood as implying a factual statement. *See Slaughter*, 32 Cal.3d at 154; *Kahn*, 232 Cal.App.3d at 1607; *ZL Techs., Inc. v. Does 1-17*, 13 Cal.App.5th 603, 624 (2017).

Defendants' authority is readily distinguishable given the context of the statements.  For example, in *Seelig v. Infinity Broad. Corp.*, 97 Cal.App.4th 798, 810 (2002), the California Court of Appeal found a radio host did not defame

plaintiff when he called her a "local loser" and a "chicken butt" because it was stated in a "nonserious manner" and such statements were "too vague to be capable of being proven true or false" in that context.  Similarly, in *Moyer v. Amador Valley Joint Union High School District*, 225 Cal.App.3d 720, 721-22 (2008), a student ran a story in the school newspaper by the headline "Students terrorize [teacher]" and included comments such as "[teacher] is a babbler, and babblers are annoying to me…," and "he pissed me off, he is the worst teacher at [the school.]"  The California Court of Appeal found there was no factual assertion capable of being proven true or false.  *Id*. at 725.  Given the full text and context, the student's statement clearly expressed subjective judgment and was "simply an expression of anger or disgust."  *Id*.

Here, however, given the context of the statement and the totality of the circumstances, Plaintiffs have stated a plausible claim for defamation.

### E. Plaintiffs Have Properly Pled IIED

Finally, Defendants argue that Plaintiffs' claim for intentional infliction of emotional distress ("IIED") must be dismissed because Plaintiffs fail to allege outrageous conduct and IIED is preempted by workers' compensation exclusivity as a matter of law.  Both arguments fail.

First, under California law, outrageous conduct is "conduct so extreme that it goes beyond all possible bounds of decency. Conduct is outrageous if a reasonable person would regard the conduct as intolerable in a civilized community. Outrageous conduct does not include trivialities such as indignities, annoyances, hurt feelings, or bad manners that a reasonable person is expected to endure." Judicial Council of California Civil Jury Instruction ("CACI") 1602 (July 2022). Factors considered include: (a) whether defendant abused a position of authority or a relationship that gave him/her real or apparent power to affect plaintiff's interests; (b) whether defendant knew plaintiff was particularly vulnerable to emotional distress; and (c) whether defendant knew that his/her conduct would likely result in

harm due to mental distress.  *Id.*

Defendants argue that discriminatory termination *alone* is insufficient to state an IIED claim (Def. Mot. at 29-30), but Defendants fail to recognize that Plaintiffs' IIED claim is based on much more than mere discriminatory termination.  Plaintiffs allege Hartley not only terminated them because of their age, but made disparaging comments, fraudulently concealed the fact of their termination (leading them to believe they would be called back – and causing them act in reliance thereon – even though he knew he had fired them), threw their belongings in the trash, and did not even allow them an opportunity to get samples of their work, which is critical in obtaining other employment.  (FAC ¶¶ 11-12, 38-48, 77-81.)  Thus, Defendants abused a position of authority that gave them the power to affect plaintiffs' interests. Defendants knew Plaintiffs were vulnerable to emotional distress – and that their conduct would likely result in emotional distress – because they knew Plaintiffs were older workers during a global pandemic.  Whether such conduct rises to the level of "outrageous" under the law is a question of fact for the jury.  *See Spinks v. Equity Residential Briarwood Apartments*, 171 Cal.App.4th 1004, 1045 (2009) ("In the usual case, outrageousness is a question of fact.")[8]

Second, Defendants argument that Plaintiffs' IIED claim is preempted by workers' compensation relies upon outdated case law, namely *Walker v. Boeing*

---

[8] Although applying a lower standard of possibly stating a claim for purposes of remand, the following cases are instructive for the proposition that under California law discriminatory termination coupled with other bad acts may qualify to state an IIED claim.  *See Onelum*, 948 F.Supp.2d at 1053 (plaintiff alleged supervisor repeatedly threatened termination/transfer and disparaged plaintiff's accent); *Hause v. The Salvation Army*, 2007 WL 4219450, at *10 (C.D. Cal. Nov. 27, 2007) (plaintiff alleged he was lured back to work on false pretenses, mistreated at work, and fired); *Corona v. Quad Graphics Printing Corp.*, 218 F.Supp.3d 1068, 1074–75 (C.D. Cal. 2016) (plaintiff alleged supervisor provided false reasons to terminate him based on age and disability and subjected him to intimidation that jeopardized his job, health, and career); *Webber v. Nike USA, Inc.*, 2012 WL 4845549, at *4 (S.D. Cal. Oct. 9, 2012) (plaintiff alleged supervisor fabricated false performance issues, made false statements about his performance, inflated sales goals, and falsely promised plaintiff time to satisfy supervisor's demands); *Barsell v. Urban Outfitters, Inc.*, 2009 WL 1916495, at *4 (C.D. Cal. July 1, 2009) (plaintiff alleged supervisor presented her with false report (and issued a written warning) regarding tardiness and informed her husband she was terminated while she was in the hospital for depression); *see also Gibson v. Am. Airlines*, 1996 WL 329632, at *4 (N.D. Cal. June 6, 1996) (termination coupled with deception); *Dagley v. Target Corp., Inc.*, 2009 WL 910558, *3 (C.D. Cal. March 31, 2009) (accord).

1    *Corp.*, 218 F.Supp.2d 1177, 1189 (9th Cir. 2002), which relied upon *Livitsanos v.*

2    *Sup. Ct.*, 2 Cal.4th 744, 747-56 (1992).  Following *Livitsanos*, however, the

3    California Supreme Court clarified in *Light v. Cal. Dept. of Parks & Recreation*, 14

4    Cal.App.5th 75, 96 (2017) that IIED claims arising out of unlawful discrimination

5    under the FEHA are **not** barred by workers' compensation exclusivity.  ("[U]nlawful

6    discrimination and retaliation in violation of FEHA falls outside the compensation

7    bargain and therefore claims of [IIED] based on such discrimination and retaliation

8    are not subject to workers' compensation exclusivity.")  Thus, Plaintiffs' IIED claim

9    based on their termination in violation of the FEHA is not barred.  Defendants'

10   repeated failure to cite applicable contrary and controlling authority should be

11   admonished.

12   **V.    CONCLUSION**

13          Thus, for the reasons set forth herein, Defendants' motion to dismiss should

14   be denied or, at a minimum, Plaintiffs respectfully request that they be afforded

15   leave to amend.

16

17   DATED: November 28, 2022              Respectfully submitted,

18                                          CHESLER LAW P.C.

19

20                                          By   /s/ Natasha Chesler

21                                               Natasha Chesler
                                                 Attorneys for Plaintiffs
22

23

24

25

26

27

28