MITCHELL SILBERBERG & KNUPP LLP
SETH E. PIERCE (SBN 186576), sep@msk.com
BRIAN M. RAGEN (SBN 275045), byr@msk.com
WILL S. LISA (SBN 310541), wsl@msk.com
2049 Century Park East, 18th Floor
Los Angeles, CA 90067-3120
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

Attorneys for Defendants Sports Media Services LLC and Gary Hartley

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMMY COREA, CAROL DE LA SOTTA, BILL HUTSON, SINBAD KAZAKIAN, WILLIAM ALAN PFISTER, JR., ROB ROSS, DANIEL STORM, RUBY TSE, and BERNABE ZEPEDA,<br><br>Plaintiffs,<br><br>v.<br><br>FOX SPORTS HOLDINGS, LLC, a Delaware Limited Liability Company; SPORTS MEDIA SERVICES LLC, a Delaware Limited Liability Company; FOX PAYROLL SERVICES, INC., a Corporation; FOX PAYROLL SERVICES LLC, a Delaware Limited Liability Company; FOX SPORTS 1, LLC, a Delaware Limited Liability Company; FOX SPORTS 2, LLC, a Delaware Limited Liability Company; GARY HARTLEY, an individual and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO. . 2:22-cv-07312-MSC (JCx)<br><br>(Removed from Los Angeles Superior Court Case No. 22STCV26380)<br><br>**DEFENDANTS SPORTS MEDIA SERVICES LLC AND GARY HARTLEY'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>Time:    9:00 a.m.<br>Date:    December 19, 2022<br>Place:   Courtroom 7C |

**TABLE OF CONTENTS**

**Page**

I. PLAINTIFFS' FAC SHOULD BE DISMISSED ........................................... 6
   A. Plaintiffs' FAC Is An Improper Composite Pleading .......................... 6
   B. Plaintiffs Have Not Adequately Pled Age Discrimination .................. 7
      1. Disparate Treatment ................................................................ 7
      2. Disparate Impact ..................................................................... 8
   C. Plaintiffs' Promissory Fraud Claim Is Preempted ............................... 8
      1. Artful Pleading Doctrine ......................................................... 8
      2. Claims Contradict CBA Daily Hire Provisions ...................... 9
      3. Interpretation of the CBA Required ....................................... 9
   D. Plaintiffs' Promissory Fraud Claim Is Deficient ............................... 10
   E. Plaintiffs Have Not Adequately Pled Defamation ............................ 11
      1. Hartley's Alleged "Dead Weight" Comment Is Not Defamatory On Its Face ............................................................ 11
      2. Hartley's Alleged "Dead Weight" Comment Is Not A Provably False Statement Regarding The Motivation for Plaintiffs' Termination ............................................................. 12
      3. Hartley's Alleged "Dead Weight" Comment Is Not Defamatory Under the "Totality of the Circumstances" .......... 13
   F. Plaintiffs Have Not Adequately Pled IIED ....................................... 14
      1. Termination Is Insufficient to Constitute IIED ...................... 14
      2. Plaintiffs' IIED Claims Are Barred by the Workers' Compensation Exclusivity Doctrine ........................................ 14

II. CONCLUSION ............................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Alaska Airlines Inc. v. Schurke*,
   898 F.3d 904 (9th Cir. 2018) ........................................................................... 10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ......................................................................................... 7

*Bautista v. Los Angeles County*,
   216 F.3d 837 (9th Cir. 2000) ........................................................................... 6

*Begnal v. Canfield Assoc., Inc.*,
   78 Cal.App.4th 66 (2000) ................................................................................ 8

*Boese v. Paramount Pictures Corp.*,
   952 F. Supp. 550 (N.D. Ill. 1996) .................................................................. 12

*Chen v. Santa Monica Coll. Dist.*,
   829 F.App'x 770 (9th Cir. 2020) ..................................................................... 8

*Gallant v. City of Carson*,
   128 Cal. App. 4th 705 (Cal. Ct. App. 2005) .................................................. 12

*Guz v. Bechtel Nat'l Inc.*,
   24 Cal.4th 317 (2000) ...................................................................................... 7

*Hrones v. Rideout Memorial Hosp.*,
   2022 WL 2093729 (E.D. Cal. June 10, 2022) ............................................... 10

*Int'l Bhd. Of Elc. Workers v. Hechler*,
   481 U.S. 851 (1987) ........................................................................................ 8

*Janken v. GM Hughes Elecs.*,
   46 Cal. App. 4th 55 (1996) ............................................................................ 14

*Kahn v. Bower*,
   232 Cal. App. 3d 1599 (Ct. App. 1991) ................................................... 12, 13

*Light v. Cal. Dept. of Parks & Recreation*,
   14 Cal.App.5th 75, 96 (2017) ........................................................................ 15

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Milne Employees Ass'n v. Sun Carriers*,
   960 F.2d 1401 (9th Cir. 1991) .................................................................. 10

*Niehaus v. Greyhound Lines, Inc.*,
   173 F.3d 1207 (9th Cir. 1999) .................................................................. 10

*Oberkotter v. Woolman*,
   187 Cal. 500 (Cal. 1921) ........................................................................... 12

*Okun v. Sup. Ct.*,
   29 Cal.3d 442 (1981) ................................................................................. 13

*Overhill Farms, Inc. v. Lopez*,
   190 Cal. App. 4th 1248 (2010) ................................................................. 12

*Roche v. Audio Visual Servs. Grp., Inc.*,
   2010 WL 3021575 (D. Nev. July 28, 2010) ....................................... 14, 15

*Rodriguez v. SGLC, Inc.*,
   2010 WL 2943128 (E.D. Cal. July 23, 2010) ............................................. 6

*Shepard v. Courtoise*,
   115 F. Supp. 2d 1142 (E.D. Mo. 2000) .................................................... 11

*Sheppard v. David Evans & Assoc.*,
   694 F.3d 1045 (9th Cir. 2012) .................................................................... 8

*Slaughter v. Friedman*,
   32 Cal. 3d 149 (Cal. 1982) ................................................................. 13, 14

*Stoneking v. Briggs*,
   254 Cal. App. 2d 563 (1967) .................................................................... 13

*Umamoto v. Insphere Insurance Solutions, Inc.*,
   No. 13–CV–0475–LHK, 2013 WL 2084475 (N.D. Cal. May 14,
   2013) ......................................................................................................... 12

*Unterberger v. Red Bull N. America, Inc.*,
   162 Cal.App.4th 414 (2008) ..................................................................... 14

**STATUTES**

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

LMRA § 301 .................................................................................................................. 8

**OTHER AUTHORITIES**

Fed. R. Civ. Proc.
    Rule 8 .................................................................................................................. 6
    Rule 9 .................................................................................................................. 6
    Rule 10 ................................................................................................................ 6
    Rule 12 ................................................................................................................ 6

## I. PLAINTIFFS' FAC SHOULD BE DISMISSED

### A. Plaintiffs' FAC Is An Improper Composite Pleading

While Plaintiffs concede their disability claim (ECF 25 ("Opp.") at 6, fn. 2), they argue that delineating their individual claims further would not promote "clarity," but confusion. *Id*. at 5. The exact opposite is true.

Rules 8, 9 and 10 exist to ensure that defendants have fair notice of the claims and, pursuant to Rule 12, an opportunity to contest them at the outset. Hybrid allegations, whether unintentionally or by design, confuse and overstate the claims of each individual plaintiff. *See* ECF 17 ("Mot.") at 15 (citing and discussing *Bautista v. Los Angeles County*, 216 F.3d 837 (9th Cir. 2000) at length).

"Defendants do not oppose reasonable groupings," Mot. at 18, fn 8, but Plaintiffs' claims differ in material ways, as Plaintiffs' FAC and Opposition highlight. Take Plaintiffs' fraud claim. Plaintiffs' FAC and Opposition allege in sweeping fashion that "Plaintiffs reached out to Hartley and other managers asking about returning to work." *See, e.g.*, FAC, ¶¶ 28, 30, 32, 34, 36, 38, 49; Opp. at 2. Such contact, including exactly what was said, is critical to the fraud claim – but in actuality, numerous Plaintiffs allege no direct contact, while others allege conversations that, on their face, preclude a finding of detrimental reliance. *See, e.g.*, Opp. at 2 ("'next on the list'…but did not know when that would be"), *id*. at 3 ("virtually impossible to know how the year will play out"). Plaintiffs' age discrimination claims are similarly individualized. *See* Mot. at 19.

While Defendants do not believe any of Plaintiffs' allegations are sufficient, Defendants and this Court should not have to tease out the allegations specific to each Plaintiff's age discrimination or fraud claim to test them.

Plaintiffs' citation to *Rodriguez v. SGLC, Inc.*, 2010 WL 2943128 (E.D. Cal. July 23, 2010) is unavailing. If the factual predicate is identical (as in *Rodriguez*), separating the allegations would be pointless and is not required. But where the allegations differ per plaintiff – as they clearly do here – *Bautista* is dispositive.

### B. Plaintiffs Have Not Adequately Pled Age Discrimination

#### 1. Disparate Treatment

Plaintiffs argue, at length, and in inflammatory fashion, that Defendants' Motion applies the wrong legal standard – but that is a red herring. Defendants' Motion cites the same cases and applicable standard. *See* Mot. at 13, fn 5 (citing the seminal cases of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).

*Iqbal* holds that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the **reasonable inference** that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (emphasis added).

*Guz v. Bechtel Nat'l Inc.*, 24 Cal.4th 317 (2000), stands for the proposition that the fact that "certain workers preferred over [plaintiff in a reduction in force] were substantially younger[, without more] is insufficient to permit a **rational inference** that age played any significant role in his termination." *See* Mot. at 18; *Guz*, 24 Cal.4th at 354-355 (emphasis added).

*Guz* is directly on point. If the mere fact that Defendants called back younger employees instead of Plaintiffs – which is **all** that Plaintiffs Corea, Hutson, Pfister, Ross, Storm and Tse allege (*see* Mot. at 16) – is not enough to permit a "rational inference" of discrimination, then it is also not enough to permit a "reasonable inference" of discrimination.[1]

The fact that *Guz* is a summary judgment case is irrelevant; its holding helps frame the "plausibility" showing Plaintiffs are required, but failed, to make here. Defendants have never contended that the *McDonnell-Douglas* burden-shifting framework applies at the motion to dismiss stage (Opp. at 7-10), but that hardly makes *Guz* inapposite.

---

[1] Plaintiffs De La Sotta, Kazakian, and Zepeda's limited additional allegations do not change the outcome, for none supports a reasonable inference of discrimination. *See* Mot. at 19.

1  Plaintiffs' age discrimination claim is not plausible. This simple logic, that if
2  Plaintiffs' allegations do not support a "rational inference" of discrimination, then
3  they also do not support a "reasonable inference" of discrimination, should be
4  indisputable and is hardly a misrepresentation of the law.[2]

### 2. Disparate Impact

It is axiomatic that Plaintiffs' **single-sentence reference** to disparate impact fails to plead that theory of liability. *See* Mot. at 20-21. Plaintiffs must allege a neutral practice and sufficient facts **or** statistics establishing the requisite nexus. *Id*. Plaintiffs' FAC does nothing to meet the standard, as Plaintiffs appear to concede. Opp. at 10 ("can easily be cured by amendment"); *id*. at 11 ("Plaintiffs respectfully request leave to amend").

### C.  Plaintiffs' Promissory Fraud Claim Is Preempted

### 1. Artful Pleading Doctrine

Plaintiffs argue that their fraud claim "is a creature of state law" and that it is "based on rights derived from California common law and California statutes . . ." Opp. at 12. But under the doctrine of "artful pleading," it is immaterial that Plaintiffs have framed the claim as a state law cause of action because "a plaintiff may not evade the pre-emptive force of § 301 of the LMRA by casting the suit as a state-law claim." *Int'l Bhd. Of Elc. Workers v. Hechler*, 481 U.S. 851, 857 (1987).

Plaintiffs' "fraud" claim is simple – they were effectively "Staff" (not "Daily Employees") and should have been told sooner or more explicitly that their positions had been permanently eliminated. Mot. at 22-23; *see also* Opp. at 14 ("concealed the fact of their past termination"). But the only employees entitled to such notice were "Staff" union members. Mot. at 22-23. While asserted as fraud, Plaintiffs are

---

[2] Plaintiffs' citation to *Begnal v. Canfield Assoc., Inc.*, 78 Cal.App.4th 66 (2000), *Chen v. Santa Monica Coll. Dist.*, 829 F.App'x 770 (9th Cir. 2020) and *Sheppard v. David Evans & Assoc.*, 694 F.3d 1045 (9th Cir. 2012) are misplaced because here, Plaintiffs allege termination (as part of a reduction in force) not **replacement** by a younger employee (*Begnal* and *Chen*) or termination of a **single** employee (*Sheppard*).

8

really alleging that they were "in effect" Staff union members and denied notice rights they were entitled to under the CBA. *Id.* That is a clear violation of the artful pleading doctrine. Plaintiffs claim otherwise now (Opp. at 14), but the FAC speaks for itself. Plaintiffs' claim is preempted.

### 2. Claims Contradict CBA Daily Hire Provisions

Plaintiffs claim the CBA does not provide a license to lie. Opp. at 14. That is undisputed, but misses the point. As Plaintiffs appear to concede, if the state law claim is "directly inconsistent" with "specific contractual rights in the CBA" then it fails. *Id.* The CBA expressly provides that Daily Employees are just that – **daily** employees. SMS was free to schedule them or not, and Plaintiffs knew they were not on the schedule or being paid. The CBA, moreover, provided a specific mechanism that Plaintiffs could invoke if they were uncertain as to whether they were permanently terminated. *See* Mot. at 25 (discussing "permanently ceasing to employ" provisions). Imposing the requirement Plaintiffs seek – *i.e.*, active notification of status – would directly contradict the CBA's Daily Employee provisions, in violation of federal law.[3]

### 3. Interpretation of the CBA Required

Plaintiffs argue, at great length, that the issue is not "prior notice of termination," but concealment of "past termination." Opp. at 15. That is a distinction without a difference. Plaintiffs were Daily Employees (a point they now concede), and allege they were not being scheduled, were not being paid, and were receiving unemployment insurance benefits. *See, e.g.*, FAC, ¶¶ 26, 38. Plaintiffs knew they were unemployed; Plaintiffs cannot credibly claim otherwise.

---

[3] Tellingly, Plaintiffs have moved away from their fraudulent **omission** theory, likely realizing that it squarely conflicts with the CBA's "permanently ceasing to employ" provisions (which provide the "**exclusive** process" for Daily Employees to discuss their status, and which Plaintiffs failed to invoke). But Plaintiffs' FAC was unequivocally based on fraudulent omissions. *See*, *e.g.*, FAC, ¶ 13, 43 (repeated accusations of "ghosting"). And Plaintiffs' new claims of active misrepresentations fail for the reasons described in Section I.D.

The question is not whether SMS concealed their unemployment, but whether it intentionally misrepresented their callback prospects, and whether Plaintiffs reasonably detrimentally relied on SMS' purportedly false statements in not seeking alternative work. Opp. at 12. But that claim will require the Court to interpret numerous CBA provisions, as detailed in Defendants' Motion at 25-26.

Plaintiffs **claim** that the CBA's provisions are clear and undisputed, "requir[ing] [the] court simply to 'look at' the agreement." Opp. at 16. But Plaintiffs' citations to *Balcorta* and *Livadas*, while accurate, are inapposite. The "sneak peek" doctrine only applies if the "terms of the CBA are not in dispute." *Id.*

Plaintiffs argue "no interpretation" is required, but fail to address any of the disputed provisions identified in Defendants' Motion at 25-26, while wholly ignoring their own fraudulent omission theory. FAC, ¶¶ 10 (Fox "went radio silent"), 12 ("Fox never notified Plaintiffs their careers were over"), 13 ("Fox ghosted these employees"); 27 (similar).

Because there are "active disputes" with respect to the meaning of the CBA, the Court necessarily must do more than "look at" or "refer to" these provisions, it must actually interpret them. *Alaska Airlines Inc. v. Schurke*, 898 F.3d 904, 921–922 (9th Cir. 2018) (claims are "preempted to the extent there is an active dispute over the meaning of contract terms").[4]

### D. Plaintiffs' Promissory Fraud Claim Is Deficient

Plaintiffs aver (Opp. at 16) that Defendants are "grasping at straws" when they argue that the emails and statements quoted in the FAC are too amorphous and equivocal to support a fraud claim. Mot. at 26-28.

---

[4] Plaintiffs' citations are inapplicable, as in those cases, the parties agreed or it was manifest that no disputed terms existed. *Milne Employees Ass'n v. Sun Carriers*, 960 F.2d 1401, 1409 (9th Cir. 1991) ("no provision or term which arguably conflicts with Milne's promises"); *Hrones v. Rideout Memorial Hosp.*, 2022 WL 2093729, *4 (E.D. Cal. June 10, 2022) (no "dispute to resolve"); *Niehaus v. Greyhound Lines, Inc.*, 173 F.3d 1207, 1212 (9th Cir. 1999) ("the parties do not dispute the meaning of any of [the CBA's] relevant provisions").

Plaintiffs must allege a false statement and reasonable, detrimental reliance – but Plaintiffs simply cannot make the required showing. Plaintiffs could not possibly have read Hartley's emails as any type of promise of or commitment to future employment. Indeed, Hartley's emails, like the other emails or comments quoted in the FAC, clearly asserted the fluidity and unpredictability of the unprecedented situation.

Plaintiffs' quotations cannot mask this dispositive fact – as this sentiment pervades the emails, even as selectively quoted:

- "still figuring things out" (FAC, ¶ 11, 27);
- "I don't know what the plan is [going forward]" (FAC, ¶ 25);
- "provide[d] information regarding unemployment" benefits (FAC, ¶ 26);
- "book only as needed" (FAC, ¶ 28);
- "no new information" (FAC, ¶ 29);
- "did not know when that [*i.e.*, returning] would be" (FAC, ¶ 30);
- "didn't have any updates on work as of now" (FAC, ¶ 34); and
- "virtually impossible to know" (FAC, ¶ 35).

Plaintiffs have not identified any promise that SMS breached; indeed, the communications at issue bespeak uncertainty and doubt, not the definiteness required to create a misrepresentation **or rely upon it**.

### E. <u>Plaintiffs Have Not Adequately Pled Defamation</u>

#### 1. **Hartley's Alleged "Dead Weight" Comment Is Not Defamatory On Its Face**

Plaintiffs argue that Hartley's alleged "dead weight" comment is defamatory on its face, citing various online dictionaries for the proposition that "dead weight" essentially means "useless." Opp. at 19-20.

But numerous courts have held that the term "useless" is itself a non-actionable expression of opinion. *See*, *e.g.*, *Shepard v. Courtoise*, 115 F. Supp. 2d 1142, 1147 (E.D. Mo. 2000) ("The court concludes that the term[] 'useless

individual' . . . [is] not actionable as defamation."); *Boese v. Paramount Pictures Corp.*, 952 F. Supp. 550, 559 (N.D. Ill. 1996) ("'useless piece of shit' . . . non-actionable expression of opinion").

The term "dead weight" is not defamatory on its face.

### 2. Hartley's Alleged "Dead Weight" Comment Is Not A Provably False Statement Regarding The Motivation For Plaintiffs' Termination

Plaintiffs argue alternatively that "[a]n employer's motivation for terminating employment is clearly a provable fact" and Hartley used the term "dead weight" to explain why Plaintiffs' employment was terminated." Opp. at 20. But the cases Plaintiffs cite for this proposition involved demonstrable facts, not non-actionable opinions. *See Overhill Farms, Inc. v. Lopez*, 190 Cal. App. 4th 1248, 1262 (2010) ("an accusation of concrete wrongful conduct" that the plaintiff had used a social security number discrepancy to target certain employees for termination); *Umamoto v. Insphere Insurance Solutions, Inc.*, No. 13–CV–0475–LHK, 2013 WL 2084475 (N.D. Cal. May 14, 2013) (termination "due to performance" provably false based on sales figures).

Plaintiffs' role here and the term "dead weight" do not involve any such provably-false metrics or accusations of wrongful conduct.[5]

---

[5] Plaintiffs' appeal to *Oberkotter v. Woolman*, 187 Cal. 500 (Cal. 1921) – a **101-year old case** in which a teacher was permitted to pursue defamation claims based on a statement that he was a "weak spot[] in the public school system of instruction" – is hardly a reflection of current law and contains no discussion whatsoever of opinions versus provably false assertions of fact.

*Gallant v. City of Carson*, 128 Cal. App. 4th 705, 708 (Cal. Ct. App. 2005) is similarly inapt. The terms "competent" and "incompetent" have been held to be sufficiently objective to be provably false. *See Kahn v. Bower*, 232 Cal. App. 3d 1599, 1609 (Ct. App. 1991) ("['incompetent'] is reasonably susceptible of a provably false meaning."). "Dead weight" is far more subjective, and there is no authority finding it – or similar terms like "useless" – susceptible of a provably false meaning.

### 3. Hartley's Alleged "Dead Weight" Comment Is Not Defamatory Under the "Totality of the Circumstances"

Plaintiffs finally argue that, even if Hartley's alleged comment was not defamatory on its face, then it was defamatory under the "totality of the circumstances." Opp. at 20. But all of the cases Plaintiffs cite in support of this proposition involved "implie[d] . . . undisclosed defamatory facts as the basis for the opinion." *See Okun v. Sup. Ct.*, 29 Cal.3d 442, 4523 (1981). All Hartley is purported to have said is "dead weight." That opinion does not yield any undisclosed defamatory facts, and this case is not remotely close to those cited in Plaintiffs' Opposition finding an actionable cause of defamation. For example:

- In *Kahn*, a supervisor criticized a social worker, writing, "[plaintiff's conduct] goes so far beyond incompetence that I almost wonder if she has some kind of hostility towards the child or toward handicapped children in general." *Kahn,* 232 Cal. App. 3d at 1608-09. The plaintiff contended that these statements conveyed that she had engaged in conduct that was hostile to children. *Id*. at 1609. There is no such suggestion of untoward conduct associated with the term "dead weight."
- In *Stoneking v. Briggs*, 254 Cal. App. 2d 563 (1967), the president of a financially troubled union was removed, and another executive of the union told a local newspaper that the president "had been under investigation for some time and extensive hearings had been held," strongly suggesting financial improprieties on the part of the president. *Id*. at 568. Again, here, the term "dead weight" does not suggest any such improper (or illegal) activity.
- In *Slaughter v. Friedman*, 32 Cal. 3d 149 (Cal. 1982), dental plan administrators wrote letters to a dentist's patients informing them that reimbursement for their procedures had been denied because the

procedures were "unnecessary" and the dentist's charges were "excessive." The Court found that such "accusations by professional dental plan administrators carry a ring of authenticity and reasonably might be understood as being based on fact." *Id*. at 154. But "unnecessary" and "excessive" are provably false in a way that "dead weight" simply is not.

### F. Plaintiffs Have Not Adequately Pled IIED

#### 1. Termination Is Insufficient to Constitute IIED

Plaintiffs appear to concede that termination alone is insufficient to support an IIED claim, but allege that their "IIED claim is based on much more than mere discriminatory termination" including Hartley's use of the term "dead weight" and misleading Plaintiffs regarding their prospects for being called back. Opp. at 24.

But even if true, these events do not come close to conduct so extreme as to "exceed all bounds of that usually tolerated in a civilized community," or conduct so severe "no reasonable [person] in a civilized society should be expected to endure it." *Unterberger v. Red Bull N. America, Inc.*, 162 Cal.App.4th 414, 423 (2008); *see also Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55 (1996) ("personnel management decisions . . . not outrageous conduct beyond the bounds of human decency."); *Roche v. Audio Visual Servs. Grp., Inc.*, 2010 WL 3021575, at *2 (D. Nev. July 28, 2010) ("must allege conduct that goes beyond that of a run of the mill harassment or discrimination claim.").

#### 2. Plaintiffs' IIED Claims Are Barred by the Workers' Compensation Exclusivity Doctrine

Plaintiffs finally argue that the workers' exclusivity doctrine does not bar their IIED claims because "IIED claims arising out of unlawful discrimination under the FEHA are **not** barred by workers' compensation exclusivity." Opp. at 24-25 (*citing Light v. Cal. Dept. of Parks & Recreation*, 14 Cal.App.5th 75, 96 (2017)).

But *Light* recognizes only a narrow exception to the exclusivity doctrine where the IIED claim is based on the **same** facts giving rise to claims of discrimination or retaliation in violation of FEHA. *See Light*, 14 Cal. App. 5th at 101.

If Plaintiffs' IIED claim is based on their discrimination claim alone, it is not preempted, but is deficient under *Walker*, *Corona*, and *Roche*. *See* Mot. at 30. On the other hand, if Plaintiffs' IIED claim is based on broader claims, including fraud and defamation, then *Light* is inapposite and worker compensation exclusivity preempts the claim.

## II.   CONCLUSION

Plaintiffs FAC should be dismissed with prejudice.

DATED: December 5, 2022         Respectfully submitted,

MITCHELL SILBERBERG & KNUPP LLP
SETH E. PIERCE
BRIAN M. RAGEN
WILL S. LISA

By: */s/Seth E. Pierce*
    Seth E. Pierce
    Attorneys for Defendants Sports Media
    Services LLC and Gary Hartley