JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

| | | | |
|---|---|---|---|
| Case No. | 2:22-cv-07312-MCS-JC | Date | January 9, 2023 |
| Title | *Sammy Corea et al. v. Fox Sports Holdings, LLC et al.* | | |

Present: The Honorable  Mark C. Scarsi, United States District Judge

| Stephen Montes Kerr | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** (IN CHAMBERS) ORDER GRANTING MOTION TO REMAND AND DENYING AS MOOT MOTION TO DISMISS (ECF NOS. 16, 17) (JS-6)

Plaintiffs Sammy Corea, Carol De La Sotta, Bill Hutson, Sinbad Kazakian, William Alan Pfister, Jr., Rob Ross, Daniel Storm, Ruby Tse, and Bernabe Zepeda move to remand this case to the Los Angeles County Superior Court. (MTR, ECF No. 16.) Defendants Sports Media Services, LLC and Gary Hartley oppose the motion.[1] (MTR Opp'n, ECF No. 19.) Plaintiffs filed a reply. (MTR Reply, ECF No. 22.) Also before the Court is a fully briefed motion to dismiss. (MTD, ECF No. 17; MTD Opp'n, ECF No. 25; MTD Reply, ECF No. 26.) The Court deems the motions appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. R. 7-15.

## I. BACKGROUND

According to the first amended complaint, Plaintiffs are nine former employees of Defendant Fox Sports Holdings, LLC and its related companies, whom

---

[1] In this Order, the term "Defendants" refers solely to the motion's opponents, Sports Media Services, LLC and Gary Hartley, and the term "Defendant" refers solely to the party who removed the action, Sports Media Services.

Plaintiffs also named as defendants to the action. (FAC ¶ 1, ECF No. 1-6.) Plaintiffs, each of whom is "well over 40 years old," bring state law claims arising from their age- and disability-based termination from the company. (*Id.* ¶¶ 8, 13, 15.) Plaintiffs allege that after Fox had sent employees home due to the COVID-19 pandemic, it had continually represented to Plaintiffs that they would continue to be employed with the company despite never intending to honor those representations. (*Id.* ¶¶ 23, 27–37.) Rather, Fox began calling back only younger employees, a move which Hartley described as "g[etting] rid of all the dead weight." (*Id.* ¶¶ 30, 38.) Based on these allegations, Plaintiffs brought various state law claims, including, inter alia, fraud, defamation, and intentional infliction of emotional distress ("IIED").

Defendant removed this action from the Los Angeles County Superior Court on September 5, 2022, invoking this Court's federal question and diversity jurisdiction. (Notice of Removal, ECF No. 1.) As to federal question jurisdiction, Defendant argues that Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, preempts Plaintiffs' state law claims because the claims arise out of a violation of the parties' collective bargaining agreement ("CBA"), (Notice of Removal ¶¶ 7, 9). As to diversity jurisdiction, Defendant asserts that Plaintiffs fraudulently joined Gary Hartley, a California citizen, as a defendant to their defamation and IIED claims solely for the purpose of destroying complete diversity. (*Id.* ¶ 49.) Plaintiffs now move to remand this case to the superior court.

## II.   LEGAL STANDARD

"Federal courts are courts of limited jurisdiction" and "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A defendant may remove an action to federal court if the federal court could exercise original jurisdiction over the action. 28 U.S.C. § 1441(a). "The removal statute is strictly construed against removal jurisdiction," and "[t]he defendant bears the burden of establishing that removal is proper." *Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1087 (9th Cir. 2009). If a defendant fails to meet its burden of establishing subject-matter jurisdiction, the suit is remanded. 28 U.S.C. § 1447(c).

## III. DISCUSSION

### A. Defendants' Request for Judicial Notice

Defendants request judicial notice of the CBA, (Defs.' RJN, ECF No. 20), which is attached as exhibit A to Seth Pierce's declaration in support of Defendants' opposition to the remand motion, (Pierce Decl. Ex. A, ECF No. 19-3). Plaintiffs do not oppose Defendants' request. (*See generally* MTR Reply.) "Because complete preemption often applies to complaints drawn to evade federal jurisdiction, a federal court may look beyond the face of the complaint to determine whether the claims alleged as state law causes of action in fact are necessarily federal claims." *Parrino v. FHP, Inc.*, 146 F.3d 699, 704 (9th Cir. 1998), *superseded by statute on other grounds*, 28 U.S.C. § 1453(b), *as recognized in Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 681 (9th Cir. 2006). Accordingly, the Court takes judicial notice of the CBA and considers it for disposition of the motion to remand.

### B. Federal Question Jurisdiction

Federal jurisdiction exists only if the federal question appears on the face of the plaintiff's well-pleaded complaint. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). While a defendant cannot remove an action based on a defense of federal preemption, *Hunter v. United Van Lines*, 746 F.2d 635, 639–40 (9th Cir. 1984), the "complete preemption" doctrine permits removal "[o]nce an area of state law has been completely pre-empted[;] any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar*, 482 U.S. at 393. "Plaintiffs cannot avoid removal by artfully pleading only state law claims that are actually preempted by federal statutes such as section 301 of the Labor Management Relations Act." *Milne Emps. Ass'n v. Sun Carriers, Inc.*, 960 F.2d 1401, 1406 (9th Cir. 1991) (internal quotation marks omitted). Thus, if a federal statute completely preempts a state law claim, that cause of action "necessarily becomes a federal one and can be removed." *Id.*

"[T]he preemptive force of § 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization." *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 23 (1983) (internal quotation marks omitted). To determine complete preemption, courts first consider "whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA. If the right exists solely as a result of the CBA, then the claim is preempted, and [the] analysis ends there."

*Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007). But if "the right exists independently of the CBA, [courts] must still consider whether it is nevertheless 'substantially dependent on analysis of a collective-bargaining agreement.'" *Id.* (quoting *Caterpillar*, 482 U.S. at 394). A state law claim is substantially dependent on the terms of a CBA if a court must interpret, as opposed to merely look to, the CBA to resolve the claim. *Id.* at 1060; *Cramer v. Consolidated Freightways Inc.*, 255 F.3d 683, 693 (9th Cir. 2001). "If such dependence exists, then the claim is preempted by section 301; if not, then the claim can proceed under state law." *Burnside*, 491 F.3d at 1059–60.

The sole cause of action asserted as preempted is Plaintiffs' fraud claim. In its notice of removal, Defendant contends that the fraud claim is no more than an artfully pleaded violation of the parties' CBA. (Notice of Removal ¶¶ 14–18.) Conducting the two-part analysis of *Burnside*, the Court concludes that § 301 does not completely preempt Plaintiffs' fraud claim.

### 1. Plaintiffs' Fraud Claim Does Not Exist Solely by Virtue of the CBA

Despite the broad preemptive scope of § 301, a claim that seeks to vindicate "nonnegotiable state-law rights . . . independent of any right established by contract" may proceed under state law. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985). "[M]ere similarity between a state law and the terms of a collective bargaining agreement will not preempt the state law." *Miller v. AT&T Network Sys.*, 850 F.2d 543, 546–47 (9th Cir. 1988). Rather, only "state-law rights and obligations that . . . can be waived or altered by agreement of private parties are preempted." *Allis-Chalmers*, 471 U.S. at 213. "If the claim is plainly based on state law, § 301 preemption is not mandated simply because the defendant refers to the CBA in mounting a defense." *Cramer*, 255 F.3d at 691.

Plaintiffs' third cause of action raises three species of fraud: promissory fraud, intentional misrepresentation, and failure to disclose material facts. (FAC ¶¶ 76–83.) According to Plaintiffs, the essence of their fraud claim is that Fox misrepresented that "the Company was trying to bring them back" despite lacking any intent to continue employing Plaintiffs. (*Id.* ¶ 77; *see also* MTR 7.) Defendants instead contend that Plaintiffs—despite Fox calling them daily hires, (FAC ¶ 9)—assert rights staff employees enjoy under the CBA and simply repackage their CBA-based grievances as a fraud claim. (MTR Opp'n 10–11.) Defendants characterize Plaintiffs' claim as asserting entitlement to "notice that they were being laid off" or seniority-

based priority to return to work, neither of which is a right available to daily hires. (*Id.* at 11; *see* Pierce Decl. Ex. A, at 31.)

The Court finds that Defendants fail to carry their burden of establishing that Plaintiffs' right to be free from fraud "exists solely as a result of the CBA." *Burnside*, 491 F.3d at 1059; *see also Placer Dome*, 582 F.3d at 1087. It is beside the point that daily employees "may be terminated without any advance notice." (Pierce Decl. Ex. A, at 31.) For one, Plaintiffs explicitly allege that they were actually "typical on payroll employees." (FAC ¶ 9.) Defendants' recharacterization of Plaintiffs' allegations for the precisely opposite conclusion would fly in the face of the Supreme Court's admonition that a plaintiff is the "master of the complaint." *Caterpillar*, 482 U.S. at 398–99. Further, Plaintiffs are alleging not that they were entitled to advance notice of their termination, but rather that Fox made false promises of returning to work for which Plaintiffs forewent seeking other job opportunities. (FAC ¶¶ 77–80.) This distinction is a subtle yet important one. Notwithstanding Plaintiffs' disputed statuses as daily or full-time hires, the alleged misrepresentation is rooted in the false assurance of "trying to bring [Plaintiffs] back" to work. (*Id.* ¶ 77.) The fact of termination—and final notice thereof—instead is simply the point at which the alleged falsity of Fox's representations became apparent to Plaintiffs. Defendants fail to point to any provision in the CBA regulating false assurances of continued employment as opposed to the separate right of notice of termination. Therefore, Defendants have not proven that Plaintiffs' fraud claim exists solely as a result of the CBA. *Burnside*, 491 F.3d at 1059.

### 2. Evaluating Plaintiffs' Fraud Claim Does Not Substantially Depend on Interpreting the CBA

To prevail on a § 301 preemption argument, a defendant cannot simply allege "a hypothetical connection between the claim and the terms of the CBA." *Cramer*, 255 F.3d at 691. "[R]ather, the proffered interpretation argument must reach a reasonable level of credibility." *Id.* at 692 (citing *Livadas v. Bradshaw*, 512 U.S. 107, 124–25 (1994)). To satisfy the requirements of § 301 preemption, any interpretation must go beyond simply looking to or consulting the CBA. *See id.*; *Burnside*, 491 F.3d at 1060.

To determine whether the fraud claim substantially depends on interpreting the CBA, courts examine the elements of the claim. *See Milne*, 960 F.2d at 1408. Under California law, the elements of a claim of fraud are: "(1) a misrepresentation, (2) knowledge of falsity, (3) intent to induce reliance, (4) actual and justifiable

reliance, and (5) resulting damage." *Chapman v. Skype, Inc.*, 220 Cal. App. 4th 217, 230–31 (2013).

"Resolution of the first three elements—misrepresentation, knowledge of falsity, and intent to defraud—does not require interpretation of the employees' collective bargaining agreements." *Milne*, 960 F.2d at 1408. Rather, those elements look to a defendant's state of mind and involve "purely factual questions pertain[ing] to . . . the conduct and motivation of the employer." *Id.* (ellipsis in original) (quoting *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407 (1988)).

As to justifiable reliance, Defendants argue that resolution of this fourth element requires interpreting the CBA because the "alleged promises of continued employment . . . conflict with the CBA, including" Articles 16 and 18. (MTR Opp'n 13–15.) The Court disagrees. Even assuming Article 16, the CBA provisions governing terms of daily or probationary employment, (Pierce Decl. Ex. A, at 31–35), applies to Plaintiffs, Defendants fail to point to any provision that requires interpretation to determine whether Plaintiffs justifiably relied on Fox's representations that they would return to work. As in *Milne*, "[n]o provision in [Article 16] prohibits [Fox] from promising employees . . . that their jobs will continue." 960 F.2d at 1409. Rather, the provisions Defendants point to simply regulate termination procedures, not rights or procedures Plaintiffs would be entitled to in the event that Fox falsely promised to retain Plaintiffs' employment. And Article 18, which includes the CBA's integration clause invoked in Defendants' brief, requires no interpretation because there are no provisions—in Article 16 or otherwise—arguably changed or terminated. (Pierce Decl. Ex. A, at 37; *see* MTR Opp'n 14.)

Likewise, the fifth element of damages does not rest on any interpretation of the CBA, as the damages here stem from foregone employment opportunities and emotional injuries, none of which is argued to be regulated in the CBA.

Based on the above, Defendants have failed to prove that evaluating Plaintiffs' fraud claim requires interpreting the CBA. While the Court indeed looked to the CBA in its analysis, its examination did not rise to the depth of review contemplated in *Burnside*. 491 F.3d at 1060. The lack of any clear conflict with the CBA or contractual term requiring interpretation to resolve the fraud claim only confirms that interpreting the CBA is unnecessary here. *See Milne*, 960 F.2d 1409–10. Accordingly, § 301 does not completely preempt Plaintiffs' fraud claim, and their first amended complaint raises no federal question.

### C. Diversity Jurisdiction

As an initial matter, the Court declines to apply the so-called snap removal doctrine, as Defendants fail to cite any binding authority or present any compelling argument militating its application. (MTR Opp'n 17–18.)

In evaluating diversity jurisdiction, the Court "may disregard the citizenship of a non-diverse defendant who has been fraudulently joined." *GranCare, LLC v. Thrower*, 889 F.3d 543, 548 (9th Cir. 2018). "There are two ways to establish fraudulent joinder: '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" *Id.* (quoting *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1044 (9th Cir. 2009)). In evaluating a claim of fraudulent joinder, a court must remand "if there is a *possibility* that a state court would find that the complaint states a cause of action against any of the [non-diverse] defendants." *Id.* (quoting *Hunter*, 582 F.3d at 1046). In this inquiry, "the district court must consider . . . whether a deficiency in the complaint can possibly be cured by granting the plaintiff leave to amend." *Id.* at 550. There is a presumption against fraudulent joinder, and "defendants who assert fraudulent joinder carry a heavy burden of persuasion." *Tanner v. Ford Motor Co.*, 424 F. Supp. 3d 666, 670 (N.D. Cal. 2019).

In its notice of removal, Defendant invokes the Court's diversity jurisdiction, but it concedes that Plaintiffs and Hartley are California citizens. (Notice of Removal ¶¶ 22, 49.) Defendants argue that Hartley was fraudulently joined to this action, as Plaintiffs cannot state a claim against him for either defamation or IIED. (*Id.* ¶¶ 49–51; MTR Opp'n 20–31.) The Court finds that Plaintiffs have demonstrated at least a possibility of stating a claim for defamation or IIED. *See GranCare*, 889 F.3d at 548.

#### 1. Defamation

Under California law, "[t]he tort of defamation involves (a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or cause special damage." *Taus v. Loftus*, 40 Cal. 4th 683, 720 (2007) (internal quotation marks omitted). "An essential element of libel, . . . is that the publication in question must contain a false statement of *fact*." *Gregory v. McDonnell Douglas Corp.*, 17 Cal. 3d 596, 600 (1976). The First Amendment protects "statements that cannot 'reasonably [be] interpreted as stating actual facts' about an individual." *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 20 (1990) (alteration in

original) (quoting *Hustler Magazine v. Falwell*, 485 U.S. 46, 50 (1988)). Accordingly, statements of opinion are not actionable unless they "imply a false assertion of fact." *Id.* at 19. Whether a statement is actionable as a statement of fact "is a question of law to be decided by the court." *Baker v. L.A. Herald Exam'r*, 42 Cal. 3d 254, 260 (1986). In deciding this question, courts "examine the totality of the circumstances in which [the statement] was made." *Underwager v. Channel 9 Austl.*, 69 F.3d 361, 366 (9th Cir. 1995).

Plaintiffs claim Hartley's statement that "Plaintiffs were not returned to work because they were 'dead weight'" is defamatory. (FAC ¶ 85.) Here, there is at minimum "a *possibility* that a state court would find that the complaint states a cause of action." *GranCare*, 889 F.3d at 548 (internal quotation marks omitted). While Defendants argue that Plaintiffs fail to allege "a false statement of fact" necessary to assert a defamation claim, (MTR Opp'n 20 (quoting *Cort v. St. Paul Fire & Marine Ins. Cos.*, 311 F.3d 979, 985–86 (9th Cir. 2002))), the phrase "dead weight" is open to interpretation. A court could indeed construe "dead weight," as Defendants suggest, as simply an unprovable opinion on Plaintiffs' intangible worth to Fox. (*Id.*) However, a reasonable jurist could construe "dead weight" as a quantifiable measure of Plaintiffs' lack of performance or value as Fox employees. In any event, "an employer's motivation for terminating employment is a fact plaintiffs attempt to prove routinely in wrongful termination cases." *Overhill Farms, Inc. v. Lopez*, 190 Cal. App. 4th 1248, 1252 (2010). Here, a state court could construe the statement "dead weight" as a measure of Plaintiffs' perceived lack of performance or value, which presents a viable theory to state a claim for defamation, particularly as it pertains to provable "ageist motivations," *id.*, which are at issue in this case. Thus, Defendants have failed to prove there is no possibility that Plaintiffs could state a claim for defamation. *See GranCare*, 889 F.3d at 548.

2. <u>IIED</u>

To state a claim for IIED, a plaintiff must allege: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009) (internal quotation marks omitted). To be "outrageous," the alleged conduct "must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Davidson v. City of Westminster*, 32 Cal. 3d 197, 209 (1982). Additionally, "[t]he defendant must have engaged in 'conduct intended to inflict

injury or engaged in with the realization that injury will result.'" *Christensen v. Superior Ct.*, 54 Cal. 3d 868, 903 (1991) (quoting *Davidson*, 32 Cal. 3d at 210).

In the employment context, termination alone is insufficient to state a claim for IIED, "even if improper motivation is alleged." *See Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 80 (1996). However, district courts applying California law have recognized a non-fanciful possibility of an IIED claim where employees have alleged "conduct other than that inherent in terminating an employee" which results in the denial of a right "in a deceptive manner when other employees were given such a right." *Gibson v. Am. Airlines*, No. C 96-1444 FMS, 1996 WL 329632, at *4 (N.D. Cal. June 6, 1996); *see also, e.g.*, *Olguin v. Int'l Paper Co.*, No. CV 16-01865-AB (Ex), 2016 WL 1643722, at *4 (C.D. Cal. Apr. 26, 2016) (applying, inter alia, *Gibson*, 1996 WL 329632); *Hale v. Bank of Am., N.A.*, No. CV 12–10064 MMM (PJWx), 2013 WL 989968, at *7–10 (C.D. Cal. Mar. 13, 2013) (same). Courts have found a non-fanciful possibility of liability, even for "relatively weak" claims. *See, e.g.*, *Asurmendi v. Tyco Elecs. Corp.*, No. C 08-5699 JF (PVT), 2009 WL 650386, at *5 (N.D. Cal. Mar. 11, 2009). Such is the case here, where Plaintiffs allege that their Fox employers had represented that Plaintiffs would return to work while deceptively concealing that they never intended to honor those assurances based in part on discriminatory motivations. (*See* FAC ¶ 94.) In any event, the Court cannot conclude that any perceived defect in the pleading of the claim could not be cured upon a second amendment adding facts about Hartley's "extreme and outrageous conduct." *Hughes*, 46 Cal. 4th at 1050 (internal quotation marks omitted); *see GranCare*, 889 F.3d at 550 (requiring courts to consider whether amendment could cure pleading defects). Therefore, Plaintiffs have at least a non-fanciful possibility of stating a claim for IIED. *See GranCare*, 889 F.3d at 548.

Defendants additionally proffer evidence of email exchanges between Plaintiffs and Hartley, ostensibly to disprove any indication of injurious intent. (MTR Opp'n 27–28.) Essentially, Defendants ask the Court to adjudicate the merits of the claim against Hartley. The Ninth Circuit has instructed district courts to conduct only a "summary inquiry" into fraudulent joinder. *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1044 (9th Cir. 2009) (quoting *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004)); *see also GranCare*, 889 F.3d at 548–49 ("We have declined to uphold fraudulent joinder rulings where a defendant raises a defense that requires a searching inquiry into the merits of the plaintiff's case, even if that defense, if successful, would prove fatal."). Thus, although district courts are authorized to pierce the pleadings and consider evidence in evaluating fraudulent joinder, *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1068 (9th Cir. 2001), courts

frequently decline to adjudicate the merits of claims in a summary judgment–like fashion in this inquiry, *see, e.g.*, *Randall v. Cambria Co., LLC*, No. EDCV 17-1362 JGB (KKx), 2017 WL 3503649, at *3 (C.D. Cal. Aug. 16, 2017) (collecting cases); *Amarant v. Home Depot U.S.A., Inc.*, No. 1:13–cv–00245–LJO–SKO, 2013 WL 3146809, at *10 (E.D. Cal. June 18, 2013) ("While the Court might predict how a state court would assess the evidence in deciding a motion for summary judgment, this is not the Court's role in performing the fraudulent joinder analysis nor is it certain that a state court would reach the predicted conclusion, particularly since additional evidence may be presented at the time of summary judgment."); *Dahmen v. McNeil-PPC, Inc.*, No. CV 12-10371-GW(CWx), 2013 WL 12130314, at *2 (C.D. Cal. Jan. 14, 2013) ("[N]otwithstanding the fact that Defendants are entitled to present facts, by way of summary judgment-type evidence, in order to demonstrate fraudulent joinder, the Court is not required to resolve the merits of Plaintiffs' claim at this stage."). On this basis, the Court declines Defendants' invitation to consider the proffered exhibits in Hartley's declaration and effectively adjudicate the merits of Plaintiffs' IIED claim.

For these reasons, the Court cannot conclude that Hartley was fraudulently joined to the action. Accordingly, diversity jurisdiction is lacking, and the case must be remanded under 28 U.S.C. § 1447(c). The Court declines to award costs and fees because Plaintiff did not request them in the motion. *See id.*

## IV.     CONCLUSION

The Court grants the motion and remands this case to the Los Angeles County Superior Court, No. 22STCV26380. The Court directs the Clerk to effect the remand immediately and close the case. Defendants' motion to dismiss is denied as moot.

**IT IS SO ORDERED.**